Dennis Olson – SBN: 15273500
Olson, Nicoud, & Gueck, L.L.P.
1201 Main Street, Suite 2470
Dallas, TX 75202-3902
214.979.7300 – TELEPHONE
214.979.7301 – FAX
Email: denniso@dallas-law.com

Kent Hale – SBN: 08729700
Craig, Terrill, Hale & Grantham, L.L.P.
Attorneys at Law
9816 Slide Rd., Suite 201
Lubbock, TX  79424
(806) 744-3232 - TELEPHONE
806.744.2211 – FAX
Email: kenth@cthglawfirm.com

ATTORNEYS FOR FIRST BANK & TRUST CO. ("FBT");
and THE BANK OF WEATHERFORD ("WEATHERFORD"):

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 11-30210-bjh |
| FRE Real Estate, Inc. | § | CHAPTER 11 |

### MOTION OF FIRST BANK & TRUST CO. AND THE BANK OF WEATHERFORD TO RETROACTIVELY ANNUL THE AUTOMATIC STAY

TO THE HONORABLE BANKRUPTCY JUDGE:

COME NOW Movants, FIRST BANK & TRUST CO. ("FBT"); and THE BANK OF WEATHERFORD ("WEATHERFORD"), also collectively referred to as "Banks", complaining of the above named Debtor, and move the Court for an Order Retroactively Annulling the Automatic Stay ("Motion to Annul"), and in support thereof would show the Court the following:

A MOTION FOR EXPEDITED HEARING IS BEING FILED CONCURRENTLY WITH THE FILING OF THIS MOTION, WHICH WILL BE SERVED AT THE SAME TIME OF THIS MOTION.

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. Sections 1471,

1334, 11 U.S.C. §§ 362 and 363.

2. On January 4, 2011, the Debtor filed a petition commencing a case under Chapter 11, Title 11, U.S.C., for the entry of an order for relief.

3. The attorney for the Debtor is John P. Lewis, Jr., Law Office of John P. Lewis, Jr., 1412 Main St., Ste. 210, Dallas, TX 75202.

## I. - FACTUAL BACKGROUND

4. In August, 2005, IORI Centura, Inc. ("IORI"), a Nevada corporation, upon information and belief a single purpose entity, was established for the sole purpose of owning approximately a 10-acre tract of vacant land in Dallas, Texas, near the Galleria area (the "IORI Real Property") attached hereto as Exhibit "1". The IORI Real Property is located between the West edge of the Dallas North Tollway, the East edge of Inwood Road, and is just South of Spring Valley. The IORI Real Property is vacant land with the only improvements being the installation of gutters, curbs and utilities connections.

5. On August 22, 2005, IORI obtained a loan in the amount of Seven Million Dollars ($7,000,000.00) from Columbian Bank and Trust Company ("Columbian") pursuant to a Promissory Note and Amendment to the Promissory Note dated August 22, 2005 (the "2005 Note"), attached hereto as Exhibit "2". The 2005 Note was due and payable August 22, 2007.

6. Columbian perfected its Deed of Trust lien by filing a Deed of Trust in the Dallas County Real Estate Records on or about August 27, 2005 under Document No. 2005-168-09097 (the "Deed of Trust"). The Deed of Trust is attached hereto as Exhibit "3". The Deed of Trust secures the IORI Real Property.

7. On August 22, 2007, a new note for Seven Million Dollars ($7,000,000.00) was executed by IORI (the "2007 Note"). The 2007 Note was due August 22, 2008 payable to Columbian, secured by the Deed of Trust executed by IORI. The 2007 Note is attached hereto as

Exhibit "4".

8. On August 22, 2008, Columbian was determined to be insolvent and was closed by order of the Kansas State Banking Commissioner. The FDIC was appointed receiver of Columbian, with power to liquidate the assets of Columbian.

