



One Hickory Centre
1800 Valley View Lane
Suite 300
Dallas, Texas 75234
*tel* 469.522.4200
*fax* 469.522.4299

August 15, 2005

Mr. Terry Nickelson
Columbian Bank
4701 W. 110th Street
Overland Park, KS  66211

RE:    **CENTURA LAND LOAN**

Dear Terry:

In reference to the above-captioned transaction, the borrowing entity IORI Centura, Inc. is a single-purpose, wholly-owned subsidiary of the guarantor, Income Opportunity Realty Investors, Inc. (AMEX:IORI).

IORI Centura, Inc. does not prepare a separate financial statement; this company's financials are consolidated with Income Opportunity Realty Investors, Inc.

If you have any questions or need anything further, please do not hesitate to contact our office.

Sincerely,

*Monte R. Koch*

Monte R. Koch
Capital Markets Director

**EXHIBIT**

*1*

 

# INCOME OPPORTUNITY REALTY INVESTORS, INC.

## CONSOLIDATED BALANCE SHEETS

|  | December 31, | |
|---|---|---|
|  | 2004 | 2003 |
|  | (dollars in thousands, except per share) | |

### Assets

| | 2004 | 2003 |
|---|---|---|
| Real estate held for investment | $ 34,988 | $ 56,367 |
| Less – accumulated depreciation | (3,620) | (6,002) |
| | 31,368 | 50,365 |
| | | |
| Notes and interest receivable | 54,911 | 45,531 |
| Investment in real estate partnerships | 604 | 607 |
| Cash and cash equivalents | 399 | 58 |
| Receivables from affiliates | 261 | 457 |
| Other assets | 3,658 | 4,126 |
| | $ 91,201 | $ 101,144 |

### Liabilities and Stockholders' Equity

| | 2004 | 2003 |
|---|---|---|
| Liabilities | | |
| Notes and interest payable | $ 44,571 | $ 60,825 |
| Payables to affiliates | 1,286 | – |
| Other liabilities | 1,553 | 1,230 |
| | 47,410 | 62,055 |

Commitments and contingencies

| | 2004 | 2003 |
|---|---|---|
| Stockholders' equity | | |
| Common Stock, $.01 par value; authorized 10,000,000 shares; issued and outstanding and 1,389,345 shares in 2004 and 1,438,945 shares in 2003 | 14 | 14 |
| Paid-in capital | 61,983 | 62,774 |
| Accumulated deficit | (18,206) | (23,699) |
| | 43,791 | 39,089 |
| | $ 91,201 | $ 101,144 |

The accompanying notes are an integral part of these Consolidated Financial Statements.



INCOME OPPORTUNITY REALTY INVESTORS, INC.
CONSOLIDATED STATEMENTS OF OPERATIONS

|  | For the Years Ended December 31, | | |
|  | 2004 | 2003 | 2002 |
|  | (dollars in thousands, except per share) | | |
| **Property revenue** | | | |
| Rents............................... | $ 5,905 | $ 5,224 | $ 5,298 |
| **Property expense** | | | |
| Property operations................ | 3,129 | 3,331 | 2,748 |
| Operating income................... | 2,776 | 1,893 | 2,550 |
| **Other income** | | | |
| Interest.......................... | 3,325 | 626 | 270 |
| Equity in income (loss) of equity partnerships .................... | (3) | (7) | 862 |
| Recovery of loss provision on receivable from related party... | - | 1,569 | - |
|  | 3,322 | 2,188 | 1,132 |
| **Other expense** | | | |
| Interest.......................... | 3,491 | 1,354 | 1,457 |
| Depreciation...................... | 740 | 816 | 748 |
| Advisory fee to affiliate......... | 743 | 425 | 714 |
| Net income fee to affiliate....... | 453 | 130 | 169 |
| Provision for loss on receivable from related party. ............. | - | - | 1,568 |
| Provision for Asset Impairment..... | - | 848 | - |
| General and administrative........ | 563 | 779 | 1,038 |
|  | 5,990 | 4,352 | 5,694 |
| Net income (loss) from continuing operations...................... | 108 | (271) | (2,012) |
| **Discontinued operations:** | | | |
| Income (loss) from operations | (89) | (1,771) | (3,055) |
| Gain on sale of real estate by equity investees ............... | - | - | 383 |
| Gain on sale of operations........ | 5,473 | 3,824 | 6,769 |
| Net income (loss) from discontinued operations...................... | 5,384 | 2,053 | 4,097 |
| Net income (loss)................. | $ 5,492 | $ 1,782 | $ 2,085 |

Table of Contents

## PART I. FINANCIAL INFORMATION

## ITEM 1. FINANCIAL STATEMENTS

The accompanying Consolidated Financial Statements as of and for the three months ended March 31, 2005, have not been audited by independent certified public accountants, but in the opinion of the management of Income Opportunity Realty Investors, Inc. ("IORI"), all adjustments (consisting of normal recurring accruals) necessary for a fair presentation of IORI's consolidated financial position, consolidated results of operations and consolidated cash flows at the dates and for the periods indicated, have been included.

### INCOME OPPORTUNITY REALTY INVESTORS, INC.
### CONSOLIDATED BALANCE SHEETS

| | March 31, 2005 | December 31, 2004 |
|---|---|---|
| | (dollars in thousands, except per share) | |
| **Assets** | | |
| Real estate held for investment | $ 35,033 | $ 34,988 |
| Less—accumulated depreciation | (3,796) | (3,620) |
| | 31,237 | 31,368 |
| Related Party Notes and interest receivable | 55,454 | 54,911 |
| Investment in real estate partnerships | 596 | 604 |
| Cash and cash equivalents | 214 | 399 |
| Receivables from affiliates | 261 | 261 |
| Other assets | 3,244 | 3,658 |
| | $ 91,006 | $ 91,201 |
| **Liabilities and Stockholders' Equity** | | |
| Liabilities | | |
| Notes and interest payable | $ 44,372 | $ 44,571 |
| Payables to affiliates | 1,523 | 1,286 |
| Other liabilities | 1,081 | 1,553 |
| | 46,976 | $ 47,410 |
| Commitments and contingencies | | |
| Stockholders' equity | | |
| Common Stock, $.01 par value; authorized, 10,000,000 shares; issued and outstanding 1,389,345 shares in 2005 and 2004 | 14 | 14 |
| Paid-in capital | 61,983 | 61,983 |
| Accumulated deficit | (17,967) | (18,206) |
| | 44,030 | 43,791 |
| | $ 91,006 | $ 91,201 |

The accompanying notes are an integral part of these Consolidated Financial Statements.

Table of Contents

# INCOME OPPORTUNITY REALTY INVESTORS, INC.
## CONSOLIDATED STATEMENTS OF OPERATIONS

| | For the Three Months Ended March 31, | |
| | (dollars in thousands, except per share) | |
| | 2005 | 2004 |
|---|---|---|
| Property revenue | | |
| Rents | $ 1,529 | $ 2,136 |
| Property expense | | |
| Property operations (including $29 in 2005 and $32 in 2004 to affiliates and related parties) | 821 | 1,211 |
| Operating income | 708 | 925 |
| | | |
| Other income (loss) | | |
| Interest | 974 | 598 |
| Equity in loss of equity partnerships | (9) | (1) |
| | 965 | 597 |
| | | |
| Other expense | | |
| Interest | 936 | 978 |
| Depreciation | 177 | 342 |
| Advisory fee to affiliate | 167 | 193 |
| Net income fee to affiliate | 12 | 215 |
| General and administrative | 142 | 270 |
| | 1,434 | 1,998 |
| | | |
| Net income (loss) from continuing operations | 239 | (476) |
| | | |
| Discontinued operations: | | |
| Loss from discontinued operations | — | (128) |
| Gain on sale of operations | — | 3,257 |
| | | 3,129 |
| | | |
| Net income | $ 239 | $ 2,653 |
| | | |
| Earnings (loss) per share | | |
| Net income (loss) from continuing operations | $ 0.17 | $ (0.33) |
| Discontinued operations | — | 2.17 |
| Net income | $ 0.17 | $ 1.84 |
| | | |
| Weighted average common shares used in computing earnings per share | 1,389,345 | 1,438,945 |

The accompanying notes are an integral part of these Consolidated Financial Statements.

3

EX-21.1 2 dex211.htm SUBSIDIARIES OF THE REGISTRANT

EXHIBIT 21.1

## INCOME OPPORTUNITY REALTY INVESTORS, INC.
## SUBSIDIARIES OF THE REGISTRANT

The following is a list of all subsidiaries and partnership interests of Income Opportunity Realty Investors, Inc. and the state or other jurisdiction of organization or incorporation:

| NAME OF ENTITY | OWNERSHIP % | JURISDICTION OF ORGANIZATION OR INCORPORATION |
|---|---|---|
| **Corporations** | | |
| IORI Centura, Inc. | 100% | Nevada |
| IORI Falcon Point, Inc. | 100% | Nevada |
| IORI Enclave 5, Inc. | 100% | Nevada |
| IORI Keller Springs Tech, Inc. | 100% | Nevada |
| IORI Minerals, Inc. | 100% | Nevada |
| IORI Valley View, Inc. | 100% | Nevada |
| IORI Tristar Tech, Inc. | 100% | Nevada |
| Midland Odessa Properties, Inc. | 19.9% | California |
| Transcontinental Brewery, Inc. | 100% | Nevada |
| Transcontinental Parkway Corporation | 100% | Nevada |
| | | |
| **Partnerships** | | |
| Nakash Income Associates | 40% | Georgia |
| TCI Eaton Square LP | 10% | Texas |

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $7,000,000.00 | 08-22-2005 | 08-22-2007 | 10501716 | 469 / 26 | 1030081 | JERRY | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** IORI CENTURA, INC. (TIN: 20-3157822)
1800 VALLEY VIEW LANE, STE 300
DALLAS, TX 75234

**Lender:** Columbian Bank and Trust Company
Overland Park
4701 W. 110th Street
Overland Park, KS 66211

---

**Principal Amount: $7,000,000.00**       **Initial Rate: 8.500%**       **Date of Note: August 22, 2005**

**PROMISE TO PAY.** IORI CENTURA, INC. ("Borrower") promises to pay to Columbian Bank and Trust Company ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Million & 00/100 Dollars ($7,000,000.00), together with interest on the unpaid principal balance from August 22, 2005, until paid in full.

