Patrick J. Neligan, Jr.
Texas Bar No. 14866000
Douglas J. Buncher
Texas Bar No. 03342700
Seymour Roberts, Jr.
Texas Bar No. 17019150
NELIGAN FOLEY LLP
325 N. St. Paul, Suite 3600
Dallas, Texas  75201
Telephone:  (214) 840-5300
Facsimile:  (214) 840-5301

PROPOSED COUNSEL FOR DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 11-30210-BJH-11 |
| | § | |
| FRE REAL ESTATE, INC., | § | CHAPTER 11 |
| | § | |
| | § | Hearing Date:  To be determined |
| Debtor. | § | Hearing Time:  To be determined |

### EMERGENCY MOTION FOR INTERIM AND FINAL ORDER PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE AND DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR UTILITY SERVICES

FRE Real Estate, Inc. (the "Debtor") files this motion (the "Motion") pursuant to Sections 105(a) and 366(c) of the Bankruptcy Code[1] to request the entry of interim and final orders (i) prohibiting utility service providers from altering, refusing, or discontinuing service on account of pre-petition invoices (the Debtor believes is was current on all pre-petition invoices, but is filing this Motion in an abundance of caution and to comply with thirty (30)-day deadline in section 366(c)); (ii) determining that the adequate assurance proposed in this Motion is sufficient under Section 366; (iii) establishing procedures for utility service providers to request

---

[1] 11 U.S.C. §§ 101, *et seq*.  All of the statutory references contained in this Motion, unless otherwise indicated, are to the Bankruptcy Code.

different or additional adequate assurance than that proposed in this Motion; and (iv) setting a final hearing on the Debtor's proposed adequate assurance, and in support shows as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. INTRODUCTION

2. On January 4, 2011, (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties, affairs and assets as a debtor-in-possession.

## III. BACKGROUND

3. The Debtor is a Nevada corporation that is 100% owned by ABCLD Properties, LLC, a Nevada limited liability company that is directly or indirectly owned by Ronald F. Akin and F. Terry Shumate (or entities owned by such persons). Messrs. Akin and Shumate are the sole directors of the Debtor. The Debtor's officers are: Ronald F. Akin, President; F. Terry Shumate, Vice-President, Secretary, and Treasurer, Richard D. Morgan, Vice President, and Craig E. Landess, Vice President.

4. The Debtor's date of incorporation was December 7, 2006. At that time, the Debtor's name was TCI Park West II, Inc. On December 23, 2010, the Debtor changed its name to Fenton Real Estate, Inc. And on December 30, 2010, the Debtor changed its name to FRE Real Estate, Inc.

5. The Debtor owns, leases and/or operates approximately 38 parcels of real property located in Texas and Louisiana. In addition to approximately 29 parcels of raw land,

the Debtor's real property holdings include approximately 6 operating office buildings, 1 apartment complex, and two airplane hangers, including a large income producing office building located just north of LBJ Freeway in Farmers Branch, Texas, known as "Fenton Centre" and an income producing office building in New Orleans, Louisiana, known as the "Amoco Building."[2] The Debtor also owns stock, accounts receivable, notes receivable, and other tangible and intangible personal property in addition to its real estate holdings.

6. With the exception of Fenton Centre, the Debtor acquired its real property holdings effective December 23, 2010. Fenton Centre was owned by the Debtor prior to December 23, 2010, when the Debtor went by the name TCI Park West II, Inc. For each of the acquisitions on December 23, 2010, the Debtor assumed the existing debt service from the seller, and gave a 5-year promissory note at 6% interest payable to the seller for any equity that existed over and above the debt service. Thus, the transfers to the Debtor pre-petition were all for fair value.

7. The fair value of the Debtor's real properties is approximately $234 Million. The amount of secured claims representing the fist lien secured debt on the Debtor's properties to be scheduled in this case will be approximately $182 Million. Thus, the Debtor believes there is approximately $50 million of equity in its properties beyond the first lien secured debt. The amount of unsecured "trade claims" to be scheduled in this case will approximate $1.4 Million. The amount of secured or priority "tax claims" representing unpaid 2010 property taxes to be scheduled in this case will be approximately $2.9 Million.

