Mark Stromberg
Texas State Bar No. 19408830
STROMBERG STOCK, P.L.L.C.
Two Lincoln Centre
5420 LBJ Freeway, Suite 300
Dallas, TX 75240
Telephone: (972) 458-5353
Facsimile: (972) 770-2156
E-mail: mark@strombergstock.com

Attorneys for State Bank of Texas

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FRE REAL ESTATE, INC., f/k/a | § | Case No. 11-30210-BJH-11 |
| TRANSCONTINENTAL | § | |
| COVENTRY POINTE, INC., | § | Hrg: **2/15/11 @ 1:15 p.m.** |
| | § | 14th Fl, Courtroom #2 |
| Debtor. | § | Dallas, TX 75242 |

### MOTION OF STATE BANK OF TEXAS SEEKING TO
### ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
### THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

### NOTICE UNDER LOCAL BANKRUPTCY RULES 4001(b) AND 9007(b)

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242-1496 BEFORE 4:00 O'CLOCK P.M. WITHIN FIFTEEN (15) DAYS FROM THE SERVICE OF THIS MOTION.[1]**

**YOUR RESPONSE SHALL INCLUDE A <u>DETAILED</u> AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED. ADDITIONALLY, ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

---

[1] Under Bankruptcy Rule 9006(e) service by mail is complete upon mailing; under Bankruptcy Rule 9006(f), 3 days are added to the period for filing a response when notice of the period is served by mail.

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 1 OF 12

**IF NO RESPONSE IS FILED AS REQUIRED, THE ALLEGATIONS IN THE CREDITOR'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY SHALL BE DEEMED ADMITTED, UNLESS GOOD CAUSE IS SHOWN WHY THESE ALLEGATIONS SHOULD NOT BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

Comes Now **STATE BANK OF TEXAS** (the "Bank" or "Movant"), who moves this Court for an Order granting annulment of the automatic stay under 11 U.S.C. §362(d)(1), or alternatively, for relief from the automatic stay, under 11 U.S.C. §362(d)(2) of the United States Bankruptcy Code, if applicable, and avers in support thereof as follows:

### A. JURISDICTION

1. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1334(b), 157(b)(2)(G) (core proceeding) and 11 U.S.C. §362(d).

2. Venue is proper in this Court pursuant to 28 U.S.C. §1408 and/or §1409.

3. Movant is a federally-insured banking association bank with offices located in Dallas County, Texas.

4. On January 4, 2011, at around or just before 7:00 a.m.[2], **FRE REAL ESTATE, INC.** ("Debtor"), filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

### B. FACTUAL BACKGROUND

5. On or about July 23, 2008, "TRANSCONTINENTAL COVENTRY POINTE, INC.", a Nevada corporation later renamed as "COVENTRY POINTE, INC." (hereafter, "Borrower") executed a promissory note in favor of the Bank, and borrowed from and pledged to repay to the Bank the original principal sum of $3,815,000.00 (the "Note").[3]

---

[2] According to John Lewis, counsel for Debtor, the bankruptcy was filed shortly before 7:00 a.m. on January 4, 2011.

[3] As later amended by a Loan Extension and Modification Agreement executed on or about September 28, 2010. In Paragraph 9 of the loan modification, Borrower acknowledged that as of September 23, 2010, the outstanding principal balance due under the Note was $3,814,993.

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 2 OF 12

6. Under a deed of trust, security agreement and assignment of rents of even date therewith (the "Deed of Trust"), Borrower pledged as collateral for the repayment of the Note six contiguous (6) tracts of real property in Dallas County, Texas (collecitvely, the "Property"). The Property consists of three tracts of undeveloped real estate, and 50% tenant-in-common interest in a parking garage adjacent to an office building which does not sit on any part of the Property. The Bank is informed and believes that the parking garage generates no income for the Borrower. The combined values of the parcels comprising the Property is believed to be roughly $2.0 million, leaving a roughly $2.0 million "equity gap." Adding to it, the Borrower had incurred, but has yet to pay, *ad valorem* taxes relative to the Property. Total *ad valorem* taxes for the Property have accrued in the sum of $149,929.06, all of which are due on or before January 31, 2011, as against which the Borrower had deposited a tax escrow of $96,977.71, leaving a shortfall of $52,951.35.

