Mark Stromberg
Texas State Bar No. 19408830
STROMBERG STOCK, P.L.L.C.
Two Lincoln Centre
5420 LBJ Freeway, Suite 300
Dallas, TX 75240
Telephone: (972) 458-5353
Facsimile: (972) 770-2156
E-mail: mark@strombergstock.com

Attorneys for State Bank of Texas

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FRE REAL ESTATE, INC., f/k/a | § | Case No. 11-30210-BJH-11 |
| TRANSCONTINENTAL | § | |
| COVENTRY POINTE, INC., | § | |
| | § | |
| Debtor. | § | |

## JOINDER OF STATE BANK OF TEXAS IN MOTION OF
## WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
## UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

Comes Now **STATE BANK OF TEXAS** (the "Bank"), who files this its joinder in the Motion of Wells Fargo Capital Finance, Inc. ("Movant") to dismiss this case due to bad faith filing under 11 U.S.C. §1112(b) of the United States Bankruptcy Code, or alternatively to convert the case to a Chapter 7 case, and avers in support thereof as follows:

### A. JURISDICTION

1. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1334(b), 157(b)(2)(G) (core proceeding) and 11 U.S.C. §1112.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1408 and/or §1409.

3. The Bank is a federally-insured banking association bank with offices located in Dallas County, Texas.

JOINDER OF STATE BANK OF TEXAS IN MOTION OF
WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

PAGE 1 OF 9

4.  On January 4, 2011, at around or just before 7:00 a.m.[1], **FRE REAL ESTATE, INC.** ("Debtor"), filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

## B.  FACTUAL BACKGROUND

5.  On or about July 23, 2008, "TRANSCONTINENTAL COVENTRY POINTE, INC.", a Nevada corporation later renamed as "COVENTRY POINTE, INC." (hereafter, "Borrower") executed a promissory note in favor of the Bank, and borrowed from and pledged to repay to the Bank the original principal sum of $3,815,000.00 (the "Note").[2]

6.  Under a deed of trust, security agreement and assignment of rents of even date therewith (the "Deed of Trust"), Borrower pledged as collateral for the repayment of the Note six contiguous (6) tracts of real property in Dallas County, Texas (collecitvely, the "Property"). The Property consists of three tracts of undeveloped real estate, and 50% tenant-in-common interest in a parking garage adjacent to an office building which does not sit on any part of the Property. The Bank is informed and believes that the parking garage generates no income for the Borrower. The combined values of the parcels comprising the Property is believed to be roughly $2.0 million, leaving a roughly $2.0 million "equity gap." Adding to it, the Borrower had incurred, but has yet to pay, *ad valorem* taxes relative to the Property. Total *ad valorem* taxes for the Property have accrued in the sum of $149,929.06, all of which are due on or before January 31, 2011, as against which the Borrower had deposited a tax escrow of $96,977.71, leaving a shortfall of $52,951.35.

7.  Under Paragraph 1.20 of the Deed of Trust, Borrower pledged that it would not, without the prior written consent of the Bank, ". . . sell, lease, exchange, assign, convey, transfer

---

[1]  According to John Lewis, counsel for Debtor, the bankruptcy was filed shortly before 7:00 a.m. on January 4, 2011.

[2]  As later amended by a Loan Extension and Modification Agreement executed on or about September 28, 2010. In Paragraph 9 of the loan modification, Borrower acknowledged that as of September 23, 2010, the outstanding principal balance due under the Note was $3,814,993.

JOINDER OF STATE BANK OF TEXAS IN MOTION OF
WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

PAGE 2 OF 9

possession of or otherwise dispose of all or any portion of the Property, or any interest therein; . . ." In addition, under Paragraph 2.06 thereof, Borrower's transfer of - - or attempt to transfer - - any portion of or interest in the Property without the Bank's prior written consent constituted an event of default. Therefore, unauthorized conveyance of the Property by Borrower was prohibited.