9. On or about June 10, 2009, WEATHERFORD acquired all right, title and interest in and to the 2007 Note secured by the Deed of Trust from IORI ("Columbian Note") and other loan documents from FDIC as evidenced by the following:

    A. An Allonge to the Columbian Note dated June 10, 2009, attached hereto as Exhibit "5";

    B. A Receiver's Assignment of Mortgage or Deed of Trust from FDIC to WEATHERFORD, dated June 10, 2009 and recorded July 21, 2009 in the Dallas County Real Estate Records, attached hereto as Exhibit "6"; and

    C. Servicing Rights Assignment Agreement dated June 10, 2009 executed by the FDIC to WEATHERFORD, assigning servicing rights of the 2007 Note (Exhibit "7").

10. On June 10, 2009, WEATHERFORD sold a portion of participation interest in the 2007 Note to FBT (Exhibit "8").

11. FBT services the 2007 Note on behalf of WEATHERFORD and itself. The FDIC notified IORI it sold the 2007 Note to Movants (Exhibit "9").

12. On July 31, 2009, IORI was notified by letter that it had defaulted under the 2007 Note. The Banks advised they would accelerate the maturity of the 2007 Note if IORI did not cure its delinquency by paying the sums due and owing under the 2007 Note on or before August 10, 2009 (Exhibit "10").

13. Appointment(s) of Substitute Trustee were executed by the Banks and filed of record (the "Appointment"- Exhibits "11 and 12").

14. On or about August 11, 2009, after non-payment by IORI, the Banks notified IORI it was in default under the terms of the 2007 Note. A Notice of Acceleration and Demand letter and Notice of Substitute Trustee's Sale were sent to IORI on behalf of the Banks, as IORI had failed to pay any of the principal balance, the owed accrued interest, and other charges under the 2007 Note due to IORI's failure to cure its default (the "August 2009 Foreclosure Notice - Exhibit "13").

15. On September 1, 2009, the IORI Real Property was set for a foreclosure sale.

16. On August 28, 2009, IORI filed a lawsuit in State Court: case number: 09-11186, styled *IORI Centura, Inc., Plaintiff vs. First Bank and Trust Co. and The Bank of Weatherford, Defendants;* in the 193rd District Court of Dallas County, Texas (the "First Lawsuit"), and a Temporary Restraining Order was entered by the Court restraining the foreclosure sale that was scheduled to occur September 1, 2009 (the "1st TRO"- Exhibit "14").

17. On September 14, 2009, with the passage of additional time, the Bank again was forced to make demand on IORI and notified IORI the 2007 Note had been accelerated as of August 11, 2009. A Notice of Substitute Trustee's Sale dated September 14, 2009 along with the September 14, 2009 default letter, was sent to IORI (the "September 2009 Foreclosure Notice") (Exhibit "15").

18. On September 21, 2009, in an effort to cooperate with IORI, the Bank negotiated with IORI a Modification, Renewal and Extension Agreement (the "Extension Agreement") (Exhibit "16").

19. Under the Extension Agreement, a principal payment reduction of $100,000.00 due on execution was made. Interest was to be due and payable as accrued beginning October 18, 2009, and each month thereafter until September 18, 2014. Principal reduction payments in the annual amount of $276,000.00 were to be made to the Bank each calendar year beginning

September 18, 2010 and annually until September 18, 2014, when the remaining principal balance and interest was to be paid under the Extension Agreement.

20. On or before September 19, 2010, IORI defaulted on the principal payments due September 18, 2010 under the Extension Agreement. IORI had also failed to pay interest that was due monthly under the Extension Agreement, and a Notice of Intent to Accelerate was sent to IORI on November 4, 2010 (Exhibit "17").

21. On November 16, 2010, a Notice of Acceleration and Demand and a Notice of Substitute Trustee's Sale was again sent to IORI accelerating and notifying IORI of foreclosure pursuant to the Extension Agreement (the "November 2010 Foreclosure Notice"- Exhibit "18"). The foreclosure sale was due to be held December 7, 2010 on the IORI Real Property.