**PAYMENT.** Borrower will pay this loan in one principal payment of $7,000,000.00 plus interest on August 22, 2007. This payment due on August 22, 2007, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 22, 2005, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each three months. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 6.600% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 2,000 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.500% per annum. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 8.000% per annum or more than the maximum rate allowed by applicable law.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $7.50. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Columbian Bank and Trust Company, Overland Park, 4701 W. 110th Street Overland Park, KS 66211.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $25.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 7.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or



**EXHIBIT**

**2**

# PROMISSORY NOTE
## (Continued)

**Loan No: 10501716**

performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else who is not Lender's salaried employee to help collect this Note if Borrower does not pay. Borrower will be liable for all reasonable costs incurred in the collection of the Note, including but not limited to, court costs, attorneys' fees and collection agency fees, except that such costs of collection shall not include recovery of both attorneys' fees and collection agency fees.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Kansas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Kansas.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Johnson County, State of Kansas.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by A REAL ESTATE DEED OF TRUST FROM GRANTOR(S) TO LENDER DATED AUGUST 22, 2005 IN THE AMOUNT OF $7,000,000.00 ON THE PROPERTY LEGALLY DESCRIBED THEREIN AND COMMONLY KNOWN AS 13900 DALLAS PARKWAY, DALLAS, TEXAS 76240; 14175 DALLAS PARKWAY, DALLAS, TEXAS 76240; 13900 DALLAS PARKWAY, DALLAS, TEXAS 76264; 14000 INWOOD ROAD, FARMERS BRANCH, TEXAS 76244; 14098 INWOOD ROAD, FARMERS BRANCH, TEXAS 76244 .

**FINANCIAL STATEMENTS AND OTHER INFORMATION.** I agree to provide to you upon request and financial statements or information you may deem necessary. I warrant that all financial statements and information I provide to you are or will be accurate, correct and complete.

**PROPERTY TAX REQUIREMENTS.** I agree to provide to you paid tax receipts for the property securing this note no later than 30 days after said taxes are due and payable.

**RIGHT OF LENDER TO PAY DELINQUENT TAXES.** If real estate taxes for the property securing this note become 30 days delinquent, Lender has the right to pay the taxes due plus all penalties and interest added thereto and increase the note balance by the amount so paid.

**PREPAYMENT PENALTY.** A PREPAYMENT PENALTY OF ONE PERCENT (1%) OF THE OUTSTANDING BALANCE THAT IS PREMATURELY PAID WILL BE CHARGED IF THE LOAN IS PAID PRIOR TO THE EXPIRATION OF TWENTY-FOUR (24) MONTHS FROM THE DATE OF THE LOAN. THIS PENALTY DOES NOT APPLY WITH PAYMENTS RECEIVED FROM THE SALE OF PARCELS OF LAND MORTGAGED BY COLUMBIAN BANK. .

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Columbian Bank and Trust Company 701 S.Kansas Ave, Topeka, KS 66603.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

**IORI CENTURA, INC.**

By: _____
A. CAL ROSSI, JR., Vice President of IORI
CENTURA, INC.

## AMENDMENT TO PROMISSORY NOTE

This Amendment to Promissory Note ("Amendment") is executed effective August 22, 2005 ("Effective Date"), by and between IORI CENTURA, INC. ("Borrower") and COLUMBIAN BANK AND TRUST COMPANY ("Lender").

### RECITALS

A.  Borrower has given to Lender a Promissory Note ("Note") dated as of the Effective Date in the original principal amount of Seven Million and No/100 Dollars ($7,000,000).

B.  As part of the condition to the Note, Borrower and Lender have agreed to the provisions of this Amendment.

NOW, THEREFORE for and in consideration of the Note and Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  No Demand Provision. All provisions in the Note that provide Borrower shall pay the Note on demand are herby deleted. The principal due under the Note shall be payable on AUGUST 22, 2007            .

2.  Default. The section entitled "Payment Default" in the Note is revised to read as follows:

    "Payment Default. Borrower fails to make any payment within ten (10) days of when due under this Note."

3.  Except as otherwise amended hereby, the Note shall remain in full force and effect as originally written.

4.  This Amendment may be executed in multiple counterparts and by facsimile, all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Amendment to be duly executed by their respective officers as of the day and year first above written.

BORROWER:                         IORI CENTURA, INC.

                                  By:     _____
                                  Name:   A. CAL ROSSI, JR.
                                  Title:  VICE PRESIDENT

LENDER:

COLUMBIAN BANK AND TRUST COMPANY

By: _____
Name: TERRY E. NICKELSON
Title: VICE PRESIDENT

3490043

RECORDATION REQUESTED BY:
Columbian Bank and Trust Company
Overland Park
4701 W. 110th Street
Overland Park, KS 66211

5402694          $29.00  Deed of Trust
08/27/05

WHEN RECORDED MAIL TO:
Columbian Bank and Trust Company
Overland Park
4701 W. 110th Street
Overland Park, KS 66211

After recording return to:
Commonwealth Land Title Insurance Co.
5949 Sherry Lane, Suite 111
Dallas, Texas 75225
GF# 2228000342

SEND TAX NOTICES TO:
IORI CENTURA, INC.
1800 VALLEY VIEW LANE, STE 300
DALLAS, TX 75234

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## DEED OF TRUST

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY
REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT
BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY
NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

MAXIMUM LIEN. The lien of this Deed of Trust shall not exceed at any one time $7,000,000.00.

THIS DEED OF TRUST is dated August 22, 2005, among IORI CENTURA, INC., A NEVADA CORPORATION,
whose address is 1800 VALLEY VIEW LANE, STE 300, DALLAS, TX 75234 ("Grantor"); Columbian Bank and
Trust Company, whose address is Overland Park, 4701 W. 110th Street, Overland Park, KS 66211 (referred to
below sometimes as "Beneficiary"); and JOHN R. GRANGER, whose address is 4701 W. 110TH STREET,
OVERLAND PARK, KS 66211 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys to Trustee in trust, with power of sale, for the benefit of Lender as
Beneficiary, the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures;
and all easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to the real property,
including without limitation such rights as Grantor may have in all minerals, oil, gas, geothermal and similar matters, (the "Real Property")
located in DALLAS County, State of Texas:

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully
set forth herein.

The Real Property or its address is commonly known as  13900 DALLAS PARKWAY, 14031 DALLAS PARKWAY,
14175 DALLAS PARKWAY, 14000 INWOOD ROAD AND 14098 INWOOD ROAD, FARMERS BRANCH, TX
75244-4601. The Real Property tax identification number is 65-04786-971-027-0000, 24-16056-000-003-0000,
24-00040-000-001-0000, 24-00841-00B-001-0000 AND 24-09576-000-001-0000.

Grantor hereby absolutely assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present
and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in
the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL
PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS
UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE
FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of
Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the
Related Documents.

PURPOSE OF LOAN. The Note in the amount of $7,000,000.00 represents, in part or in whole, cash or other financial accommodations advanced or
committed by Lender to Grantor on August 22, 2005 at Grantor's request and which Grantor will use under its charter powers to discharge corporate
debts. Grantor represents to Lender that its board of directors has authorized its legally elected, qualified, and acting officers to execute the Note and
this Deed of Trust.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the
following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use,
operate or manage the Property; and  (3)  collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance
necessary to preserve its value.

2005 68 09097



EXHIBIT
3

 **DEED OF TRUST**
**(Continued)** 

Loan No: 10501716            Page 2

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent. This restriction will not apply to rights and easements (such as gas and oil) not owned by Grantor and of which Grantor has informed Lender in writing prior to Grantor's signing of this Deed of Trust.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and Lender's reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender, with losses made payable to Lender. GRANTOR MAY FURNISH THE REQUIRED INSURANCE WHETHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTOR OR THROUGH EQUIVALENT INSURANCE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF TEXAS. If Grantor fails to provide any required insurance or fails to continue such insurance in force,

 **DEED OF TRUST** 
**(Continued)**

Loan No: 10501716                                                                                                           Page 3

Lender may, but shall not be required to, do so at Grantor's expense, and the cost of the insurance will be added to the Indebtedness. If any such insurance is procured by Lender, Grantor will be so notified, and Grantor will have the option of furnishing equivalent insurance through any insurer authorized to transact business in Texas. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION, JUDGMENTS AND AWARDS.** The following provisions relating to condemnation proceedings, judgments, decrees and awards for injury to the Property are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** To the extent permitted by applicable law, all judgments, decrees and awards for injury or damage to the Property, or any part of the Property, and awards pursuant to proceedings for condemnation of the Property, are hereby absolutely assigned to Lender, and if all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award, judgment or decree shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security

 **DEED OF TRUST**
**(Continued)** 

Loan No: 10501716                                                                                          Page 4

interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-In-Fact. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Grantor a release of this Deed of Trust lien and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. However, it is agreed that the payment of all the Indebtedness and performance of such obligations shall not terminate this Deed of Trust unless the liens and interests created hereby are released by Lender by a proper recordable instrument. Any filing fees required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

Payment Default. Grantor fails to make any payment when due under the Indebtedness.

Other Defaults. Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

Compliance Default. Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

Default on Other Payments. Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

False Statements. Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Defective Collateralization. This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Insolvency. The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Breach of Other Agreement. Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Adverse Change. A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Right to Cure. If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all

 **DEED OF TRUST** 
(Continued)

Loan No: 10501716                                                                                          Page 5

reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

   **Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

   **Accelerate Indebtedness.** Lender may declare the unpaid principal balance of the Indebtedness due and payable. In no event will Grantor be required to pay any unearned interest.

   **Foreclosure.** If Lender invokes the power of sale, Trustee, at the request of Lender, may sell all or any portion of the Property at public auction to the highest bidder for cash at the location within the courthouse designated by the County Commissioners Court, or if no such area has been designated, at the area designated in the notice of sale within the courthouse, between the hours of 10:00 A.M. and 4:00 P.M. on the first Tuesday of any month, after the Trustee or its agent has given notice of the time and place of sale and of the property to be sold as required by the Texas Property Code, as then amended.

   **UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

   **Collect Rents.** As additional security for the payment of the Indebtedness, Grantor hereby absolutely assigns to Lender all Rents as defined in the Definitions section of this Deed of Trust. Until the occurrence of an Event of Default, Grantor is granted a license to collect and retain the Rents; however, upon receipt from Lender of a notice that an Event of Default exists under this Deed of Trust, Lender may terminate Grantor's license, and then Lender, as Grantor's agent, may collect the Rents. In addition, if the Property is vacant, Lender may rent or lease the Property. Lender shall not be liable for its failure to rent the Property, to collect any Rents, or to exercise diligence in any matter relating to the Rents; Lender shall be accountable only for Rents actually received. Lender neither has nor assumes any obligation as lessor or landlord with respect to any occupant of the Property. Rents so received shall be applied by Lender first to the remaining unpaid balance of the Indebtedness, in such order or manner as Lender shall elect, and the residue, if any, shall be paid to the person or persons legally entitled to the residue.

   **Trustee's Powers.** Grantor hereby jointly and severally authorizes and empowers Trustee to sell all or any portion of the Property together or in lots or parcels, as Trustee may deem expedient, and to execute and deliver to the purchaser or purchasers of such Property good and sufficient deeds of conveyance of fee simple title, or of lesser estates, and bills of sale and assignments, with covenants of general warranty made on Grantor's behalf. In no event shall Trustee be required to exhibit, present or display at any such sale any of the Property to be sold at such sale. The Trustee making such sale shall receive the proceeds of the sale and shall apply the same as provided below. Payment of the purchase price to Trustee shall satisfy the liability of the purchaser at any such sale of the Property, and such person shall not be bound to look after the application of the proceeds.