---

2. The operating properties consist of the following: (1) Fenton Centre I and II located at the intersection of LBJ Freeway and Luna Drive, in Farmers Branch, Texas; (2) the Amoco Building in New Orleans; (3) Parkway North, an office building on Dallas Parkway; (4) Westgrove Air Plaza, a combination office building and airplane hanger at Addison airport; (5) Addison Hanger I and II, two airplane hangers that are leased by the Debtor at Addison airport; (6) the Teleport Building in Farmers Branch, Texas,; the Thermalloy Building in Farmers Branch, Texas; and (8) the Bridgewood Ranch Apartments in Kaufman, Texas.

8. Although Debtor has not yet filed its schedules and statement of financial affairs, Debtor has filed its creditor matrix listing approximately 158 secured and unsecured creditors and other parties in interest in this case. There are approximately 12 secured creditors in this case possessing first liens in the Debtor's properties.

### IV. RELIEF REQUESTED

9. In the ordinary course of business, the Debtor uses gas, water, electric, telephone, and other utility services provided by numerous utility providers (collectively the "Utilities"). Lists of each Utility are attached hereto as **Exhibit A**.[3] Uninterrupted utility services is critical to the Debtor's ability to maintain its ongoing business operations for the benefit of creditors. Termination of services by the Utilities would substantially disrupt the Debtor's efforts to reorganize and would irreparably harm and jeopardize the Debtor's estate, all to the detriment of creditors and parties-in-interest.

10. By this Motion, the Debtor seeks the entry of an interim order (the "Interim Order") pursuant to Sections 105 and 366 (i) prohibiting the Utilities from altering, refusing, or discontinuing service on account of pre-petition invoices; (ii) determining that the adequate assurance proposed in this Motion is sufficient under Section 366; (iii) establishing procedures for Utilities to request different or additional adequate assurance than that proposed in this Motion by filing a request for determination of adequate assurance with the Court on or before February 1, 2011; and (iv) setting a final hearing on the proposed adequate assurance on or before February 3, 2011 (the "Final Hearing").

---

[3] For each Utility, Exhibit A lists the mailing address to which the Debtor remits payments. In an effort to provide adequate notice to each Utility, the Debtor also attempted to locate the physical address of each Utility. Out of an abundance of caution, the Debtor intends to serve each of the Utilities at both their post office box and physical address.

11. As adequate assurance to the Utilities, the Debtor proposes to provide the Utilities with a deposit equal to one (1) month of service based on the Debtor's average usage over the past twelve (12) months.

## V. BASIS FOR RELIEF

12. Section 366 of the Bankruptcy Code governs the rights and obligations of the Utilities as providers of utility services to the Debtor.[4] Pursuant to Section 366(c)(2) of the Bankruptcy Code, with respect to cases filed under chapter 11, a utility "may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility services that is satisfactory to the utility." 11 U.S.C. § 366(c)(2).

13. Section 366(c)(1)(A) provides that assurance of payment means "(i) **a cash deposit**; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (iv) a pre-payment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." (Emphasis added).

14. As adequate assurance of payment under Section 366, the Debtor proposes to provide the Utilities with a deposit in an amount equal to one (1) month of service based on the Debtor's average usage over the past twelve (12) months. In addition to the proposed deposit, the Debtor will remain current on all post-petition consumption of Utilities. The proposed deposit based on the past average usage complies with the adequate assurance requirement of

---

[4] Section 366 applies to entities providing electricity, natural gas, water, trash removal and/or telephone services, as well as any other entity that supplies services that cannot be readily obtainable or replaced elsewhere, or which constitutes a monopoly in respect of the services it provides to the Debtor. *See One Stop Realtor Place, Inc. v. Allegiance Telecom of Pa., Inc. (In re One Stop Realtor Place, Inc.)*, 268 B.R. 430, 436-437 (Bankr. E.D. Pa. 2001). Despite the wide latitude to be afforded in determining those entities that constitute utilities under Section 366, some of the companies listed on Exhibit A may also provide goods or services in the capacity other than that of a utility. These companies are not entitled to adequate assurance under Section 366 for goods and services which do not constitute "utility services." The Debtor reserves the right to contest whether any of the entities listed in Exhibit A are entitled to adequate protection under Section 366 for any non-utility goods or services.

Section 366. Indeed, Section 366 specifically identifies such a deposit as an appropriate means of adequate assurance. 11 U.S.C. § 366(c)(1)(A)(i).