7. Under Paragraph 1.20 of the Deed of Trust, Borrower pledged that it would not, without the prior written consent of the Bank, ". . . sell, lease, exchange, assign, convey, transfer possession of or otherwise dispose of all or any portion of the Property, or any interest therein; . . ." In addition, under Paragraph 2.06 thereof, Borrower's transfer of - - or attempt to transfer - - any portion of or interest in the Property without the Bank's prior written consent constituted an event of default. Therefore, unauthorized conveyance of the Property by Borrower was prohibited.

8. Nevertheless, without the Bank's prior consent or knowledge, on December 23, 2010, Borrower prepared and executed a "General Warranty Deed" purporting to convey all of the Property to "Fenton Real Estate, Inc.," apparently a former name for Debtor. This transfer recites as consideration a mere $10.00 (but presumably, there was no exchange of monetary consideration to Borrower). For reasons unexplained, neither Borrower nor Debtor sought to record this 11th-hour deed of the Property until some time on January 4, 2011.

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 3 OF 12

9. Of critical importance, Debtor was never a borrower or guarantor under the Note, nor until January 4, 2011 a record owner of the Property, nor a pledgor under the Deed of Trust. Indeed, the Bank had no prior relationship with Debtor and, as of January 4, 2011, knew nothing of its existence.

10. Borrower had defaulted on its obligations under the Note and Deed of Trust, and the Property was posted by the Bank, with notice to the Borrower, for non-judicial foreclosure sale to take place on January 4, 2011 between the hours of 10:00 a.m. and 1:00 p.m. In fact, having no knowledge of the Debtor, Borrower's transfer to Debtor, or Debtor's bankruptcy filing, the Bank, acting through Thomas J. Irons, the duly-appointed substitute trustee, foreclosed on the Property at around 11:30 a.m. on January 4, 2011, and at around 12:30 p.m. that same day submitted the Trustee's Deed electronically for recordation with the Dallas County Deed Records. The Bank did this without any actual or constructive notice of the attempted conveyance of the Property, or the very existence of Debtor.

11. Thereafter, on January 4, 2011, at 1:02 p.m., Jay A. LaJone and/or his legal assistant, Alice Bueto, for the first time attempted to notify the Bank, via e-mail, through Mr. Irons, of the Debtor's bankruptcy filing, and of the purported conveyance of the Property to the Debtor and of imposition of the automatic stay. They then requested "confirmation that the sale [scheduled for between 10:00 a.m. and 1:00 p.m.] will not proceed. If record title to the Property had then belonged to the Debtor, a technical, though innocent, violation of the automatic stay might have occurred, subject to annulment.

12. However, when Mr. Irons spoke to Mr. LaJone at shortly after 1:15 p.m. on January 4, 2011, Mr. LaJone reported that the Borrower still had not recorded the improper transfer of the Property to the Debtor, and Mr. Irons then confirmed that record title to the Property still rested with the Borrower and not the Debtor. Indeed, though the foreclosure had already taken place, the deed

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 4 OF 12

improperly transferring the Property to the Debtor was not recorded until 2:45 p.m. on January 4, 2011. ***Thus, at the time of the foreclosure over 3 hours earlier, the Borrower (who has never filed bankruptcy) - - and not the Debtor - - was still the record owner of the Property!***

### C. RELIEF UNDER 11 U.S.C. §§ 362(d)(1) and (d)(2)

13. The allegations of paragraphs 1 through 12 are incorporated herein as though fully set forth at length.

14. Based upon the above foregoing, the Bank hereby believes and maintains that the Automatic Stay was not applicable to its foreclosure of the Property, inasmuch as the Property was still owned of record by the non-bankrupt borrower at the time of the foreclosure, and that the unauthorized, post-petition recordation of a deed unlawfully conveying title to the Property to the Debtor, for no consideration and after the foreclosure, does not retroactively invoke the Automatic Stay on the Bank's post-petition, but pre-transfer foreclosure.[4]

15. However, to the extent that the Automatic Stay applied to the Bank's foreclosure, the Bank requests that the Automatic Stay be retroactively annulled as to the Bank, *ab initio*, so as to validate the Bank's foreclosure.

16. This Court has the power the power and authority to retroactively validate those orders assertedly entered in violation of the stay.[5] Some of the circumstances considered by bankruptcy courts in determining whether to annul an automatic stay are: (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was

---

[4] Indeed, the Bank could and, if need be, will, argue that the unauthorized post-petition recordation of the deed to the Property is voidable, and in any event that the Bank was a good faith purchaser of the Property at foreclosure, for fair equivalent value and without knowledge of the bankruptcy such that 11 U.S.C. §549 is applicable thereto.