8. Nevertheless, without the Bank's prior consent or knowledge, on December 23, 2010, Borrower prepared and executed a "General Warranty Deed" purporting to convey all of the Property to "Fenton Real Estate, Inc.," apparently a former name for Debtor. This transfer recites as consideration a mere $10.00 (but presumably, there was no exchange of monetary consideration to Borrower). For reasons unexplained, neither Borrower nor Debtor sought to record this 11th-hour deed of the Property until some time on January 4, 2011.

9. Of critical importance, Debtor was never a borrower or guarantor under the Note, nor until January 4, 2011 a record owner of the Property, nor a pledgor under the Deed of Trust. Indeed, the Bank had no prior relationship with Debtor and, as of January 4, 2011, knew nothing of its existence.

10. Borrower had defaulted on its obligations under the Note and Deed of Trust, and the Property was posted by the Bank, with notice to the Borrower, for non-judicial foreclosure sale to take place on January 4, 2011 between the hours of 10:00 a.m. and 1:00 p.m. In fact, having no knowledge of the Debtor, Borrower's transfer to Debtor, or Debtor's bankruptcy filing, the Bank, acting through Thomas J. Irons, the duly-appointed substitute trustee, foreclosed on the Property at around 11:30 a.m. on January 4, 2011, and at around 12:30 p.m. that same day submitted the Trustee's Deed electronically for recordation with the Dallas County Deed Records. The Bank did this without any actual or constructive notice of the attempted conveyance of the Property, or the very existence of Debtor.

JOINDER OF STATE BANK OF TEXAS IN MOTION OF
WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

PAGE 3 OF 9

11.     Thereafter, on January 4, 2011, at 1:02 p.m., Jay A. LaJone and/or his legal assistant, Alice Bueto, for the first time attempted to notify the Bank, via e-mail, through Mr. Irons, of the Debtor's bankruptcy filing, and of the purported conveyance of the Property to the Debtor and of imposition of the automatic stay. They then requested "confirmation that the sale [scheduled for between 10:00 a.m. and 1:00 p.m.] will not proceed. If record title to the Property had then belonged to the Debtor, a technical, though innocent, violation of the automatic stay might have occurred, subject to annulment.

12.     However, when Mr. Irons spoke to Mr. LaJone at shortly after 1:15 p.m. on January 4, 2011, Mr. LaJone reported that the Borrower still had not recorded the improper transfer of the Property to the Debtor, and Mr. Irons then confirmed that record title to the Property still rested with the Borrower and not the Debtor. Indeed, though the foreclosure had already taken place, the deed improperly transferring the Property to the Debtor was not recorded until 2:45 p.m. on January 4, 2011. ***Thus, at the time of the foreclosure over 3 hours earlier, the Borrower (who has never filed bankruptcy) - - and not the Debtor - - was still the record owner of the Property!***

### C.     RELIEF UNDER 11 U.S.C. §1112(b)

13.     The allegations of paragraphs 1 through 12 are incorporated herein as though fully set forth at length. This joinder is filed in the alternative to the motion of the Bank seeking annulment or relief from the automatic stay concurrently herewith.

14.     Based upon the above foregoing, the Bank hereby believes and maintains that the Debtor's bankruptcy case was filed in bad faith, warranting dismissal and/or conversion.

15.     The Fifth Circuit Court of Appeals has provided a non-exclusive list of identifiers for the prototype, bad-faith real estate case in its landmark opinion, *In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986):

JOINDER OF STATE BANK OF TEXAS IN MOTION OF
WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

PAGE 4 OF 9

> Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to *11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1)*. Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand -still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

*Id.* at 1072-73. Virtually all of the above factors exist here.

16. Until the conveyance of the Property into a "super-debtor" created for the sole purpose of filing bankruptcy in a name other than that of the original Borrower (or, perhaps also for the purpose of shielding the Borrower's identity, as an affiliate of Transcontinental Realty Investors, Inc., and its financial condition, from disclosure to public shareholders, which is no less improper), the Borrower had only one asset, which consisted of undeveloped and/or non-income-producing real estate. It is noteworthy that, but for the filing of the "amalgam bankruptcy" by this Debtor, and the conveyance of numerous properties into it, the Borrower would likely have had to comply with 11 U.S.C. §362(d)(3) as a single-asset real estate case; defeasance of known obligations under the Bankruptcy Code is a *per se* improper reason for filing a bankruptcy case.