22. On December 3, 2010, IORI filed suit again to hinder and delay the Banks for exercising their rights under the Deed of Trust. IORI filed another action in State Court enjoining the foreclosure sale scheduled for December 7, 2010; case number: 10-15539, styled *IORI Centura, Inc., Plaintiff vs. First Bank and Trust Co. and The Bank of Weatherford, Defendants;* in the 14th District Court of Dallas County, Texas, and a Temporary Restraining Order was entered by the Court (the "2nd TRO" - Exhibit "19"). The hearing on the Second Temporary Injunction was scheduled for December 16, 2010.

23. On December 10, 2010, the Bank filed its Answer asking the 14th District Court to dissolve the TRO prohibiting the Bank from foreclosing on the IORI Real Property and to further enter an Order clarifying the Banks' right to re-post and proceed with foreclosure in January, 2011.

24. It is the Banks' position that IORI never asserted any real defense to prevent foreclosure; and IORI did not establish any probable right of recovery or establish a lack of an adequate remedy at law.

25. Subsequent to the Banks' Answer, IORI, upon information and belief, unilaterally contacted the Court and cancelled the December 16, 2010 Temporary Injunction hearing without prior notice to the Banks or their counsel.

26. On December 13, 2010, a third Notice of Acceleration and Demand along with the Notice of Substitute Trustee's Sale was sent to IORI (the "December 2010 Foreclosure Notice"- Exhibit "20") as IORI had still failed to pay or tender the sums due on the 2007 Note. This sale was scheduled for January 4, 2011.

## II - THE BANKRUPTCY FORECLOSURE TIMELINE

27. On January 4, 2011 and several days prior, IORI engaged in a number of questionable and inequitable activities in an attempt to thrwart the January 4, 2011 Foreclosure.

Date: January 4, 2011

a. At approximately 11:15 a.m., a person saying he was Mr. Jay LaJone called and advised Terry Grantham's office that FRE Real Estate, Inc. was filing bankruptcy. A request was made for a copy of the filed bankruptcy petition and proof that FRE Real Estate, Inc. had anything to do with IORI Real Property.

b. At 12:55p.m, approximately two hours later, attached to an email from Mr. LaJone was:

(1) An un-filed General Warranty Deed attempting to transfer the IORI Real Property and an unfiled bankruptcy petition for FRE Real Estate, Inc. (Exhibit "21"). The General Warranty Deed was executed by Steven A. Shelley, Vice President of IORI . The Deed allegedly was executed December 23, 2010.

(2) Also attached to the email was a copy of a corporate amendment of TCI Park West II, Inc. Articles of Incorporation in Nevada to Fenton Real Estate, Inc. (the "Fenton Real Estate Charter Amendment – Exhibit "22"). This was filed December 23, 2010.

(3) Also attached to the email was a Certificate of Amendment showing that on December 30, 2010, Fenton Real Estate, Inc. again changed the corporate name to FRE Real Estate, Inc. (the "FRE Charter Amendment" - Exhibit "23"). This was filed December 30, 2010.

      c.      The January 4, 2011 real estate foreclosure sale on the IORI Real Property was scheduled between the hours of 1:00p.m. - 4:00 p.m. David Garvin, one of the Substitute Trustees, conducted the foreclosure sale. The foreclosure sale was concluded at 1:55p.m. on January 4, 2011.

      d.      At approximately 2:00 p.m., Mr. LaJone and Mr. Grantham spoke. Mr. Grantham advised Mr. LaJone that the foreclosure sale had been conducted. The filing of a Substitute Trustee's deed would be delayed to allow Mr. LaJone to send proof of the alleged FRE bankruptcy filing. A filed bankruptcy petition with a case number and the Deed from IORI to Debtor was again requested.

      e.      At 3:46p.m., a copy of written confirmation was finally emailed by Mr. LaJone that the bankruptcy had been filed (Exhibit "24").

      f.      At 4:35 p.m., Mr. LaJone emailed a copy of the <u>recorded</u> Deed on the IORI Real Property to FRE Real Estate, Inc. The Deed was electronically recorded in the Dallas County Real Estate Records on January 4, 2011 at 2:45p.m. (the Filed Deed Exhibit "25"), nearly an hour after the foreclosure sale had occurred.