   **Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

   **Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, (2) vacate the Property immediately upon the demand of Lender, or (3) if such tenants refuse to surrender possession of the Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Grantor expressly waives all damages sustained by reason thereof.

   **Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Trustee may convey all or any part of the Property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty. Grantor waives all requirements of appraisement, if any. The affidavit of any person having knowledge of the facts to the effect that proper notice as required by the Texas Property Code was given shall be prima facie evidence of the fact that such notice was in fact given. Recitals and statements of fact in any notice or in any conveyance to the purchaser or purchasers of the Property in any foreclosure sale under this Deed of Trust shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed. Any sale under the powers granted by this Deed of Trust shall be a perpetual bar against Grantor, Grantor's heirs, successors, assigns and legal representatives.

   **Proceeds.** Trustee shall pay the proceeds of any sale of the Property (a) first, to the expenses of foreclosure, including reasonable fees or charges paid to the Trustee, including but not limited to fees for enforcing the lien, posting for sale, selling, or releasing the Property, (b) then to Lender the full amount of the Indebtedness, (c) then to any amount required by law to be paid before payment to Grantor, and (d) the balance, if any, to Grantor.

   **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Deed of Trust, Lender shall be entitled to recover from Grantor Lender's reasonable attorneys' fees and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

 

## DEED OF TRUST
(Continued)

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other lienholder of the Property of the commencement of a foreclosure proceeding or of the commencement of any other action to which Lender may avail itself as a remedy, except to the extent required by applicable law or by written agreement.

**Trustee.** In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Substitute Trustee.** Lender, at Lender's option, together with any Related Documents, from time to time, and more than once, may appoint in writing a successor or substitute trustee, with or without cause, including the resignation, absence, death, inability, refusal or failure to act of the Trustee. The successor or substitute trustee may be appointed without ever requiring the resignation of the former trustee and without any formality except for the execution and acknowledgment of the appointment by the beneficiary of this Deed of Trust. The successor or substitute trustee shall then succeed to all rights, obligations, and duties of the Trustee. This appointment may be made on Lender's behalf by the President, any Vice President, Secretary, or Cashier of Lender.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**VALUATION OF COLLATERAL.** The Lender may require an appraisal or valuation of the property securing this loan at any time. The Grantor will allow the Lender reasonable access to the property and will reimburse the Lender for any costs incurred in connection with any valuation and/or appraisal of collateral.

**PROPERTY TAX REQUIREMENTS.** I agree to provide to you paid tax receipts for the property securing this note by no later than 30 days after said taxes are due and payable.

**RIGHT OF LENDER TO PAY DELINQUENT TAXES.** If real estate taxes for the property securing this note become 30 days delinquent, Lender has the right to pay the taxes due plus all penalties and interest added thereto and increase the note balance by the amount so paid.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Deed of Trust will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Texas. In all other respects, this Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Kansas without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Deed of Trust is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Deed of Trust has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the state of Kansas.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Johnson County, State of Kansas.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be

 

Loan No: 10501716

**DEED OF TRUST**
**(Continued)**

Page 7

binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Columbian Bank and Trust Company, and its successors and assigns.

**Borrower.** The word "Borrower" means IORI CENTURA, INC. and includes all co-signers and co-makers signing the Note.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means IORI CENTURA, INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Columbian Bank and Trust Company, its successors and assigns.

**Note.** The word "Note" means the promissory note dated August 22, 2005, **in the original principal amount of $7,000,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means JOHN R. GRANGER, whose address is 4701 W. 110TH STREET, OVERLAND PARK, KS 66211 and any substitute or successor trustees.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.**

Loan No: 10501716  DEED OF TRUST
**(Continued)**

Page 8

GRANTOR:

IORI CENTURA, INC.

By: _____
A. CAL ROSSI, JR., Vice President of IORI
CENTURA, INC.

## CORPORATE ACKNOWLEDGMENT

STATE OF _TEXAS_____  )
                                   ) SS
COUNTY OF _DALLAS_____  )

This Instrument was acknowledged before me on __AUGUST 19_____, 20_05_ by A. CAL ROSSI, JR., Vice President of
IORI CENTURA, INC. a Nevada corporation, on behalf of said corporation.

JENNIFER McCORMICK
MY COMMISSION EXPIRES
September 16, 2006

_____
Notary Public, State of Texas

LASER PRO Lending, Ver. 5.26.00.006  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - TX/XX E:\LASERPRO\CFI\LPL3301.FC  TR-1997  PR-16

## Exhibit A

TRACT I, PARCEL A

A tract of land situated in the Elisha Fike Survey, Abstract No. 478, in the City of Farmers Branch, Dallas County, Texas, and being a part of Lot 1 of A & H Subdivision as recorded in Volume 75174, Page 748 of the Deed Records Dallas County, Texas (DRDCT) and more particularly described as follows:

Beginning at a ½ inch iron rod found in the West line of Dallas North Tollway (R.O.W. varies), said point being 247.85 feet in a Southerly direction from the South corner of a right-of-way corner clip at the intersection of the South line of Spring Valley Road (100 foot R.O.W.) with the West line of Dallas North Tollway;

Thence South 00 degrees 18 minutes 19 seconds East, along the West line of said Dallas North Tollway, a distance of 39.53 feet to a ½ inch iron rod found for corner at the beginning of a curve to the right having a central angle of 12 degrees 44 minutes 17 seconds and a radius of 371.97 feet;

Thence South along said curve to the right, an arc distance of 82.70 feet to a ½ inch iron rod found at the beginning of a reverse curve to the left, having a central angle of 01 degrees 56 minutes 56 seconds and a radius of 726.20 feet;

Thence South along said curve to the left, an arc distance of 24.70 feet to a 5/8 inch iron rod set with a cap stamped "Pate Engrs" for corner;

Thence South 90 degrees 00 minutes 00 seconds East, a distance of 5.09 feet to a ½ inch iron rod found for corner lying at the beginning of a curve the left having a central angle of 10 degrees 50 minutes 13 seconds and radius of 721.20 feet;

Thence South along said curve to the left, an arc distance of 136.41 feet a ½ inch iron rod found for corner;

Thence South 00 degrees 13 minutes 57 seconds East, a distance of 114.10 feet to a ½ inch iron rod found for corner;

Thence North 90 degrees 00 minutes 00 seconds West, a distance of 491.85 feet to a 5/8 inch iron rod with a cap stamped "Pate Engrs" set for corner in the Easterly line of a 100 foot wide Dallas Power & Light Company easement according to the deed recorded in Volume 4633, Page 308 (DRDCT);

Thence North 17 degrees 01 minutes 00 seconds West, along the Easterly line of said 100 foot wide Dallas Power & Light Company easement, a distance of 413.30 feet to a ½ inch iron rod found for corner, said point also being the Southwest corner of the 5050 Spring Valley Road tract;

Thence North 90 degrees 00 minutes 00 seconds East, along the South line of said 5050 Spring Valley Road tract, a distance of 262.82 feet to a ½ inch iron rod found for corner, said point also being the Southwest corner of Lot 1, Block A of the Centura Addition;

Thence North 89 degrees 57 minutes 12 seconds East, a distance of 370.63 feet to the Point of Beginning, and containing 5.0815 acres of land, more or less. (221,346.30 sq. ft.)

TRACT I, PARCEL B:

A tract of land situated in the Elisha Fike Survey, Abstract Number 478, in the City of Farmers Branch, Dallas County, Texas and being all of Lot 1 of Inwood Road Office Development, an addition to the City of Farmers Branch according to the plat recorded in Volume 86190, Page 6128 of the Deed Records of Dallas County, Texas (DRDCT), and more particularly described a follows:

Beginning at a 5/8 inch iron rod with cap stamped "Pate Engrs" set for the most Southerly corner of a right-of-way corner clip located at the point of the intersection of the Southerly right-of-way line of Spring Valley Road 100 foot wide right-of-way) with the Easterly right-of-way line of Inwood Road (a 102 foot wide R.O.W.);

Thence along the Southerly right-of-way line of said Spring Valley Road as follows:

Continuing along said corner clip, North 29 degrees 55 minutes 35 seconds East, a distance of 19.38 feet to a ½ inch iron rod found for the Northwest corner of said Lot 1;

South 89 degrees 54 minutes 22 seconds East, a distance of 58.28 feet to a 5/8 inch iron rod with cap stamped "Pate Engrs" set for corner in the Northeast corner of said Lot 1 and being located in the Westerly line of a 100 foot wide Dallas Power & Light Company easement according to the Deed recorded in Volume 4633, Page 308 (DRDCT);

Thence South 17 degrees 01 minutes 00 seconds East, departing the Southerly right-of-way line of said Spring Valley Road and following the Westerly line of said 100 foot wide Dallas Power & Light Company easement, a distance of 728.88 feet to a ½ inch iron rod found for the Southeast corner of said Lot 1;

Thence South 72 degrees 59 minutes 00 seconds West, departing the Westerly line of said 100 foot wide Dallas Power & Light Company easement, a distance of 79.90 feet to a ½ inch iron rod found for the Southwest corner of said Lot 1 and being located in the Easterly right-of-way line of said Inwood Road (a 92 foot R.O.W. at this point);

Thence North along the Easterly right-of-way line of said Inwood Road as follows:

North 17 degrees 01 minutes 00 seconds West, a distance of 696.91 feet to ½ inch iron rod found for the beginning of a curve to the right having a radius of 150.00 feet and a central angle of 17 degrees 10 minutes 26 seconds;

Continuing along said curve to the right for an arc length of 44.96 feet to a ½ inch iron rod found for the beginning of a reverse curve to the left having a radius of 75.00 feet and a central angle of 17 degrees 10 minutes 27 seconds;

Continuing along said reverse curve to the left, an arc length of 22.48 feet to a ½ inch iron rod found for the point of tangency;

North 17 degrees 01 minutes 00 seconds West, a distance of 69.45 feet to the Point of Beginning, and containing 1.3295 acres of land, more or less (57,911.3 sq. ft.).