15. Under Section 366(c)(2), a Utility may disconnect services without warning at the end of the 30-day period following the Petition Date if it deems the adequate assurance provided herein is not satisfactory. To avoid such precipitous action and the resulting disruption to the Debtor's operations, and to fully resolve the adequate assurance issue within 30 days of the Petition Date, the Debtor requests that any Utility that wishes to request adequate assurance in addition to that provided for in this Motion be ordered to file a request for a determination of adequate assurance in accordance with Section 366(c)(3) on or before February 1, 2001. The Debtor will serve the Interim Order on the Utilities listed on Exhibit A promptly upon entry of the Interim Order in order to allow them as much time as possible under the circumstances to file such a request. The Debtor requests that any Utility that fails to file a request for a determination of adequate assurance on or before February 1 be deemed to have consented to such adequate assurance. *See In re Syroco, Inc.*, 2007 WL 2404295, at *2 (Bankr. D. P.R. Aug. 22, 2007) (stating that a utility provider's lack of objection, response, or counter-demand after receiving notice of hearing on utilities motion, notice of interim order, and notice of final hearing constitutes tacit acceptance of the debtor's proposed two-week cash deposit as adequate assurance of payment under Section 366). In order to resolve any requests for adequate assurance within the thirty (30) day period provided in Section 366(c)(2) and prevent any disruption in utility services, the Debtor requests that the Final Hearing on any such requests be set on or before February 3, 2011. In the mean time, the Debtor is in the process of contacting all Utilities directly to discuss the terms of adequate assurance and to try to reach agreements with all Utilities.

16.    Courts have granted similar relief in other chapter 11 cases. *In re Buffets Holdings, Inc.,* 2009 WL 453112 (D.Del. 2009), appeal dismissed as moot, 2010 WL 3511208 (3rd Cir. 2010) (bankruptcy court had entered an order authorizing the debtors to deposit cash in a segregated bank account for the benefit of the debtors' utility providers in an amount equal to approximately 50% of the debtors' aggregate average monthly utility expenditures related to the debtors' utility accounts); *Potomac Electric Power Company v. the Rowe Companies,* 2007 WL 656897 (E.D.Va. 2007) (the bankruptcy court had entered an order requiring the debtors to post deposits of one (1) month's average utility bill for each of the appellants); *In re New Rochelle Telephone Corp.,* 397 B.R. 633, 640 (Bankr. E.D.N.Y. 2008) (the debtor, as adequate assurance of payment, would be required to post deposits in cash or cash equivalent in the combined amount of the monthly charges that it was incurring from telecommunications company). The Debtor submits that similar relief is appropriate in this case.

## VI. NOTICE

17.    The Debtor has attempted to find physical addresses for each of the Utilities. The Debtor has either served the Utilities at the physical address, the address used for remittances, or both. No trustee, examiner, or creditors' committee has been appointed in this case. A copy of this Motion has been served via ECF and U.S. Mail on (i) the United States Trustee, (ii) the other secured creditors and their counsel, (iii) the Debtors' twenty (20) largest unsecured creditors, (iii) federal, state and local taxing authorities, (iv) certain governmental entities and representatives, including the Attorney General for the State of Texas, and (vi) any party requesting notice pursuant to Fed. R. Bankr. P. 2002. No other or further notice need be provided.

## VII. CONCLUSION

Accordingly, the Debtor requests that the Court enter an order (i) granting the relief requested in the Motion and (ii) awarding the Debtor any further relief the Court deems appropriate.

Dated:  January 17, 2011  Respectfully submitted,

By: */s/ Patrick J. Neligan, Jr.*
Patrick J. Neligan, Jr.
Texas Bar No. 14866000
pneligan@neliganlaw.com
Douglas J. Buncher
Texas Bar No. 03342700
dbuncher@neliganlaw.com
Seymour Roberts, Jr.
Texas Bar No. 17019150
sroberts@neliganlaw.com

NELIGAN FOLEY LLP
325 N. St. Paul, Suite 3600
Dallas, Texas  75201
Telephone:  (214) 840-5300
Facsimile:  (214) 840-5301

**PROPOSED COUNSEL FOR DEBTOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served via this Court's ECF electronic notification system on all parties registered to receive notice thereby, the Office of the United States Trustee, any party filing a Notice of Appearance, and to each of the persons identified on the Debtor's creditor matrix by first class United States mail this 17th day of January, 2011.

*/s/ Seymour Roberts, Jr.*
Seymour Roberts, Jr.