[5] *In re Pulley*, 196 B.R. 502, 504 (Bankr. W. D. Ark. 1996). *See also Hassell v. United States (In re Hassell)*, 2003 Bankr. LEXIS 1855 (Bankr. N.D. Tex. Dec. 16, 2003) (Hale, J.) (11 U.S.C. §362(d) expressly authorizes the "annulling" of an automatic stay).

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.[6] Some examples of cases in which the automatic stay was annulled include the following:

> (1) in *In re Tanksley*,[7] annulment of the stay was granted where there was no equity in the property, where the real estate in question was not necessary for an effective reorganization, and where the repetition of the foreclosure would create extra, unnecessary expense for the lender;

> (2) in *In re Lipuma*,[8] the stay was annulled where the creditor had no notice of the stay, and where debtor had admitted in another lift stay proceeding involving the same property (but another creditor) that there was no equity in the property;

> (3) in *In re Leavell*,[9] stay was annulled where the filing of foreclosure took place a few days before abandonment of the property by the bankruptcy trustee;

> (4) in *In re Jones*,[10] the stay was annulled and a foreclosure, which occurred after the filing of the bankruptcy, was held neither to be a willful violation of the automatic stay nor an unauthorized postpetition transfer where the creditor did not have notice of the initiation of the case at the time of the foreclosure;

> (5) in *In re Albany Partners, Ltd.*,[11] where the debtor's Chapter 13 filing was deemed to have been in bad faith, and where the debtor's rights to the property in question had already been litigated and determined in state court in favor of the creditor, annulment of the automatic stay was upheld, even though the creditors were aware of the debtor's bankruptcy filing at the time they conducted their foreclosure sale;

> (6) in *In re Kanorr*,[12] annulment was granted where debtor filed no schedules, and a pattern of abuse of the Bankruptcy Code was found; and

---

[6] *See In re Thornburg*, 277 B.R. 719, 731 (Bankr. E.D. Tex. 2002).
[7] 70 B.R. 429 (Bankr. E.D. Mo. 1987).
[8] 167 B.R. 522 (Bankr. N.D. Ill. 1994).
[9] 141 B.R. 393 (Bankr. S.D. Ill. 1992).
[10] 63 F.3d 411 (5th Cir. 1995).
[11] 749 F.2d 670 (11th Cir. 1984).
[12] 159 B.R. 1007 (Bankr. N.D. Ga. 1993).

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 6 OF 12

(7) in *In re Jewett*,[13] annulment of the automatic stay was permitted where there was no equity, no adequate protection shown, debtor abused cash and rents from the property, and filed bankruptcy at the last minute.

And in *In re Syed*,[14] a case very similar on its facts to the case *sub judice*, a bankruptcy court granted annulment of the stay to validate a post-petition foreclosure where, due to an unrecorded quitclaim deed obtained by debtor (but not conveyed to the creditor) on the eve of a foreclosure sale, and the debtor's bankruptcy filed on the same day as the sale, the creditor had no prior notice that the debtor held any interest in the property.[15]

17. Application of the foregoing factors weighs heavily in favor of annulment of the automatic stay. First, although the foreclosure was noticed before the bankruptcy was filed and it took place afterwards, foreclosure occurred before the Debtor had become the record owner of the Property; but for the existence of the unrecorded, later-recorded deed, Debtor would have had no interest in the Property. And in any case, Debtor is not liable directly to the Bank on the debt encumbering the Property.

18. Second, the Bank was not actually aware or notified of the bankruptcy until after the foreclosure had occurred, nor could the Bank be charged with "constructive notice" of the bankruptcy petition until after the foreclosure had taken place due to: a) the Borrower's and Debtor's failure to obtain the requisite permission from the Bank, as required by contract, for the conveyance of the Property; b) the Debtor's unexplained failure to timely record the transfer of the Property; and c) the name of the Debtor, being vastly different than the Borrower, such that awareness of the bankruptcy would have meant nothing to the Bank absent knowledge of the transfer of the Property.

---

[13] 146 B.R. 250 (9th Cir. B.A.P. 1992).
[14] 238 B.R. 126 (Bankr. N. D. Ill. 1999)
[15] *See also In re Wright*, 183 B.R. 541 (Bankr. C. D. Ill. 1995) (a Chapter 12 case where the mortgagee held no claim for debt against the bankrupt, to whom the borrowers had deeded the property, because the foreclosure action was not an attempt to collect a debt owed *by the debtor* (only the non-bankrupt mortgagee), and because the debtors could not protect the property or cure the arrearage through bankruptcy, retroactive relief was granted).