17. On information and belief, the Borrower was not possessed of any full-time employees, and it had no cash flow except in the form of contributions from its parent and guarantor,

JOINDER OF STATE BANK OF TEXAS IN MOTION OF
WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

PAGE 5 OF 9

Transcontinental Realty Investors, Inc., with which to confirm a plan or to make adequate protection payments, and having received no information regarding the insurance for the Property, it is at least dubious that Debtor will be in a position to pay the *ad valorem* taxes due in connection with the Property at month end. More worrying than that, by lumping the Property in with other distressed properties, the Debtor and Borrower have put the Bank at even greater risk since, now that the Property (and properties) are owned by one, collective Debtor, failure to pay *ad valorem* taxes due on other properties might now affect or encumber the Bank's collateral. Thus, the Debtor's unauthorized actions in transferring properties without consideration have added significantly to the Bank's collateral risk.

18. The Bank is also informed and believes that, with respect to the Property, there are few (if any) unsecured creditors, though this, too, has changed with the Debtor's reckless and irresponsible behavior.

19. Just as in the prototypical case, the Property was not only posted for foreclosure, due to Debtor's and the Borrower's failure to provide notice of both the Bankruptcy and the improper conveyance of the Property, it was actually foreclosed, and this occurred due to arrearages on the indebtedness to the Bank.

20. Finally, consistent with the "new debtor syndrome", Debtor's existence, and its receipt of no-consideration transfers of the Property (and other properties) on the eve of foreclosure, was intended to isolate the Property, and to hold it hostage to stave off foreclosure by creditors of the prior owners and borrowers.

21. Indeed, in the case of the Property pledged for the Bank, given the absence of equity in the Property, it is believed that the primary consideration in folding the Property into this Debtor and filing bankruptcy was protection of the Borrower's parent and guarantor, Transcontinental

JOINDER OF STATE BANK OF TEXAS IN MOTION OF
WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

PAGE 6 OF 9

Realty Investors, Inc., from deficiency exposure; this, too, is an improper purpose for a bankruptcy filing. In the Fifth Circuit's decision in *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 576-78 (5th Cir. 1991), the Fifth Circuit concluded, in pertinent part:

    a.    where a contemplated plan consists of delaying foreclosure until either the debtor can sell the property or await the return of the favorable office and retail market, such a plan "only benefits the partners of the [d]ebtor and is detrimental to [secured creditors] and the unsecured creditors";

    b.    [citing *Timbers of Inwood*], "when there is no reasonable likelihood that the statutory objective of reorganization can be realized or when the debtor unreasonably delays, then the automatic stay and other statutory provisions designed to accomplish the reorganization objective become destructive of the legitimate rights and interest[s] of creditors, the intended beneficiaries. In that situation it is incumbent upon the bankruptcy judge to effectuate the provisions of the Bankruptcy Code for the protection of the creditors . . . The bankruptcy judge must meet head-on his obligation to decide, fairly and impartially, the hard questions."; and

    c.    that "[t]he Bankruptcy Code cannot be used to protect the interests of the [d]ebtor's undisclosed principals. 'It has long been recognized that using the bankruptcy process to promote individual interests in a manner not consistent with the legislative purposes of the Bankruptcy Code is an abuse of the jurisdiction of the bankruptcy courts. (Citations omitted)."

*Id.* Ultimately, the *Canal Place* court found that "[c]ourts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization."

For all of the above reasons, and for those reasons set forth in the Motion, in which the Bank joins, this Court should consider dismissal and/or conversion in the best interests of the creditors.

WHEREFORE, the Bank respectfully requests this Honorable Court to enter an Order dismissing or converting the above case.