### III. - THE ALLEGED DEED

28.     The Banks factually and legally assert that the purported real estate transaction that allegedly occurred between IORI and FRE did not occur in a factual or legal manner so as to allow IORI to avoid the burdens it must sustain as a single asset bankruptcy debtor. IORI executed the Deed to FRE, which, according to its bankruptcy petition has 100-199 creditors.

29.     It is believed no consideration was received by IORI and certainly none was received by the Banks from the bad faith transfer attempted by IORI.

### IV. - FRE AND IORI DIRECTORS

30.     It is helpful to analyze the officers and directors of IORI and FRE. Attached is a

copy of the Public Information Report for IORO on file with the Texas Secretary of State (Exhibit "26"), as well as a copy of the Public Information Report for FRE, f/k/a TCI Park West II, Inc., on file with the Texas Secretary of State (Exhibit "27"), which reveal the following:

| FRE Real Estate, Inc. | IORI Centura, Inc. |
|---|---|
| Daniel J. Moos, President and Director, 1800 Valley View Lane, Suite 300, Dallas, Texas; | Daniel J. Moos, President and Director, 1800 Valley View Lane, Suite 300, Dallas, Texas; |
| Gene S. Bertcher, Vice-President, Treasurer and Director, 1800 Valleyview Lane, Suite 300, Dallas, Texas; | Gene S. Bertcher, Vice-President, Treasurer and Director, 1800 Valleyview Lane, Suite 300, Dallas, Texas; |
| Louis J. Corna, Secretary, 1800 Valley View Lane, Suite 300, Dallas, Texas; | Louis J. Corna, Secretary, 1800 Valley View Lane, Suite 300, Dallas, Texas; |
| Steven A. Shelley, Vice-President, 1800 Valley View Lane, Suite 300, Dallas, Texas; | Steven A. Shelley, Vice-President, 1800 Valley View Lane, Suite 300, Dallas, Texas; |
| Melody A. Wofford, Assistant Secretary, 1800 Valley View Lane, Suite 300, Dallas, Texas; | Melody A. Wofford, Assistant Secretary, 1800 Valley View Lane, Suite 300, Dallas, Texas; |
| Patricia A. Gilmore, Assistant Secretary, 1800 Valley View Lane, Suite 300, Dallas, Texas; | Patricia A. Gilmore, Assistant Secretary, 1800 Valley View Lane, Suite 300, Dallas, Texas; Pamela M. Arsenault, Assistant Secretary, 1800 Valley View Lane, Suite 300, Dallas, Texas. |
| Pamela M. Arsenault, Assistant Secretary, 1800 Valley View Lane, Suite 300, Dallas, Texas; | |
| Lisa A. Dedonato, Independent Dir, 1800 Valley View Lane, Suite 300, Dallas, Texas; | |
| Alfred Crozier, Vice-President, 1800 Valley View Lane, Suite 300, Dallas, Texas | |

## V. - ARGUMENT AND AUTHORITIES

31. A summary of activities conducted by IORI with regard to the IORI Real Property for the past year and a half shows an obvious pattern of questionable activities much akin to the type addressed by the serial bankruptcy filing provisions and new debtor syndrome.