TRACT II:
A tract of land situated in the Elisha Fike Survey, Abstract No. 478, Dallas County, Texas, and being all of Lot 1 in Block B of Beltway/Champion No. 1, an addition to the City of Farmers Branch, Dallas County, Texas, according to the plat thereof recorded in Volume 93192, Page 4878, Deed Records of Dallas County, Texas (DRDCT), said tract conveyed to Janlaw Properties, Inc. by deed recorded in Volume 97059, Page 1242, DRDCT, and more particularly described as follows:

BEGINNING at a ½ inch iron rod found for a corner in the Northeast line of Inwood Road (a 92 foot right-of-way), said point being the Northwest corner of said Lot 1 in Block B, said point also being the Southwest corner of Lot 1 of Inwood Road Office Development Park, an addition to the City of Dallas, Texas according to the map thereof recorded in Volume 86190, Page 6128, DRDCT;

THENCE North 72 degrees 59 minutes 00 seconds East, departing the Northeast line of Inwood Road and with the common line of said Lot 1 in Block B and Lot 1 of Inwood Road Office Development Park, a distance of 79.90 feet to a ½ inch iron rod found for a corner, said point being the Northeast corner of said Lot 1 in Block B and said point lying in the Southwest line of a 100 foot wide Dallas Power & Light Company right-of-way recorded in Volume 4633, Page 308, DRDCT;

THENCE South 17 degrees 01 minutes 00 seconds East, with the Northeast line of said Lot 1 in Block B and the Southwest line of the said Dallas Power & Light Company right-of-way, a distance of 466.72 feet to a 5/8 inch iron rod found for a corner in the Northeast line of Inwood Road, said point being the South corner of said Lot 1 of Block B and said point being in a non-tangent curve to the left with a central angle of 19 degrees 26 minutes 58 seconds and radius of 746.00 feet;

THENCE Northwesterly, with the Northeast line of Inwood Road and along said curve, an arc distance of 253.24 feet to a ½ inch iron rod found at the beginning of a curve to the right with a central angle of 19 degrees 24 minutes 48 seconds and radius of 654.00 feet;

THENCE Northwesterly, continuing with the Northeast line of Inwood Road and along said curve, an arc distance of 221.59 feet to the Point of Beginning, and containing 0.4171 acres of land, more or less

(18,167.2 square feet).

TRACT III:

A tract of land situated in the Elisha Fike Survey, Abstract No. 478, Dallas, County, Texas, and being all of Lot 3 of Stanford Corporate Centre No. 2, an addition to the City of Farmers Branch according to the plat recorded in Volume 88251, Page 4182, Deed Records, Dallas County, Texas (DRDCT), and more particularly described as follows:

BEGINNING at a ½ inch iron rod found for corner in the Westerly line of Dallas North Tollway (a variable width R.O.W.), being the Easterly common corner between said Lot 3 and Lot 2 of said Stanford Corporate Centre No. 2;

THENCE South 89 degrees 45 minutes 00 seconds West with the common line between said Lot 2 and Lot 3 a distance of 395.08 feet to a ½ inch iron rod found for corner in the Northeasterly line of a 100 foot wide Dallas Power & Light Company right-of-way, being the Westerly common corner between said Lot 3 and Lot 2;

THENCE North 17 degrees 01 minutes 00 seconds West with the common line between said Dallas Power & Light Company right-of-way and said Lot 3 a distance of 335.09 feet to a 5/8 inch iron rod with cap stamped "Pate Engrs" set for corner;

THENCE North 90 degrees 00 minutes 00 seconds East a distance of 491.85 feet to a ½ inch iron rod found for corner in the Westerly line of said Dallas North Tollway;

THENCE South 00 degrees 13 minutes 56 seconds East with the Westerly line of said Dallas North Tollway a distance of 318.70 feet to the Point of Beginning, and containing 141,755 square feet or 3.2542 acres of land, more or less.

 **PROMISSORY NOTE** 

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $7,000,000.00 | 08-22-2007 | 08-22-2008 | 105017.16 | 409 / 25 | 1030081 | TJB | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  IORI CENTURA, INC (TIN: 20-3157822)
1800 VALLEY VIEW LANE, STE 300
DALLAS, TX 75234

**Lender:**  Columbian Bank and Trust Company
Overland Park
4701 W. 110th Street
Overland Park, KS 66211

---

**Principal Amount: $7,000,000.00**      **Initial Rate: 10.250%**      **Date of Note: August 22, 2007**

**PROMISE TO PAY.** IORI CENTURA, INC ("Borrower") promises to pay to Columbian Bank and Trust Company ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Million & 00/100 Dollars ($7,000,000.00), together with interest on the unpaid principal balance from August 22, 2007, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment of $7,000,000.00 plus interest on August 22, 2008. This payment due on August 22, 2008, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 22, 2007, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each three months. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 2.000 percentage points over the Index, resulting in an initial rate of 10.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $7.50. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Columbian Bank and Trust Company, Overland Park, 4701 W. 110th Street Overland Park, KS 66211.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**EXHIBIT**

**4**

## PROMISSORY NOTE
### (Continued)

Loan No: 10501716                                                                                    Page 2

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else who is not Lender's salaried employee to help collect this Note if Borrower does not pay. Borrower will be liable for all reasonable costs incurred in the collection of this Note, including but not limited to, court costs, attorneys' fees and collection agency fees, except that such costs of collection shall not include recovery of both attorneys' fees and collection agency fees.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Kansas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Kansas.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Johnson County, State of Kansas.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by A REAL ESTATE MORTGAGE FROM GRANTOR TO LENDER DATED AUGUST 22, 2005 IN THE AMOUNT OF $7,000,000.00 RECORDED WITH THE DALLAS COUNTY REGISTER OF DEEDS ON AUGUST 27, 2005 AS DOCUMENT # 3490043 IN BOOK 168 ON PAGE 09097ON THE PROPETY LEGALLY DESCRIBED THEREIN AND COMMONLY KNOWN AS 13900,14031,14175 DALLAS PARKWAY AND 1400, 14098 INWOOD ROAD, FARMERS BRANCH, TEXAS.

**FINANCIAL STATEMENTS AND OTHER INFORMATION.** I agree to provide to you upon request and financial statements or information you may deem necessary. I warrant that all financial statements and information I provide to you are or will be accurate, correct and complete.

**PROPERTY TAX REQUIREMENTS.** I agree to provide to you paid tax receipts for the property securing this note by no later than 30 days after said taxes are due and payable.

**RIGHT OF LENDER TO PAY DELINQUENT TAXES.** If real estate taxes for the property securing this note become 30 days delinquent, Lender has the right to pay the taxes due plus all penalties and interest added thereto and increase the note balance by the amount so paid.

**PRIOR NOTE.** THE PROMISSORY NOTE FROM GRANTOR TO LENDER DATED AUGUST 22, 2005 IN THE AMOUNT OF $7,000,000.00, TOGETHER WITH ANY AND ALL RENEWALS, EXTENSIONS, MODIFICATIONS, SUBSTITUTIONS, OR REPLACEMENTS THEREOF.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Columbian Bank and Trust Company 701 S.Kansas Ave. Topeka, KS 66603.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:


IORI CENTURA, INC


By: _____
A. Cal Rossi, Jr., Vice President of IORI
CENTURA, INC              STEVEN A. SHELLEY

## ALLONGE

This Allonge is attached to and made a part of that certain promissory note dated August 22, 2007 executed by IORI Centura, Inc., together with any amendments and riders and payable to the order of Columbian Bank and Trust Company, Topeka, Kansas("Columbian"), in the original principal amount of $7,000,000.00 (the "Note").

On August 22, 2008, Columbian was closed by the Office of The State Bank Commissioner, State of Kansas, and the Federal Deposit Insurance Corporation (the "FDIC") was appointed receiver (the "Receiver"). Pursuant to 12 U.S.C. § 1821(d), the Receiver succeeded to all of the rights, title, and interests of Columbian in and to the Note and the indebtedness evidenced thereby.

Pay to the order of *The Bank* without representation or warranty, express or implied, by, or recourse against, the FDIC in any and all of its respective and various capacities.

FEDERAL DEPOSIT INSURANCE CORPORATION, as
Receiver of The Columbian Bank and Trust Company, Topeka, Kansas

By: _____

Name:  Adron Neill

Title:   Attorney in Fact

Date:  June ___10___, 2009



EXHIBIT
5



209920207096
AL 1/3

Document:              Receiver's Assignment of Mortgage or Deed of Trust

Date of Document:      June 10, 2009

Grantor:               Federal Deposit Insurance Corporation, as
                       Receiver of The Columbian Bank and Trust Company, Topeka, Kansas
                       4701 W. 110th Street
                       Overland Park, Kansas 66211

Grantee:               The Bank
                       901 Santa Fe Drive
                       Weatherford, Texas 76086

Reference Book and Pages:   Deed of Trust recorded with the Dallas County Clerk, recorded
                            August 26, 2005, File/ID#200503490043, Book 2005168, Pages
                            9097-9108



EXHIBIT

6

### RECEIVER'S ASSIGNMENT OF MORTGAGE OR DEED OF TRUST

Know all men by these presents,

On August 22, 2008, The Columbian Bank and Trust Company, Topeka, Kansas ("Columbian") was closed by the Office of State Bank Commissioner, State of Kansas and the Federal Deposit Insurance Corporation (the "FDIC") was appointed receiver (the "Receiver"). Pursuant to 12 U.S.C. § 1821(d), the Receiver succeeded to all of the rights, title, and interests of Columbian.

Now therefore, the undersigned hereby grants, assigns quitclaims and transfers to *The Bank* without recourse, all beneficial interest under that certain Mortgage or Deed of Trust hereafter stated together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all the rights accrued or to accrue under said Mortgage or Deed of Trust.

That certain Mortgage or Deed of Trust, executed by, IORI Centura, Inc. in the amount of $7,000,000.00 recorded August 26, 2005 in Dallas County, Texas in official record volume 2005168  page 9097-9108.

FEDERAL DEPOSIT INSURANCE CORPORATION, as
Receiver of The Columbian Bank and Trust Company, Topeka, Kansas

By: _____

Name:  Adron Neill

Title:  Attorney in Fact

Date:  June _10_ , 2009

1

State of Kansas}

County of Johnson}

On the _10th_ day of June, 2009, before me, the undersigned, personally appeared Adron Neill, acting as Attorney in Fact for Federal Deposit Insurance Corporation, receiver of The Columbian Bank and Trust Company, Topeka, Kansas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the County of Johnson, State of Kansas

NOTARY PUBLIC _Dorthy C. Anderson_

Dorthy C. Anderson

Dorthy C. Anderson
NOTARY PUBLIC - STATE OF KANSAS
MY APPT. EXP: 07-21-2012

My commission expires: 07-21-2012

Return to:  FDIC as Receiver of The Columbian Bank and Trust Company
4701 W. 110th Street
Overland Park, KS  66211

Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
07/21/2009 09:46:16 AM
$24.00



200900207696

### SERVICING RIGHTS ASSIGNMENT AGREEMENT

This SERVICING RIGHTS ASSIGNMENT AGREEMENT ("Agreement") is dated this _10th_ day of June 2009, by and between The Bank, ("Weatherford") a Texas chartered banking association located in Weatherford Texas, and the Federal Deposit Insurance Corporation, as Receiver, for the former Columbian Bank and Trust Company, Topeka, Kansas ("Receiver").

#### WITNESSETH

WHEREAS, Weatherford is a participant in loan numbers: 10501716 (IORI Centura, Inc.); 10503341 (Sterling Energy Resources, Inc.); 10501732 (Eldan Properties, LLC); and 10503095 (The Dental Office of Michael Woody) ("Loans") that were originated by the former Columbian Bank and Trust Company ("Columbian") and are currently being serviced by the Receiver.

WHEREAS, Weatherford desires to purchase the Receiver's Servicing Rights and full ownership in the Loans, and to have the Servicing Rights and full ownership in the Loans assigned and transferred to Weatherford.