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 7 OF 12

19. Third, there is no equity in the Property, and it is not necessary for an effective reorganization, such that grounds would exist for relief from stay anyhow. The Bank would be prejudiced by having to proceed through the bankruptcy process, especially because the eve-of-foreclosure conveyance of numerous other properties into this Debtor immeasurably complicates the Bank's interests and rights, especially since the Borrower had expressly covenanted to retain the Property in a single-purpose entity.

20. Finally, the filing of this bankruptcy was in clear bad faith. The Fifth Circuit Court of Appeals has provided a non-exclusive list of identifiers for the prototype, bad-faith real estate case in its landmark opinion, *In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986):

> Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to *11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1)*. Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

*Id.* at 1072-73. Virtually all of the above factors exist here.

21. Until the conveyance of the Property into a "super-debtor" created for the sole purpose of filing bankruptcy in a name other than that of the original Borrower (or, perhaps also for the purpose of shielding the Borrower's identity, as an affiliate of Transcontinental Realty Investors, Inc., and its

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 8 OF 12

financial condition, from disclosure to public shareholders, which is no less improper), the Borrower had only one asset, which consisted of undeveloped and/or non-income-producing real estate. It is noteworthy that, but for the filing of the "amalgam bankruptcy" by this Debtor, and the conveyance of numerous properties into it, the Borrower would likely have had to comply with 11 U.S.C. §362(d)(3) as a single-asset real estate case; defeasance of known obligations under the Bankruptcy Code is a *per se* improper reason for filing a bankruptcy case.

22. On information and belief, the Borrower was not possessed of any full-time employees, and it had no cash flow except in the form of contributions from its parent and guarantor, Transcontinental Realty Investors, Inc., with which to confirm a plan or to make adequate protection payments, and having received no information regarding the insurance for the Property, it is at least dubious that Debtor will be in a position to pay the *ad valorem* taxes due in connection with the Property at month end. More worrying than that, by lumping the Property in with other distressed properties, the Debtor and Borrower have put the Bank at even greater risk since, now that the Property (and properties) are owned by one, collective Debtor, failure to pay *ad valorem* taxes due on other properties might now affect or encumber the Bank's collateral. Thus, the Debtor's unauthorized actions in transferring properties without consideration have added significantly to the Bank's collateral risk.

23. The Bank is also informed and believes that, with respect to the Property, there are few (if any) unsecured creditors, though this, too, has changed with the Debtor's reckless and irresponsible behavior.

24. Just as in the prototypical case, the Property was not only posted for foreclosure, due to Debtor's and the Borrower's failure to provide notice of both the Bankruptcy and the improper conveyance of the Property, it was actually foreclosed, and this occurred due to arrearages on the indebtedness to the Bank.

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 9 OF 12

25. Finally, consistent with the "new debtor syndrome", Debtor's existence, and its receipt of no-consideration transfers of the Property (and other properties) on the eve of foreclosure, was intended to isolate the Property, and to hold it hostage to stave off foreclosure by creditors of the prior owners and borrowers.

26. Indeed, in the case of the Property pledged for the Bank, given the absence of equity in the Property, it is believed that the primary consideration in folding the Property into this Debtor and filing bankruptcy was protection of the Borrower's parent and guarantor, Transcontinental Realty Investors, Inc., from deficiency exposure; this, too, is an improper purpose for a bankruptcy filing. In the Fifth Circuit's decision in *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 576-78 (5th Cir. 1991), the Fifth Circuit concluded, in pertinent part:

   a. where a contemplated plan consists of delaying foreclosure until either the debtor can sell the property or await the return of the favorable office and retail market, such a plan "only benefits the partners of the [d]ebtor and is detrimental to [secured creditors] and the unsecured creditors";

   b. [citing *Timbers of Inwood*], "when there is no reasonable likelihood that the statutory objective of reorganization can be realized or when the debtor unreasonably delays, then the automatic stay and other statutory provisions designed to accomplish the reorganization objective become destructive of the legitimate rights and interest[s] of creditors, the intended beneficiaries. In that situation it is incumbent upon the bankruptcy judge to effectuate the provisions of the Bankruptcy Code for the protection of the creditors . . . The bankruptcy judge must meet head-on his obligation to decide, fairly and impartially, the hard questions."; and

   c. that "[t]he Bankruptcy Code cannot be used to protect the interests of the [d]ebtor's undisclosed principals. 'It has long been recognized that using the bankruptcy process to promote individual interests in a manner not consistent with the legislative purposes of the Bankruptcy Code is an abuse of the jurisdiction of the bankruptcy courts. (Citations omitted)."