JOINDER OF STATE BANK OF TEXAS IN MOTION OF
WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

PAGE 7 OF 9

Respectfully submitted,

STROMBERG STOCK, P.L.L.C.

By: _/s/ Mark Stromberg_
Mark Stromberg
State Bar No. 19408830

Two Lincoln Centre
5420 LBJ Freeway, Suite 300
Dallas, TX 75240
TELEPHONE: (972) 458-5353
FACSIMILE: (972) 770-2156

*Attorneys for State Bank of Texas*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by U.S. Regular Mail, postage prepaid, upon the Debtor, Debtor's Counsel and U.S. Trustee listed below, and on those appearing herein via ECF, on the 18TH day of January, 2011.

FRE Real Estate, Inc.
1750 Valley View Lane, Suite 400
Dallas, TX 75234
***Debtor***

John P. Lewis, Jr.
Law Office of John P. Lewis, Jr.
1412 Main Street, Suite 210
Dallas, TX 75202
***Proposed Counsel for Debtor***

Office of the U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242-1496
***U.S. Trustee***

Patrick J. Neligan, Jr.
Douglas J. Buncher
Seymour Roberts
Neligan/Foley, L.L.P.
325 N. St. Paul St., Suite 3600
Dallas, TX 75201
***Proposed Counsel for Debtor***

JOINDER OF STATE BANK OF TEXAS IN MOTION OF
WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

PAGE 8 OF 9

David Weitman
Daniel I. Morenoff
K&L Gates, LLP
1717 Main Street, Suite 2800
Dallas, TX   75210
*Counsel for Wells Fargo Bank*

Texas Comptroller of Public Accounts
ATTN: Jason Starks
P. O. Box 12548
Austin, TX   78711-2548

Attorney General - State of Texas
Bankruptcy & Collections Division
P. O. Box 12548
Austin, TX   78711-2548

Jo E. Hartwick
Briana L. Cioni
Rachael L. Stringer
STUTZMAN, BROMBERG, ESSERMAN & PLIFKA
2323 Bryan Street, Suite 2200
Dallas, TX   75201-2689

Elizabeth Banda Calvo
Perdue, Brandon, Fielder, Collins & Mott, L.L.P.
P. O. Box 13430
Arlington, TX   76094-0430
*Attorneys for Valwood Improvement Authority*

Keith M. Azurada
John C. Leininger
BRYAN CAVE, LLP
2200 Ross Avenue, Suite 300
Dallas, TX   75201
*Counsel for Armed Forces Bank, N. A.*

Dennis Olson
Olson, Nicoud & Gueck, L.L.P.
1201 Main Street, Suite 2470
Dallas, TX   75202-3902
*Counsel for First Bank & Trust Co.*
*and The Bank of Weatherford*

The Bank of Weatherford
ATTN: J. Mark Riebe, President
P. O. Boc 2170
Weatherford, TX   76086

Laurie Spindler Huffman
Linebarger Goggan Blair & Sampson
2323 Bryan Street, Suite 1600
Dallas, TX   75201

Kent Hale
Craig Terrill Hale & Grantham, L.L.P.
9816 Slide Rd., Suite 201
Lubbock, TX   79424
*Counsel for First Bank & Trust Co.*
*and The Bank of Weatherford*

Kyle Mauldin
Greg Garland, President
First Bank & Trust Co.
9816 Slide Rd.
Lubbock, TX   79424

Robert Bernier, Vice President
Victor Barwig, Sr., VP/Portfolio Mgr.
Wells Fargo Capital Finance
1100 Abernathy Road, Suite 1600
Atlanta, GA   30328

　　　　　　　　　　　　　/s/ Mark Stromberg
　　　　　　　　　　　　　Mark Stromberg

JOINDER OF STATE BANK OF TEXAS IN MOTION OF
WELLS FARGO CAPITAL FINANCE, INC. TO DISMISS
UNDER 11 U.S.C. §1112(b) OR ALTERNATIVELY TO CONVERT

PAGE 9 OF 9