32. "It is well settled that 'actions taken in violation of the automatic stay are not

void, but rather they are merely *voidable*, because the bankruptcy court has the power to annul the automatic stay pursuant to the Bankruptcy Code, 11 U.S.C. § 362(d).'" *In re Jones*, 63 F.3d 411, 412 (5th Cir. 1995) (quoting *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990). Under § 362(d)(1), the court has the power to annul an automatic stay "for cause." 11 U.S.C. § 362(d)(1). Because § 362 does not offer guidance as to what constitutes "cause," reviewing courts must determine whether cause existed on a case-by-case basis. *In Re Reitnauer*, 152 F.3d 351, 343 n.4 (5th Cir. 1998). The existence of bad faith in commencing a bankruptcy case constitutes a sufficient "cause" for annulling a stay pursuant to § 362(d). *See In re Duvar Apt.*, 205 B.R. 196 (9th Cir. B.A.P. 1996). Thus, when an automatic stay is annulled under § 362(d), the annulment serves to validate a foreclosure and transfer of title of Estate real property that would have otherwise been invalid due to the operation of the automatic stay. *See In re Jones* 63 F.3d at 412 n.3.

33. IORI and FRE have engaged in: (1) inequitable conduct; (2) a fraudulent transfer; and (3) bad faith. The Banks assert that the FRE bankruptcy filing was in bad faith. The Deed was a fraudulent transfer made in bad faith. As such, good cause exists to retroactively annul the automatic stay, so as to validate and confirm the foreclosure which took place on January 4, 2011 at 1:55 p.m.

34. The Banks further assert that the activities are such and the identity of the officers and directors of FRE and IORI so inter-related and intertwined that Mr. Shelley handing the Deed from his right hand to his left hand should not constitute delivery of the Deed. It is also evidence of bad faith and another verse of the new debtor syndrome. As a result, whether or not delivery occurred, the IORI Real Property should not be considered property of the Estate under Section 541 of the Bankruptcy Code.

35. The IORI Real Property should not be considered property of the Estate as the

foreclosure sale was properly conducted by the Bank prior to the IORI Real Property being conveyed to Debtor by extremely questionable means in the Deed.

36. Upon information and belief, IORI borrowed the money for 2009 ad valorem taxes from Propel Financial Services, Inc. IORI paid the 2009 taxes late on May 30, 2010 creating a lien of over $210,000.00 that possibly primes the Banks' lien. There are further taxes due and unpaid for 2010 in the approximate amount of $187,000.00.

37. The Banks further assert that IORI's attempt to avoid foreclosure in this fashion should not be allowed, because to do so would permit IORI to avoid the single asset provisions of the Bankruptcy Code by the questionable and bad faith conduct of IORI in transferring the IORI Real Property to FRE, a purported grantee of the Deed, who purportedly has 100-199 creditors.

## VI. - RELIEF FROM THE AUTOMATIC STAY

38. The Bank is entitled to terminate the automatic stay: (1) for "cause" including lack of adequate protection of the Banks' interest in the collateral; and (2) the Debtor lacks equity and any ownership in and to the IORI Real Property and the IORI Real Property is not necessary for a successful organization of Debtor.

39. In a single asset bankruptcy case, the Bankruptcy Court has authority to grant relief under Section 362(d)(1), (2) or (3). See *In re Duvar Apt., Inc.,* 205 B.R. 196, 200 (9TH Cir. B.A.P. 1996).

### A. Relief from the Automatic Stay is Also Appropriate for "Cause".

40. Pursuant to 11 U.S.C. § 362(d)(1), a party-in-interest may be granted relief from the automatic stay for cause. The term "cause" is not defined in the Bankruptcy Code and must be determined on a case by case basis. *Christianson v. Tucson Estates, Inc.* (In re Tucson Estaes, Inc.), 912 F.2d 1162, 1166 (9th Cir. 1990) (citations omitted). *Jones v. Garcia*, 63 F.3d 411 (5th

Cir. – 1995). The Bankruptcy Code specifically identifies lack of adequate protection as a cause for relief from the automatic stay, and the Debtor has the burden to prove that the Movants' interest in the property at issue is adequately protected. *Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of United States (In re Sun Valley Ranches, Inc.)*, 823 F.2d. 1373, 1375 (9th Cir. 1987) (citations omitted). In this case, the Debtor has allowed substantial ad valorem taxes to accrue, which if not addressed, jeopardize and increase the deficiency in the IORI Real Property.