NOW, THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged by Weatherford and Receiver, Receiver does hereby grant, bargain, sell, assign, set over, convey and transfer, without recourse, to Weatherford all of Receiver's right, title and interest in and to the Servicing Rights associated with the Loans.

This Agreement shall be binding upon and enure to the benefit of Weatherford and Receiver and each of their respective successors and assigns.

This Agreement, and the rights and obligations of the parties hereunder, shall be governed by and construed in accordance with the laws of the State of Kansas and applicable federal laws and regulations.

Receiver does hereby covenant and agree to with Weatherford that it shall, from time to time, at the request of Weatherford execute, acknowledge and deliver to Weatherford any and all further instruments, documents, endorsements, assignments, information, materials and other papers as may be reasonably required to transfer the Servicing Rights to the Loans to Weatherford and to give full force and effect to the full intent and purposes of this agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

THE BANK, in Weatherford, Texas

By: _____     June 10, 2009
Name: Mark Riebe
Title:  President, Chairman

FEDERAL DEPOSIT INSURANCE CORPORATION,
RECEIVER FOR THE COLUMBIAN BANK & TRUST COMPANY

By: _____  —  June 10, 2009
Name: Adron Neill
Title:   Post Closing Asset Manager/ Attorney in Fact
         Attorney for Fact



EXHIBIT

7

## CERTIFICATE OF PARTICIPATION

TO      First Bank & Trust                                    Date      June 10, 2009

This certifies that The Bank, Weatherford, Texas, is the owner of a note to      IORI Centura, Inc.
("Borrower"), some or all of which is evidenced by a promissory note payable to The Bank, through a loan swap with the FDIC,
described as follows (the "Note")

**Description of Note**

| Alt Note No | Date | Principal Amount | Payment Amount | Interest Rate | Maturity Date |
|---|---|---|---|---|---|
| 10501716 | August 22, 2007 | 7,000,000.00 | | WSJP+2.00 | August 22, 2008 |

| **Special Conditions** | | | |
|---|---|---|---|
| Days Base | 365,360 | Line of Credit | Interest Payable | WSJP +2.0 percentage points, default rate is 5.0 percentage points over face rate of note |

We hereby acknowledge receipt from you of $      4,500,000.00      on account of your participation in this loan. This Certificate of Participation is being issued to you subject to the following terms and conditions:

1   This certificate evidences your participation in the Note, to the extent of $      4,500,000.00      of the principal outstanding under the Note at this time. You are neither obligated nor entitled to participate in any advance which may be made under the Note at a later date; your participation hereunder being limited to the dollar amount indicated. Whenever any principal or interest payment is made under the "Note", we will remit your pro-rata share.

2   Should there be a default under the Note, you will share in the collateral securing the Note, or in the proceeds thereof after foreclosure, in proportion to your pro-rata share of the Note at the time of such default.

3   It is agreed and understood that the interest payable to you shall be at the face rate of      WSJP +2.0% (edc)      per annum stipulated in the note computed from the date of this Certificate upon the principal amount of your participation in the Note outstanding from time to time.

4   We agree to use the same care in servicing the Note that we use in servicing Notes wholly owned by us. We will use our sole discretion in exercising our rights with respect to the Note except as limited by paragraph 6.

5   In the event of default you agree to reimburse us in proportion to your participation in the Note for all expenses and liabilities incurred by us in connection with the Note, including attorney's fees.

6   We will not without your prior consent change a material term in the Note, or release any collateral security for or guarantor of the Note.

7   We will endeavor to furnish you with available credit information coming to our attention relating to the quality of the loan evidenced by the Note. We will notify you of any permitted material deviation from the contractual terms of the Note or of any agreement securing it or executed in connection with the loan evidenced by the Note. By your acceptance hereof, you warrant and represent to us that you have received information adequate to enable you to make an informed decision as to the quality of the loan evidenced by the Note.

8   This participation is sold without recourse on us. Unless specifically incorporated into the Certificate of Participation, we have no obligation to repurchase any portion of the participation represented by this Certificate.

9   We make no representations and assume no responsibility with respect to the execution, validity, or enforcement of the Note or any security for payment of same, or with respect to any representations, warranties, or statements made by Borrower.

10   When the provisions of this paragraph 10 are in conflict with the provisions set out elsewhere in this Certificate, the provisions of the paragraph will be deemed to govern.

**Description of Collateral**

FLDT - 3 Tracts of land located in Dallas County, Texas, Title Policy, Continuing unlimited guaranty of Income Opportunity Realty Investments, Inc

If the foregoing is in accordance with your understanding, please so indicate by signing both copies and returning the duplicate to us.

The Bank - Weatherford

By

Acceptance

The undersigned Purchasing Bank hereby acknowledges receipt of the original of the above Certificate of Participation and does hereby accept all of its terms and conditions this      10th      day of      June      20 09

First Bank & Trust

By

First Bank & Trust President

EXHIBIT
8
tabbies

<u>Certificate of Participation Addendum</u>

Borrower:_____IORI Centura, Inc._____

Loan Number:_____10501716_____

To the extent that this addendum is in conflict with the original Participation Agreement, the terms of this addendum shall control.

As condition for First Bank & Trust Co. to purchase a _64.29_% interest (pro-rata) in the loan owned by The Bank - Weatherford, extended to <u>IORI Centura, Inc.</u>. It is further agreed the two parties will be bound as follows:

1.  First Bank & Trust Co. will receive pro-rata share of all accrued interest, whether earned or not; including but not limited to interest owed in relation to the loan swap

2.  First Bank & Trust Co. will receive or be entitled to receive the specific discount of $100,000.00, as agreed by both parties.

3.  First Bank & Trust Co. and The Bank - Weatherford agree that all payments of principal and interest will be shared on a pro-rata basis as to the current outstanding balance.

4.  First Bank & Trust Co. and The Bank - Weatherford will share expenses incurred after the participation agreement, on a pro-rata basis as to the current outstanding balance. It is further agreed and understood cost to collect already accrued or expensed will not be included or considered as part of this participation agreement.

5.  In the event subject loan is classified, per regulatory definitions, First Bank & Trust Co. and The Bank - Weatherford will exercise its' best effort to remediate or eliminate this credit within 90 days upon completion of the participation.

6.  First Bank & Trust Co., through execution of this Participation Agreement; will become the lead bank as it pertains to billing of principal, interest and collection of payments. The Bank - Weatherford, along with Mark Riebe, will remain critical to the process and negotiation of successful repayment and restructuring of any loan agreements. Thus, it will be necessary in certain instances where by Mr. Riebe is the point person in the loan process regarding this participation.

_____
Greg Garland
President of First Bank & Trust

_____
Mark Riebe
President of The Bank-Weatherford

**FDIC as Receiver for Columbian Bank and Trust**
4701 W. 110th Street
Overland Park, KS  66211
913-491-1061

August 3, 2009

Income Opportunity Realty Investors, Inc.
Attn:  Ms. Brenda Collier
1800 Valley View Lane, Suite 300
Dallas, TX  75234

  Re:  Check received

Ms. Brenda Collier:

We are in receipt of check #239950 in the amount of $31,645.83 made payable to
Columbian Bank Attn: Troy J Bettis, 4701 W. 110th Street, Overland Park, KS 66211.

As of June 10, 2009, Columbian Bank and Trust no longer is the holder of the note on
loan #10501716 to IORI, Centura, Inc.  As referenced in the attached letter, this loan has
been acquired by First Bank and Trust, Lubbock, Texas.  I have voided the enclosed
check.

If you should have any questions, please contact Mark Riebe, President of The Bank,
Weatherford , Texas (817) 596-9998, or Greg Garland, President of First Bank and Trust,
Lubbock, Texas (806) 788-2801.

Sincerely,

Adron Neill, Post Closing Asset Manager
Federal Deposit Insurance Corporation
Receiver for The Columbian Bank and Trust Company

cc:   Mark Riebe, President – The Bank
  901 Santa Fe
  Weatherford, TX  76086

  Greg Garland, President – First Bank and Trust
  7806 Indiana Avenue
  Lubbock, Texas  79423

Attachment



EXHIBIT
9



## FDIC

## Federal Deposit Insurance Corporation
### as Receiver for Columbian Bank and Trust Company
4701 W. 110th Street, Overland Park, KS  66211

July 1, 2009

IORI Centura, Inc.

1800 Valley View Lane, Suite 200

Dallas, Texas  75234

Dear Ms. Gonzalez:

As of June 10, 2009, First Bank & Trust, Lubbock, Texas acquired loan number 10501716 to IORI Centura, Inc. in the amount of $7,000,000.00 from the FDIC as Receiver for the former Columbian Bank and Trust Company, Topeka, Kansas.  You may now contact either Greg Garland, President of FB&T, Lubbock (806) 788-2801 or Mark Riebe, President of The Bank, Weatherford, Texas (817) 596-9998 regarding this loan.

If you have any questions regarding this letter, please contact Lori Roberts with the FDIC as Receiver for Columbian Bank at (913) 451-6829.

Sincerely,

Adron Neill,
Post Closing Asset Manager
Federal Deposit Insurance Corporation,
Receiver for the Columbian Bank and Trust Company

REORDER 565 • U.S. PATENT NO. 5534290, 5575608, 6641163, 5796333, 6684384, 96

**COLUMBIAN BANK**
66211

CHECK PAYMENT NBR          239950          DATE          07/30/2009

| INVOICE | DESCRIPTION | NET AMOUNT |
|---|---|---|
| 10501716_0609 | IORI Centura Land Int 6/2009 | $ 31,645.83 |

Income Opportunity Realty Inv
1800 Valley View Lane
Suite 300
Dallas, TX 75234

Colonial Checking

TOTALS          $ 31,645.83

---

THIS CHECK IS VOID WITHOUT A PURPLE & BLUE BORDER AND BACKGROUND PLUS A KNIGHT & FINGERPRINT WATERMARK ON THE BACK - HOLD AT ANGLE TO VIEW

Income Opportunity Realty Investors, Inc          Colonial Bank, N.A.          VOID AFTER 90 DAYS          239950
1800 Valley View Lane, Ste 300                    Dallas, TX
Dallas, TX 75234          (469)522-4200                                                                61-479
                                                                                                        622
                                                    DATE  07/30/2009

PAY TO THE
ORDER OF          COLUMBIAN BANK                                                        AMOUNT
          Thirty One Thousand Six Hundred Forty Five Dollars and 83 Cents              $ 31,645.83

          COLUMBIAN BANK
          Attn: Troy J Dems
          1701 W. 119th Street                                        Louis J. Corna
          Overland Park, KS 66211

                                                        SIGNATURE AREA CONTAINS A KNIGHT & FINGERPRINT CHECK WRITING

**2. Article Number**

7160 3901 9848 3458 2936

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature
X                                          ☐ Agent
                                           ☐ Addressee