*Id.* Ultimately, the *Canal Place* court found that "[c]ourts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization."

For all of the above reasons, if applicable, the automatic stay should be annulled or lifted.

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 10 OF 12

WHEREFORE, Movant respectfully requests this Honorable Court to enter an Order retroactively annulling the automatic stay, or alternatively unconditionally modifying the automatic stay, and awarding Movant such other and further relief as this Court shall deem just and appropriate.

Respectfully submitted,

STROMBERG STOCK, P.L.L.C.

By: _/s/ Mark Stromberg_
Mark Stromberg
State Bar No. 19408830

Two Lincoln Centre
5420 LBJ Freeway, Suite 300
Dallas, TX 75240
TELEPHONE: (972) 458-5353
FACSIMILE: (972) 770-2156

*Attorneys for State Bank of Texas*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by U.S. Regular Mail, postage prepaid, upon the Debtor, Debtor's Counsel and U.S. Trustee listed below, and on those appearing herein via ECF, on the 18TH day of January, 2011.

FRE Real Estate, Inc.
1750 Valley View Lane, Suite 400
Dallas, TX 75234
***Debtor***

John P. Lewis, Jr.
Law Office of John P. Lewis, Jr.
1412 Main Street, Suite 210
Dallas, TX 75202
***Proposed Counsel for Debtor***

Office of the U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242-1496
***U.S. Trustee***

Patrick J. Neligan, Jr.
Douglas J. Buncher
Seymour Roberts
Neligan/Foley, L.L.P.
325 N. St. Paul St., Suite 3600
Dallas, TX 75201
***Proposed Counsel for Debtor***

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 11 OF 12

| | |
|---|---|
| David Weitman<br>Daniel I. Morenoff<br>K&L Gates, LLP<br>1717 Main Street, Suite 2800<br>Dallas, TX   75210<br>***Counsel for Wells Fargo Bank*** | Dennis Olson<br>Olson, Nicoud & Gueck, L.L.P.<br>1201 Main Street, Suite 2470<br>Dallas, TX   75202-3902<br>***Counsel for First Bank & Trust Co.***<br>***and The Bank of Weatherford*** |
| Texas Comptroller of Public Accounts<br>ATTN: Jason Starks<br>P. O. Box 12548<br>Austin, TX   78711-2548 | The Bank of Weatherford<br>ATTN: J. Mark Riebe, President<br>P. O. Boc 2170<br>Weatherford, TX   76086 |
| Attorney General - State of Texas<br>Bankruptcy & Collections Division<br>P. O. Box 12548<br>Austin, TX   78711-2548 | Laurie Spindler Huffman<br>Linebarger Goggan Blair & Sampson<br>2323 Bryan Street, Suite 1600<br>Dallas, TX   75201 |
| Jo E. Hartwick<br>Briana L. Cioni<br>Rachael L. Stringer<br>STUTZMAN, BROMBERG, ESSERMAN & PLIFKA<br>2323 Bryan Street, Suite 2200<br>Dallas, TX   75201-2689 | Kent Hale<br>Craig Terrill Hale & Grantham, L.L.P.<br>9816 Slide Rd., Suite 201<br>Lubbock, TX   79424<br>***Counsel for First Bank & Trust Co.***<br>***and The Bank of Weatherford*** |
| Elizabeth Banda Calvo<br>Perdue, Brandon, Fielder, Collins & Mott, L.L.P.<br>P. O. Box 13430<br>Arlington, TX   76094-0430<br>***Attorneys for Valwood Improvement Authority*** | Kyle Mauldin<br>Greg Garland, President<br>First Bank & Trust Co.<br>9816 Slide Rd.<br>Lubbock, TX   79424 |
| Keith M. Azurada<br>John C. Leininger<br>BRYAN CAVE, LLP<br>2200 Ross Avenue, Suite 300<br>Dallas, TX   75201<br>***Counsel for Armed Forces Bank, N. A.*** | Robert Bernier, Vice President<br>Victor Barwig, Sr., VP/Portfolio Mgr.<br>Wells Fargo Capital Finance<br>1100 Abernathy Road, Suite 1600<br>Atlanta, GA   30328 |

                                         */s/ Mark Stromberg*
                                         Mark Stromberg

MOTION OF STATE BANK OF TEXAS SEEKING TO
ANNUL OR, ALTERNATIVELY, SEEKING RELIEF FROM,
THE AUTOMATIC STAY UNDER 11 U.S.C. §362, IF APPLICABLE

PAGE 12 OF 12