41. The IORI Real Property is vacant land, and if IORI had filed a case, it would be a single asset real estate case, and for over five years IORI has demonstrated virtual inability to pay obligations incurred to purchase the debt, and IORI has further failed to develop, re-sell, or otherwise do anything with the IORI Real Property other than to increase the amount of indebtedness against the IORI Real Property.

42. "Cause" under § 362(d)(1) also exists where the bankruptcy is nothing more than a two-party dispute filed for the apparent purpose of frustrating a secured creditor's ability to exercise its State court rights. See *In re Stober,* 193 B.R. 5, 11 (Bankr.D.Ariz. 1996); *In re Tucson Properties Corp.,* 193 B.R. 292, 301 (Bankr.D.Ariz. 1995) ("This filing is simply a tactical maneuver, knowing that the court process is lengthy and sometimes slow, designed to gain more time and distance in an effort to wear down its exhausted secured creditor into some type of settlement submission"); *Jones v. Garcia*, 63 F.3d 411 (5th Cir. – 1995). *In re Baseline-Dobson Center Real Estate Ltd. Partnership,* 193 B.R. 284, 292 (Bankr.D.Ariz. 1994); *In re Landmark Capital Co.,* 27 B,R, 273, 279 (Bankr.D.Ariz. 1983).

43. Although not expressly stated in § 362(d)(1), it is well established that a debtor's bad faith constitutes "cause" for relief from the automatic stay under that section. *In re 68 West 127 Street, LLC,* 285 B.R. 838, 843 (Bankr.S.D.N.Y. 2002). To determine whether a debtor has

filed a bankruptcy petition in good faith, the courts look to a variety of circumstantial factors, including whether: (i) the debtor has only one asset; (ii) the debtor has an on-going business to reorganize; (iii) there are any unsecured creditors; (iv) the debtor has any cash flow or sources of income to sustain a plan of reorganization; and (v) the case is essentially a two-party dispute. *In re St. Paul Self Storage Limited Partnership,* 185 B.R. 580, 582-83 (9th Cir. BAP 1995).

44. Applying the foregoing factors to this case, it is clear that the Debtor filed this Chapter 11 bankruptcy, at least as to the Banks and the IORI Real Property, in bad faith. In looking at IORI, IORI had basically only one asset; IORI did not have an on-going business to reorganize; if there are any unsecured creditors, in all likelihood they are minimal, or created for purposes of creating additional creditors; IORI did not have any cash flow or sources of income to sustain a plan of reorganization; and if IORI was in bankruptcy, the case would essentially be a two-party dispute. *Id. In re St. Paul Self Storage Limited Partnership,* 185 B.R. 580, 582-83 (9th Cir. BAP 1995). The same or similar type of good faith analysis has been recognized in *In re Duvar,* supra; and *In re Little Creek Development Company*, 779 F.2d. 1068 (5th Cir. – 1986).

45. Applying the *St. Paul* factors to this case, it is clear, that had IORI filed a Chapter 11 bankruptcy, IORI would have filed in bad faith. The same sould apply to the Debtor, as Debtor and IORI, other than having different corporate charters, have the same officers and directors and have the same group of people and owners that fraudulently transferred the IORI Real Property to Debtor, in violation of the terms of the Deed of Trust, and recorded the Deed shortly after the properly conducted foreclosure sale. The Debtor is apparently being utilized as a tool of IORI to create enough creditors to allow IORI, through the officers and directors of the Debtor, to attempt to file some type of Chapter 11 plan, when the IORI Real Property was never involved with the Debtor until essentially the day of the foreclosure on the IORI Real Property.

46. The IORI dispute is well described in the factual presentation set forth above and

the matter is by all accounts a two-party dispute with the exception being ad valorem taxes, which the Banks will have to pay in order to protect their lien.