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:         ☐ No

**3. Service Type** CERTIFIED MAIL

**4. Restricted Delivery?** (Extra Fee)    ☐ Yes

**1. Article Addressed to:**

IORI Centura, Inc.
1800 Valley View Lane, Suite 300
Dallas, TX 75234

**Reference Information**

#6371.0313

TLG

Certified Article Number

7160 3901 9848 3458 2936

SENDERS RECORD

Label #4

PS Form 3811, January 2005          Domestic Return Receipt

---

**2. Article Number**

7160 3901 9848 3458 2950

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature
X                                          ☐ Agent
                                           ☐ Addressee

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:         ☐ No

**3. Service Type** CERTIFIED MAIL

**4. Restricted Delivery?** (Extra Fee)    ☐ Yes

**1. Article Addressed to:**

Mr. Monte R. Koch
Prime Income Asset Management
One Hickory Centre
1800 Valley View Lane, Suite 300
Dallas, TX 75234

**Reference Information**

#6371.0313

TLG

Certified Article Number

7160 3901 9848 3458 2950

SENDERS RECORD

Label #4

PS Form 3811, January 2005          Domestic Return Receipt

---

**2. Article Number**

7160 3901 9848 3458 2943

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature
X                                          ☐ Agent
                                           ☐ Addressee

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:         ☐ No

**3. Service Type** CERTIFIED MAIL

**4. Restricted Delivery?** (Extra Fee)    ☐ Yes

**1. Article Addressed to:**

Income Opportunity Realty
Investments, Inc.
1800 Valley View Lane, Suite 300
Dallas, TX 75234

**Reference Information**

#6371.0313

TLG

Certified Article Number

7160 3901 9848 3458 2943

SENDERS RECORD

Label #4

PS Form 3811, January 2005          Domestic Return Receipt



# CRAIG, TERRILL, HALE & GRANTHAM L.L.P.

ROBERT L. (BOB) CRAIG, JR.,P.C.
H. GRADY TERRILL
KENT HALE
TERRY L. GRANTHAM
HUGH N. LYLE *
LEONARD R. (BUD) GROSSMAN †
BENNETT G. COOK, III
GARY BELLAIR ‡
ANGELIA B. LEE
BRAD J. DAVIDSON
BARBARA BAUERNFEIND
HOLLY HASELOFF
RYAN J. BIGBEE
ANDREW B. CURTIS•
MARCY M. ERWIN

**ATTORNEYS AT LAW**
A Limited Liability Partnership
Including Professional Corporations
1500 BROADWAY
SUITE 400, WELLS FARGO
CENTER
LUBBOCK, TEXAS 79401
P. O. BOX 1979 (79408-1979)
Telephone: (806) 744-3232
Telecopier: (806) 744-2211

From the Office of:
Terry L. Grantham
(ext.124)
e-mail address:
terryg@cthglawfirm.com

* Board Certified
  Personal Injury Trial Law
  Texas Board of Legal Specialization

† Board Certified
  Civil Appellate Law
  Texas Board of Legal Specialization

• Also Licensed in New Mexico

July 31, 2009

## NOTICE OF DEMAND FOR PAYMENT OF MATURED NOTE

IORI Centura, Inc.
1800 Valley View Lane, Suite 300
Dallas, TX  75234

<u>Certified Mail</u>
<u>Return Receipt Requested</u>
<u>No.  7160 3901 9848 3458 2936</u>

RE:    Indebtedness Evidenced by Promissory Note dated August 22, 2007, in the Original Principal Amount of $7,000,000.00 due and unpaid to FIRST BANK AND TRUST CO./THE BANK OF WEATHERFORD ("Noteholder") executed by IORI Centura, Inc. (hereinafter referred to as "Indebtedness")

Dear Sir or Madam:

This law firm represents Noteholder, the current owner and holder of the above-referenced Indebtedness with respect to said Indebtedness.

This letter constitutes formal notice to you of your default under the terms of the Indebtedness and Deed of Trust securing the Indebtedness, as the Indebtedness matured on August 22, 2008.  The Deed of Trust is recorded in Volume 2005168, Page 9097 in the Real Property Records of Dallas County, Texas.  As of July 31, 2009, the unpaid principal balance and the accrued but unpaid interest of the Indebtedness are as follows, with interest continuing to accrue:

| Principal | Interest through 07/31/2009 | Per Diem Amount |
| --- | --- | --- |
| $ 7,000,000.00 | $ 113,118.05 | $ 1,993.0555 |



EXHIBIT
10

IORI Centura, Inc.                         
July 31, 2009
Page 2

In addition to principal and interest, you, under the terms of the Indebtedness and Deed of Trust, are liable for trustee's fees, attorney's fees, and expenses incurred by Noteholder in connection with collection and foreclosure in this matter. To date, attorney's fees and expenses in the amount of $400.00 have been incurred.

This letter is formal demand upon you to pay to Noteholder the sum of $7,463,518.05 as of this date, plus an additional $1,993.0555 per day hereafter as interest accrues on or before 3:00 o'clock p.m. on August 10, 2009.

Payment <u>must</u> be made in cash or by cashier's check at the office of the Noteholder at 901 Santa Fe, Weatherford, Texas, 76086.

The above-referenced Indebtedness matured on August 22, 2008. You are notified that, if the past due installments, accrued interest, attorney's fees and expenses are not paid on or before 3:00 o'clock, p.m. on August 10, 2009, the Noteholder will instruct the trustee under the deed of trust executed to secure the Note to post the property pledged therein for public foreclosure.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this notice, the debt will be assumed to be valid by the undersigned. If you notify the undersigned, in writing, within thirty (30) days of receipt of this letter that the debt or any portion of the debt is disputed, I will obtain verification of the debt and will mail a copy of the verification to you. On your written request, within the thirty (30) day period for the verification, I will provide you with the name and address of the original creditor. This thirty (30) day period does not alter, waiver or affect the August 10, 2009, deadline for payment set forth above. You are notified that any information you give me will be used in the collection of the debt owed the Noteholder.

If the sums listed herein are not paid to Noteholder on or before 3:00 o'clock, p.m. on August 10, 2009, the Noteholder will instruct the trustee under the deed of trust executed to secure the Note to post the property pledged therein for public foreclosure. In the event the property secured by the Deed of Trust is not sold at foreclosure for an amount sufficient to satisfy the entire unpaid balance of principal and accrued interest, trustee's fees, attorney's fees and expenses incurred in connection therewith, Noteholder may seek to hold you personally liable for the deficiency. The exercise of such rights will not constitute a waiver of the other rights and remedies held by the Noteholder.

You are hereby advised we are attempting to collect a debt for FIRST BANK AND TRUST CO./THE BANK OF WEATHERFORD and any information obtained will be used for that purpose.

Attached hereto as Exhibit "A" is the notice required by 15 U.S.C. § 1692, et seq.

Any amounts listed are estimate amounts and you should contact our office for the actual amounts needed to cure the deficiency.

 

IORI Centura, Inc.
July 31, 2009
Page 3

Yours very truly,

TERRY L. GRANTHAM

TLG:tdm

cc:    Sent regular mail (First Class)

cc:    Mr. Monte R. Koch (CMRRR #7160 3901 9848 3458 2950)
       Prime Income Asset Management
       One Hickory Centre
       1800 Valley View Lane, Suite 300
       Dallas, TX 75234

cc:    Income Opportunity Realty Investments, (CMRRR #7160 3901 9848 3458 2943)
          Inc. (Guarantor)
       1800 Valley View Lane, Suite 300
       Dallas, TX 75234

cc:    The Bank of Weatherford
       Attn:  J. Mark Riebe, President
       Post Office Box 2170
       Weatherford, TX 76086

cc:    First Bank and Trust Co.
       Attn:  Greg Garland, President
       7806 Indiana Avenue
       Lubbock, TX 79423

 

## EXHIBIT "A"

### REQUIRED NOTIFICATION UNDER 15 U.S.C. § 1692
### SECTION G - VALIDATION OF DEBTS

You are hereby advised and sent written notice as follows:

1.    The amount of the debt is:

   Principal as of 07/31/2009:          $7,000,000.00 (plus accrued interest and expenses) (appx.)

2.    The name of the creditor to whom you owe the debt is:   THE BANK OF WEATHERFORD/FIRST BANK AND TRUST CO.

3.    You are hereby advised that unless you, as the consumer, within thirty (30) days after the receipt of the letter and this notice, dispute the validity of this debt, or any portion thereof, this debt will be assumed to be valid by our office, acting as attorney for the above described creditor.

4.    You are further hereby advised that if you, as the consumer, notify this office as attorney for the above described creditor within thirty (30) days after receipt of the letter and this notice that you are disputing the debt, or any portion thereof, judgment against you as consumer (if a judgment in fact exists) will be mailed to you as consumer by the attorneys for the above described creditor.

5.    You are further advised that upon you as the consumer making a written request within the thirty (30) day period, we as attorneys for the above described creditor will provide you as consumer with the name and address of the original creditor, if it is different from the current creditor seeking to collect the debt.

RETURN TO: [TLG] CRAIG, TERRILL, HALE & GRANTHAM, L.L.P.; P.O. BOX 1979; LUBBOCK, TX 79408

[FB&T-Weatherford/IORI]

## APPOINTMENT OF SUBSTITUTE TRUSTEE

DATE: _____August 6_____, 2009

DEED OF TRUST:

   DATE:            August 22, 2005

   GRANTOR:         IORI CENTURA, INC., a Nevada corporation

   BENEFICIARY:     COLUMBIAN BANK AND TRUST COMPANY

   TRUSTEE:         JOHN R. GRANGER

   COUNTY WHERE PROPERTY IS LOCATED:  Dallas County, Texas

ANY ONE OF THE FOLLOWING NAMED PERSONS TO ACT AS SUBSTITUTE
TRUSTEE:

   TERRY L. GRANTHAM and/or DAVID GARVIN and/or RUTH RIGGS and/or KELLY
   GODDARD and/or DARIAN GODDARD

SUBSTITUTE TRUSTEE'S MAILING ADDRESS (including County):

   Post Office Box 1979; Lubbock, Lubbock County, Texas, 79408

   Recording Information:  Deed of Trust recorded in Volume 2005168, Page
                           09097, of the Real Property Records of Dallas County,
                           Texas.

   Property:       SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART
                   HEREOF, together with all improvements now located on the property
                   and all fixtures now located on the property.

NOTE:

   Date:           August 22, 2007

   Amount:         $7,000,000.00

*Appointment of Substitute Trustee*

EXHIBIT

*11*

Debtor:    IORI Centura, Inc.

Holder:    FIRST BANK AND TRUST CO.

Grantor has failed to perform obligations set out in the deed of trust, and in accordance with the provisions of that instrument the Beneficiary has declared the debt that it secures immediately due and requests that the property it conveys be sold in a Trustee's sale.

Beneficiary also appoints any one of the above named persons as Substitute Trustee to act in accordance with the deed of trust and to sell the property. Beneficiary requests copies of the notice of sale from Substitute Trustee so that notice of the sale can be filed and furnished to Grantor in accordance with Section 51.002 of the Texas Property Code.

FIRST BANK AND TRUST CO.