WHEREFORE, PREMISES CONSIDERED, Movants pray:

1. This Court enter an Order Retroactively Annulling the Automatic Stay and approving the Banks' foreclosure sale on January 4, 2011;

2. Movants request Movants be permitted to record their Trustee's Deed and secure possession of the IORI Real Property in accordance with applicable state law;

3. Movants pray for such other and further relief to which they may be justly entitled; and

4. Movants request that the requirements of Rule 4001(a)(3) not be applicable to any order issued pursuant to this Motion.

SIGNED this the 14th day of January, 2011.

Respectfully submitted,

Olson, Nicoud, & Gueck, L.L.P.
1201 Main Street, Suite 2470
Dallas, TX 75202-3902
214.979.7300 – TELEPHONE
214.979.7301 – FAX
Email: denniso@dallas-law.com

By:    /s/ Dennis Olson
Dennis Olson
SBN:15273500

CRAIG, TERRILL, HALE & GRANTHAM, L.L.P.
Kent Hale
SBN 08729700
9816 Slide Rd., Suite 201
Lubbock, TX  79424
(806) 744-3232
FAX:  (806) 744-2211
Email: kenth@cthglawfirm.com

**ATTORNEYS FOR FIRST BANK AND TRUST CO.; AND THE BANK OF WEATHERFORD**

## CERTIFICATE OF CONFERENCE

By my signature below, I hereby certify that on January 14, 2011, I have attempted to confer with the attorney for Debtor, John P. Lewis, Jr., without success, and I presume the Motion is opposed.

      /s/ Dennis Olson
Dennis Olson/Kent Hale

## CERTIFICATE OF SERVICE

I hereby certify that on 14th day of January, 2011 a true and correct copy of the foregoing document has been served via the Court's CM/ECF system where available, otherwise by regular, first class mail to the following:

      /s/ Dennis Olson
Dennis Olson/Kent Hale

**Debtor(s)**
FRE Real Estate, Inc.
1750 Valley View Lane, Suite 400
Dallas, TX 75234

**Attorney for Debtor(s):**
John P. Lewis, Jr.
Law Office of John P. Lewis, Jr.
1412 Main Street, Ste. 210
Dallas, TX 75202

**U.S. Trustee**
1100 Commerce Street, Room 976
Dallas, TX 75242-1496

**Parties Requesting Notice**
Robert Bernier, Vice President
Wells Fargo Capital Finance
1100 Abernathy Road, Suite 1600
Atlanta, GA 30328

David Weitman, Esq.
Daniel I. Morenoff, Esq.
K&L Gates, LLP

*Attorneys for Wells Fargo Capital Finance, Inc.*
1717 Main Street, Suite 2800
Dallas, TX 75201-7342

Victor Barwig, Sr., VP
Loan Portfolio Manager
Wells Fargo Capital Finance – Southern R
1100 Abernathy Road, Suite 1600
Atlanta, GA 30328-5657

Texas Comptroller of Public Accounts
Attn: Jason Starks
PO Box 12548
Austin, TX 78711-2548

Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

First Bank & Trust Co.
Attn: Kyle Mauldin
9816 Slide Rd.
Lubbock, TX 79424

First Bank & Trust Co.
Attn: Greg Garland, President
9816 Slide Rd.
Lubbock, TX 79424

The Bank of Weatherford
Attn: J. Mark Riebe, President
PO Box 2170
Weatherford, TX 76086

Perdue, Brandon, Fielder, Collins & Mott, L.L.P.
Attn: Elizabeth Banda Calvo
*Attorneys for Valwood Improvement Authority*
P.O. Box 13430
Arlington, TX 76094-0430

BRYAN CAVE, LLP
Attn: Keith M. Aurzada/John C. Leininger
*Counsel for Armed Forces Bank, N.A.*
2200 Ross Avenue, Suite 3300
Dallas, TX 75201

LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
Attn: Laura Spindler Huffman
*Attorneys for Dallas County*
2323 BRYAN STREET SUITE 1600
DALLAS, TX 75201