BY: _____
Greg Garland, President

THE STATE OF TEXAS          )

COUNTY OF _Lubbock_         )

The foregoing instrument was acknowledged before me on this the _6th_ day of August, 2009, by GREG GARLAND, as President of FIRST BANK AND TRUST CO., a Texas banking corporation, on behalf of said corporation.



```
Megan E Moran
Notary Public, State of Texas
My Commission Expires:
December 12, 2009
```

_____
NOTARY PUBLIC, STATE OF TEXAS

  

Exhibit A

**TRACT I, PARCEL A**

A tract of land situated in the Elisha Fike Survey, Abstract No. 478, in the City of Farmers Branch, Dallas County, Texas, and being a part of Lot 1 of A & H Subdivision as recorded in Volume 75174, Page 748 of the Deed Records Dallas County, Texas (DRDCT) and more particularly described as follows:

Beginning at a ½ inch iron rod found in the West line of Dallas North Tollway (R.O.W. varies), said point being 247.85 feet in a Southerly direction from the South corner of a right-of-way corner clip at the intersection of the South line of Spring Valley Road (100 foot R.O.W.) with the West line of Dallas North Tollway;

Thence South 00 degrees 18 minutes 19 seconds East, along the West line of said Dallas North Tollway, a distance of 39.53 feet to a ½ inch iron rod found for corner at the beginning of a curve to the right having a central angle of 12 degrees 44 minutes 17 seconds and a radius of 371.97 feet;

Thence South along said curve to the right, an arc distance of 82.70 feet a ½ inch iron rod found at the beginning of a reverse curve to the left, having a central angle of 01 degrees 56 minutes 56 seconds and a radius of 726.20 feet;

Thence South along said curve to the left, an arc distance of 24.70 feet to a 5/8 inch iron rod set with a cap stamped "Pate Engrs" for corner;

Thence South 90 degrees 00 minutes 00 seconds East, a distance of 5.09 feet to a ½ inch iron rod found for corner lying at the beginning of a curve the left having a central angle of 10 degrees 50 minutes 13 seconds and radius of 721.20 feet;

Thence South along said curve to the left, an arc distance of 136.41 feet a ½ inch iron rod found for corner;

Thence South 00 degrees 13 minutes 57 seconds East, a distance of 114.10 feet to a ½ inch iron rod found for corner;

Thence North 90 degrees 00 minutes 00 seconds West, a distance of 491.85 feet to a 5/8 inch iron rod with a cap stamped "Pate Engrs" set for corner in the Easterly line of a 100 foot wide Dallas Power & Light Company easement according to the deed recorded in Volume 4633, Page 308 (DRDCT);

Thence North 17 degrees 01 minutes 00 seconds West, along the Easterly line of said 100 foot wide Dallas Power & Light Company easement, a distance of 413.30 feet to a ½ inch iron rod found for corner, said point also being the Southwest corner of the 5050 Spring Valley Road tract;

Thence North 90 degrees 00 minutes 00 seconds East, along the South line of said 5050 Spring Valley Road tract, a distance of 262.82 feet to a ½ inch iron rod found for corner, said point also being the Southwest corner of Lot 1, Block A of the Centura Addition;

Thence North 89 degrees 57 minutes 12 seconds East, a distance of 370.63 feet to the Point of Beginning, and containing 5.0815 acres of land, more or less, (221,348.30 sq. ft.)

**TRACT I, PARCEL B:**

A tract of land situated in the Elisha Fike Survey, Abstract Number 478, in the City of Farmers Branch, Dallas County, Texas and being all of Lot 1 of Inwood Road Office Development, an addition to the City of Farmers Branch according to the plat recorded in Volume 86190, Page 6128 of the Deed Records of Dallas County, Texas (DRDCT), and more particularly described a follows:

Beginning at a 5/8 inch iron rod with cap stamped "Pate Engrs" set for the most Southerly corner of a right-of-way corner clip located at the point of the intersection of the Southerly right-of-way line of Spring Valley Road 100 foot wide right-of-way) with the Easterly right-of-way line of Inwood

 

Road (a 102 foot wide R.O.W.);

Thence along the Southerly right-of-way line of said Spring Valley Road as follows:

Continuing along said corner clip, North 29 degrees 55 minutes 35 seconds East, a distance of 19.38 feet to a ½ inch iron rod found for the Northwest corner of said Lot 1;

South 89 degrees 54 minutes 22 seconds East, a distance of 58.28 feet to a 5/8 inch iron rod with cap stamped "Pate Engrs" set for corner in the Northeast corner of said Lot 1 and being located in the Westerly line of a 100 foot wide Dallas Power & Light Company easement according to the Deed recorded in Volume 4633, Page 308 (DRDCT);

Thence South 17 degrees 01 minutes 00 seconds East, departing the Southerly right-of-way line of said Spring Valley Road and following the Westerly line of said 100 foot wide Dallas Power & Light Company easement, a distance of 728.98 feet to a ½ inch iron rod found for the Southeast corner of said Lot 1;

Thence South 72 degrees 59 minutes 00 seconds West, departing the Westerly line of said 100 foot wide Dallas Power & Light Company easement, a distance of 79.90 feet to a ½ inch iron rod found for the Southwest corner of said Lot 1 and being located in the Easterly right-of-way line of said Inwood Road (a 92 foot R.O.W. at this point);

Thence North along the Easterly right-of-way line of said Inwood Road as follows:

North 17 degrees 01 minutes 00 seconds West, a distance of 596.91 feet to ½ inch iron rod found for the beginning of a curve to the right having a radius of 150.00 feet and a central angle of 17 degrees 10 minutes 25 seconds;

Continuing along said curve to the right for an arc length of 44.96 feet to a ½ inch iron rod found for the beginning of a reverse curve to the left having a radius of 75.00 feet and a central angle of 17 degrees 10 minutes 27 seconds;

Continuing along said reverse curve to the left, an arc length of 22.48 feet to a ½ inch iron rod found for the point of tangency;

North 17 degrees 01 minutes 00 seconds West, a distance of 69.46 feet to the Point of Beginning, and containing 1.3296 acres of land, more or less (57,911.3 sq. ft.).

TRACT II:
A tract of land situated in the Elisha Fike Survey, Abstract No. 478, Dallas County, Texas, and being all of Lot 1 in Block B of Beltway/Champion No. 1, an addition to the City of Farmers Branch, Dallas County, Texas, according to the plat thereof recorded in Volume 93192, Page 4878, Deed Records of Dallas County, Texas (DRDCT), said tract conveyed to Janlaw Properties, Inc. by deed recorded in Volume 97059, Page 1242, DRDCT, and more particularly described as follows:

BEGINNING at a ½ inch iron rod found for a corner in the Northeast line of Inwood Road (a 92 foot right-of-way), said point being the Northwest corner of said Lot 1 in Block B, said point also being the Southwest corner of Lot 1 of Inwood Road Office Development Park, an addition to the City of Dallas, Texas according to the map thereof recorded in Volume 86190, Page 6128, DRDCT;

THENCE North 72 degrees 59 minutes 00 seconds East, departing the Northeast line of Inwood Road and with the common line of said Lot 1 in Block B and Lot 1 of Inwood Road Office Development Park, a distance of 79.90 feet to a ½ inch iron rod found for a corner, said point being the Northeast corner of said Lot 1 in Block B and said point lying in the Southwest line of a 100 foot wide Dallas Power & Light Company right-of-way recorded in Volume 4633, Page 308, DRDCT;

THENCE South 17 degrees 01 minutes 00 seconds East, with the Northeast line of said Lot 1 in Block B and the Southwest line of the said Dallas Power & Light Company right-of-way, a distance of 465.72 feet to a 5/8 inch iron rod found for a corner in the Northeast line of Inwood Road, said point being the South corner of said Lot 1 of Block B and said point being in a non-tangent curve

 

to the left with a central angle of 19 degrees 26 minutes 58 seconds and radius of 746.00 feet;

THENCE Northwesterly, with the Northeast line of Inwood Road and along said curve, an arc distance of 253.24 feet to a ½ inch iron rod found at the beginning of a curve to the right with a central angle of 19 degrees 24 minutes 48 seconds and radius of 654.00 feet;

THENCE Northwesterly, continuing with the Northeast line of Inwood Road and along said curve, an arc distance of 221.59 feet to the Point of Beginning, and containing 0.4171 acres of land, more or less (18,167.2 square feet).

TRACT III:

A tract of land situated in the Elisha Fike Survey, Abstract No. 478, Dallas, County, Texas, and being all of Lot 3 of Stanford Corporate Centre No. 2, an addition to the City of Farmers Branch according to the plat recorded in Volume 88261, Page 4182, Deed Records, Dallas County, Texas (DRDCT), and more particularly described as follows:

BEGINNING at a ½ inch iron rod found for corner in the Westerly line of Dallas North Tollway (a variable width R.O.W.), being the Easterly common corner between said Lot 3 and Lot 2 of said Stanford Corporate Centre No. 2;

THENCE South 89 degrees 45 minutes 00 seconds West with the common line between said Lot 2 and Lot 3 a distance of 395.08 feet to a ½ inch iron rod found for corner in the Northeasterly line of a 100 foot wide Dallas Power & Light Company right-of-way, being the Westerly common corner between said Lot 3 and Lot 2;

THENCE North 17 degrees 01 minutes 00 seconds West with the common line between said Dallas Power & Light Company right-of-way and said Lot 3 a distance of 335.09 feet to a 5/8 inch iron rod with cap stamped "Pate Engrs" set for corner;

THENCE North 90 degrees 00 minutes 00 seconds East a distance of 491.86 feet to a ½ inch iron rod found for corner in the Westerly line of said Dallas North Tollway;

THENCE South 00 degrees 13 minutes 56 seconds East with the Westerly line of said Dallas North Tollway a distance of 318.70 feet to the Point of Beginning, and containing 141,755 square feet or 3.2542 acres of land, more or less.

RETURN TO:  [TLG] CRAIG, TERRILL, HALE & GRANTHAM, L.L.P.; P.O. BOX 1979; LUBBOCK, TX 79408

[FB&T-Weatherford/IORI]

## APPOINTMENT OF SUBSTITUTE TRUSTEE

DATE:        *August 10*              , 2009

**DEED OF TRUST:**

      **DATE:**        August 22, 2005

      **GRANTOR:**        IORI CENTURA, INC., a Nevada corporation

      **BENEFICIARY:**        COLUMBIAN BANK AND TRUST COMPANY

      **TRUSTEE:**        JOHN R. GRANGER

      **COUNTY WHERE PROPERTY IS LOCATED:**   Dallas County, Texas

**ANY ONE OF THE FOLLOWING NAMED PERSONS TO ACT AS SUBSTITUTE TRUSTEE:**

      TERRY L. GRANTHAM and/or DAVID GARVIN and/or RUTH RIGGS and/or KELLY GODDARD and/or DARIAN GODDARD

**SUBSTITUTE TRUSTEE`S MAILING ADDRESS (including County):**

      Post Office Box 1979; Lubbock, Lubbock County, Texas, 79408

      **Recording Information:**   Deed of Trust recorded in Volume 2005168, Page 09097, of the Real Property Records of Dallas County, Texas.

      **Property:**    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF, together with all improvements now located on the property and all fixtures now located on the property.

**NOTE:**

      **Date:**    August 22, 2007

      **Amount:**    $7,000,000.00

*Appointment of Substitute Trustee*                                                         1

EXHIBIT

12

Debtor:    IORI Centura, Inc.

Holder:    THE BANK OF WEATHERFORD

Grantor has failed to perform obligations set out in the deed of trust, and in accordance with the provisions of that instrument the Beneficiary has declared the debt that it secures immediately due and requests that the property it conveys be sold in a Trustee's sale.

Beneficiary also appoints any one of the above named persons as Substitute Trustee to act in accordance with the deed of trust and to sell the property. Beneficiary requests copies of the notice of sale from Substitute Trustee so that notice of the sale can be filed and furnished to Grantor in accordance with Section 51.002 of the Texas Property Code.

THE BANK OF WEATHERFORD

BY: _____

J. Mark Riebe, President

THE STATE OF TEXAS        )

COUNTY OF _Parker_        )

The foregoing instrument was acknowledged before me on this the _10th_ day of August, 2009, by J. MARK RIEBE, as President of THE BANK OF WEATHERFORD, a _State banking association_____, on behalf of said _association_____.

_____
NOTARY PUBLIC, STATE OF TEXAS

CAROL A. HUGHES
Notary Public
STATE OF TEXAS
My Comm. Exp. 12/10/2012

*Appointment of Substitute Trustee*                                                    2

  



## Exhibit A

**TRACT I, PARCEL A**

A tract of land situated in the Elisha Fike Survey, Abstract No. 478, in the City of Farmers Branch, Dallas County, Texas, and being a part of Lot 1 of A & H Subdivision as recorded in Volume 75174, Page 748 of the Deed Records Dallas County, Texas (DRDCT) and more particularly described as follows:

Beginning at a ½ inch iron rod found in the West line of Dallas North Tollway (R.O.W. varies), said point being 247.86 feet in a Southerly direction from the South corner of a right-of-way corner clip at the intersection of the South line of Spring Valley Road (100 foot R.O.W.) with the West line of Dallas North Tollway;

Thence South 00 degrees 18 minutes 19 seconds East, along the West line of said Dallas North Tollway, a distance of 39.53 feet to a ½ inch iron rod found for corner at the beginning of a curve to the right having a central angle of 12 degrees 44 minutes 17 seconds and a radius of 371.97 feet;

Thence South along said curve to the right, an arc distance of 82.70 feet a ½ inch iron rod found at the beginning of a reverse curve to the left, having a central angle of 01 degrees 56 minutes 56 seconds and a radius of 726.20 feet;

Thence South along said curve to the left, an arc distance of 24.70 feet to a 5/8 inch iron rod set with a cap stamped "Pate Engrs" for corner;

Thence South 90 degrees 00 minutes 00 seconds East, a distance of 5.09 feet to a ½ inch iron rod found for corner lying at the beginning of a curve the left having a central angle of 10 degrees 50 minutes 13 seconds and radius of 721.20 feet;

Thence South along said curve to the left, an arc distance of 136.41 feet a ½ inch iron rod found for corner;

Thence South 00 degrees 13 minutes 57 seconds East, a distance of 114.10 feet to a ½ inch iron rod found for corner;

Thence North 90 degrees 00 minutes 00 seconds West, a distance of 491.86 feet to a 5/8 inch iron rod with a cap stamped "Pate Engrs" set for corner in the Easterly line of a 100 foot wide Dallas Power & Light Company easement according to the deed recorded in Volume 4633, Page 308 (DRDCT);

Thence North 17 degrees 01 minutes 00 seconds West, along the Easterly line of said 100 foot wide Dallas Power & Light Company easement, a distance of 413.30 feet to a ½ inch iron rod found for corner, said point also being the Southwest corner of the 5050 Spring Valley Road tract;

Thence North 90 degrees 00 minutes 00 seconds East, along the South line of said 5050 Spring Valley Road tract, a distance of 262.82 feet to a ½ inch iron rod found for corner, said point also being the Southwest corner of Lot 1, Block A of the Centura Addition;

Thence North 89 degrees 57 minutes 12 seconds East, a distance of 370.63 feet to the Point of Beginning, and containing 5.0815 acres of land, more or less. (221,348.30 sq. ft.)

**TRACT I, PARCEL B:**

A tract of land situated in the Elisha Fike Survey, Abstract Number 478, in the City of Farmers Branch, Dallas County, Texas and being all of Lot 1 of Inwood Road Office Development, an addition to the City of Farmers Branch according to the plat recorded in Volume 86190, Page 6128 of the Deed Records of Dallas County, Texas (DRDCT), and more particularly described a follows:

Beginning at a 5/8 inch iron rod with cap stamped "Pate Engrs" set for the most Southerly corner of a right-of-way corner clip located at the point of the intersection of the Southerly right-of-way line of Spring Valley Road 100 foot wide right-of-way) with the Easterly right-of-way line of Inwood




Road (a 102 foot wide R.O.W.);

Thence along the Southerly right-of-way line of said Spring Valley Road as follows:

Continuing along said corner clip, North 28 degrees 55 minutes 35 seconds East, a distance of 19.38 feet to a ½ inch iron rod found for the Northwest corner of said Lot 1;

South 88 degrees 54 minutes 22 seconds East, a distance of 58.28 feet to a 5/8 inch iron rod with cap stamped "Pate Engrs" set for corner in the Northeast corner of said Lot 1 and being located in the Westerly line of a 100 foot wide Dallas Power & Light Company easement according to the Deed recorded in Volume 4833, Page 308 (DRDCT);

Thence South 17 degrees 01 minutes 00 seconds East, departing the Southerly right-of-way line of said Spring Valley Road and following the Westerly line of said 100 foot wide Dallas Power & Light Company easement, a distance of 728.88 feet to a ½ inch iron rod found for the Southeast corner of said Lot 1;

Thence South 72 degrees 59 minutes 00 seconds West, departing the Westerly line of said 100 foot wide Dallas Power & Light Company easement, a distance of 79.90 feet to a ½ inch iron rod found for the Southwest corner of said Lot 1 and being located in the Easterly right-of-way line of said Inwood Road (a 92 foot R.O.W. at this point);

Thence North along the Easterly right-of-way line of said Inwood Road as follows:

North 17 degrees 01 minutes 00 seconds West, a distance of 596.91 feet to ½ inch iron rod found for the beginning of a curve to the right having a radius of 150.00 feet and a central angle of 17 degrees 10 minutes 25 seconds;

Continuing along said curve to the right for an arc length of 44.96 feet to a ½ inch iron rod found for the beginning of a reverse curve to the left having a radius of 75.00 feet and a central angle of 17 degrees 10 minutes 27 seconds;

Continuing along said reverse curve to the left, an arc length of 22.48 feet to a ½ inch iron rod found for the point of tangency;

North 17 degrees 01 minutes 00 seconds West, a distance of 69.45 feet to the Point of Beginning, and containing 1.3295 acres of land, more or less (57,911.3 sq. ft.).

TRACT II:
A tract of land situated in the Elisha Fike Survey, Abstract No. 478, Dallas County, Texas, and being all of Lot 1 in Block B of Beltway/Champion No. 1, an addition to the City of Farmers Branch, Dallas County, Texas, according to the plat thereof recorded in Volume 4878, Page 4878, Deed Records of Dallas County, Texas (DRDCT), said tract conveyed to Janlaw Properties, Inc. by deed recorded in Volume 97059, Page 1242, DRDCT, and more particularly described as follows:

BEGINNING at a ½ inch iron rod found for a corner in the Northeast line of Inwood Road (a 92 foot right-of-way), said point being the Northwest corner of said Lot 1 in Block B, said point also being the Southwest corner of Lot 1 of Inwood Road Office Development Park, an addition to the City of Dallas, Texas according to the map thereof recorded in Volume 86190, Page 6128, DRDCT;

THENCE North 72 degrees 59 minutes 00 seconds East, departing the Northeast line of Inwood Road and with the common line of said Lot 1 in Block B and Lot 1 of Inwood Road Office Development Park, a distance of 79.90 feet to a ½ inch iron rod found for a corner, said point being the Northeast corner of said Lot 1 in Block B and said point lying in the Southwest line of a 100 foot wide Dallas Power & Light Company right-of-way recorded in Volume 4833, Page 308, DRDCT;

THENCE South 17 degrees 01 minutes 00 seconds East, with the Northeast line of said Lot 1 in Block B and the Southwest line of the said Dallas Power & Light Company right-of-way, a distance of 465.72 feet to a 5/8 inch iron rod found for a corner in the Northeast line of Inwood Road, said point being the South corner of said Lot 1 of Block B and said point being in a non-tangent curve




to the left with a central angle of 19 degrees 26 minutes 58 seconds and radius of 746.00 feet;

THENCE Northwesterly, with the Northeast line of Inwood Road and along said curve, an arc distance of 253.24 feet to a ½ inch iron rod found at the beginning of a curve to the right with a central angle of 19 degrees 24 minutes 48 seconds and radius of 654.00 feet;

THENCE Northwesterly, continuing with the Northeast line of Inwood Road and along said curve, an arc distance of 221.59 feet to the Point of Beginning, and containing 0.4171 acres of land, more or less (18,167.2 square feet).

TRACT III:
A tract of land situated in the Elisha Fike Survey, Abstract No. 478, Dallas, County, Texas, and being all of Lot 3 of Stanford Corporate Centre No. 2, an addition to the City of Farmers Branch according to the plat recorded in Volume 88251, Page 4182, Deed Records, Dallas County, Texas (DRDCT), and more particularly described as follows:

BEGINNING at a ½ inch iron rod found for corner in the Westerly line of Dallas North Tollway (a variable width R.O.W.), being the Easterly common corner between said Lot 3 and Lot 2 of said Stanford Corporate Centre No. 2;

THENCE South 89 degrees 45 minutes 00 seconds West with the common line between said Lot 2 and Lot 3 a distance of 395.08 feet to a ½ inch iron rod found for corner in the Northeasterly line of a 100 foot wide Dallas Power & Light Company right-of-way, being the Westerly common corner between said Lot 3 and Lot 2;

THENCE North 17 degrees 01 minutes 00 seconds West with the common line between said Dallas Power & Light Company right-of-way and said Lot 3 a distance of 335.09 feet to a 5/8 inch iron rod with cap stamped "Pate Engrs" set for corner;

THENCE North 90 degrees 00 minutes 00 seconds East a distance of 491.85 feet to a ½ inch iron rod found for corner in the Westerly line of said Dallas North Tollway;

THENCE South 00 degrees 13 minutes 56 seconds East with the Westerly line of said Dallas North Tollway a distance of 318.70 feet to the Point of Beginning, and containing 141,755 square feet or 3.2542 acres of land, more or less.