IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE: §
 §
FRE REAL ESTATE, INC., §
 § Case No 11-30210-BJH-11
 § Chapter 11
 Debtor. §

**ARMED FORCES BANK N.A.'S MOTION TO DISMISS DEBTOR'S
CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b)**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNTIED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, 14TH FLOOR, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON FEBRUARY 10, 2011, WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

Armed Forces Bank, N.A. successor by merger to Bank Midwest, N.A., ("AFB"), a secured creditor and party in interest in this bankruptcy case, hereby files its Motion to Dismiss Debtor's Chapter 11 Case (the "Motion") Pursuant to Section 1112(b) In support of the Motion, AFB respectfully represents that:

**JURISDICTION**

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## PRELIMINARY STATEMENT

2. The bankruptcy filing by FRE Real Estate, Inc. ("FRE" or the "Debtor") was made in bad faith and for improper purposes, namely to stop AFB from exercising its foreclosure rights under applicable state law.

## FACTUAL BACKGROUND

3. On January 4, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has remained in possession of its property and operated its business as a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108.

4. Prior to the Petition Date Armed Forces Bank entered into the following promissory notes with affiliates of the Debtor (the "Loans"):

    a. Promissory Note from EQK Port Olpenitz, Inc, dated June 29, 2007, in the amount of 5,000,000.00.

    b. Promissory Note from TCI 109 Beltline, Inc.,("TCI 109") dated April 21, 2006, in the amount of $5,683,000.00.

    c. Promissory Note from TCI 109, dated December 21, 2005, in the amount of $6,732,000.00.

    d. Promissory Note from American Realty Trust, Inc., ("ART"), dated February 28, 2008, in the amount of $25,907,546.15.

    e. Promissory Note from ART, dated February 23, 2004, in the amount of $10,000,000.00.

    f. Promissory Note from ART, dated January 1, 2010, in the amount of $1,237,304.08.

    g. Promissory Note from Transcontinental Realty Investors, Inc., ("Transcontinental"), dated September 28, 2007, in the amount of $3,000,712.00.

    h. Promissory Note from Transcontinental (assumed from American Realty Trust, Inc.), dated December 30, 2004, in the amount of $3,121,287.91.

i. Promissory Note from Transcontinental Realty Acquisition Corporation, dated June 30, 2009, in the amount of $4,000,000.00.

j. Promissory Note from Basic Capital Management, Inc., dated June 30, 2009, in the amount of $4,000,000.00. (seems a bit large)

k. Promissory Note from TCI McKinney Ranch, Inc., ("TCI McKinney") (assumed from Today McKinney Ranch, Land, L.P.), dated January 1, 2010, in the amount of $5,321,493.59.

5. The Loans are cross-collateralized and cross-defaulted. The Loans are secured by multiple deed of trusts in favor of AFB on the following parcels of real property (the "Collateral") located in Dallas, Collin and Travis Counties:

a) 19.43 acres in Dallas County ("Valwood");

b) 235 acres in Dallas County ("Mercer Crossing");

c) 27.97 acres in Dallas County ("Kinwest");

d) 109.85 acres and 13.22 acres in Dallas County (Beltline");

e) 97.26 acres in Travis County ("Pioneer Crossing");

f) approximately 20 acres in Collin County ("McKinney")

6. AFB had posted all of the Collateral for foreclosure on January 4, 2011. Upon information and belief TCI 109, ART, TCI McKinney, Transcontinental, and ART Collection, Inc. transferred their interests in the Collateral ("the Transfers") to the Debtor on January 4, 2011. After receiving the Transfers and prior to AFB's foreclosure sales, Debtor filed its petition for relief.

7. Debtor's filing was designed to impede AFB's ability to exercise its rights and remedies against the Collateral

8. Upon information and belief, none of the Collateral produces income.

9. The Transfers constituted a breach of the Loans

10. As of the Petition Date, the Debtor's affiliates collectively owed AFB approximately $72,520447.00.

11. AFB did not consent to the Transfers, and in fact, the Deeds of Trust prohibit the Transfers

12. The Debtor's assets include the Collateral as well as other real estate assets.

13. AFB is unaware of any consideration paid by the Debtor for the Transfers.

14. AFB believes that as of the Petition Date, the value of the Collateral slightly exceeded the amount of debt secured by the Collateral.

15. AFB is not aware of any operations carried on by the Debtor, any unencumbered cash flow available to the Debtor to maintain, protect, and insure the Collateral, or any unencumbered assets owned by the Debtor. In fact, it is AFB's understanding that all of the Debtor's operations are handled by its affiliates.

16. In as much as the Debtor has not filed its Schedules of Assets and Liabilities or any pleading with the Court shedding light on how it intends to operate and meet its financial obligations, AFB believes that the Debtor may have no source of cash to fund payment of the 2010 and 2011 ad valorem real property taxes on the Collateral.

17. In light of the timing of the Debtor's bankruptcy filing and the actions of the Debtor's affiliates, this Court must find that (1) the Debtor's case was filed in bad faith; (2) the Debtor has no realistic ability to propose much less confirm a plan of reorganization, and (3) the Debtor has engaged in gross misconduct.

18. The Court should not countenance the prepetition actions of the Debtor sand its affiliates by allowing the Debtor to stay in bankruptcy. Permitting the Debtor to continue in this

Chapter 11 proceeding would be sending a very clear message that such gross misconduct and wrongful manipulation of the system is permitted.

## RELIEF REQUESTED

19. Through this Motion, AFB seeks an order from the Court dismissing the Debtor's Chapter 11 petition pursuant to Section 1112(b) of the Bankruptcy Code due to its being a bad faith filing.

20. Section 1112(b) provides that "on request of a party in interest…, and after notice and a hearing, the Court may…dismiss a case under this chapter…for cause. Section 1112(b) stet set forth a list of circumstances which constitute cause. Such circumstances include, among others, the inability to effectuate a plan.

21. The list in Section 1112(b), however, is illustrative and not exhaustive. See, e.g., In re Mirant Corp., 2005 WL 2148362, * 5 (Bankr. N.D. Tex. 2005).

22. Inherent in the statute and clearly inferred from Section 1112(b) is the requirement of good faith on the part of the debtor to file and maintain a Chapter 11 case. This good faith requirement has been consistently upheld by the Courts. Mirant, 2005 WL 2148362 as * 5 (citing Little Creek Dev. Co., 779 F.2d 1068, 1072 (5th Cir. 1986)).

23. "Numerous cases have found a lack of good faith to constitute 'cause' for lifting the stay to permit foreclosure or for dismissing the case. Little Creek, 779 F.2d at 1072.

24. The initial burden of proof for dismissal of Chapter 11 petition on grounds of a bad faith filing lies with the moving party. However, once the debtor's good faith has been put into question, the debtor bears the burden of proving good faith. See, e.g. In re SGL Carbon Corp., 200 F.3d 154 (3rd Cir. 1999); In re Integrated Telecom Express, 384 F.3d 108 (3rd Cir. 2004).

25. Courts often consider the Fifth Circuit's Little Creek factors, which include whether (1) debtor has one asset, such as a tract of undeveloped or developed real property, (2) secured creditors' liens encumber this tract, (3) there are no employees except for principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments, (4) there are a few, if any unsecured creditors whose claims are relatively small, (5) the property has been posted for foreclosure because of arrearages on debt, and the debtor has been unsuccessful in defending actions against foreclosure in state court or, alternatively, the debtor and one creditor may have proceeded to standstill in state court litigation, (6) bankruptcy offers only the possibility of forestalling loss of property, (7) there are allegations of wrongdoing by debtor or its principals, and (8) there is "new debtor syndrome" in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate insolvent property and its creditors. In re Bergeron, 218 B.R. 1003 (Bankr. E.D. La. 1998) (citing Little Creek, 779 F.2d 1068).

26. Other courts have found cause to dismiss a debtor's bankruptcy case when "[t]he predominant purpose in filing the petition was to prevent foreclosure upon the heavily encumbered property [when] there was no plan contemplated for the infusion of capital, no gain in managerial expertise, no history of past business conduct, no employees and indeed, current business activity on the date of the commencement of the case nor are there any reasonable prospects for the conduct of future business." Little Creek, 779 F.2d at 1073. (quoting In re Thirteenth Place, Inc. 30 B.R. 503 (Bankr. App. 9th Cir. 1983).

27. As noted, a critical circumstance found by courts to be illustrative of a bad faith filing is referred to as "new debtor syndrome." Little Creek, 779 F.2d at 1073, See, e.g. Éclair Bakery, 255 B.R. 121, 140 (Bankr. S.D.N.Y 2000); (In re Yukon Enterprises, Inc., 39 B.R. 919,

921 (C.D. Cal. 1984); In re 234 West 22nd St. Corp., 214 B.R. 751 (Bankr. S.D.N.Y 1997); In re HBA East, Inc., 87 B.R. 248, 258 (Bankr. E.D.N.Y 1988).

28. "The 'new debtor syndrome', in which a one asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors exemplifies, although it does not uniquely categorize, bad faith cases. Little Creek, 779 F.2d at 1073.

29. Other characteristics of new debtor syndrome include the fact that "[t]he new entity usually has few if any unsecured debts, no employees other than the controlling participants, no means of servicing the debt other than through the transferred property, no cash flow, and no ongoing business prospects." In re Adbrite Corporation, 290 B.R. 209, 218 (Bankr. S.D.N.Y 2003).

30. "Once [a] creditor establishes that the transfer of the distressed property to the debtor was in close proximity to the filing of the case, a prima facie showing of bad faith has been shown, thus creating a rebuttable presumption of bad faith. The burden, thereafter, is the debtor to establish good and sufficient reasons why the relief should not be granted." In re Éclair Bakery Ltd., 225 B.R. at 140 (discussing new debtor syndrome in the context of the automatic stay). But see, In re 234-6 West 22nd St. Corp. 214, B.R. 751 (Bankr. S.D.N.Y 1997) (applying the same standard in the context of a Section 1112(b) dismissal).

31. The Petition submitted by the Debtor demonstrates a classic example of new debtor syndrome. The Collateral and other distressed real property collateral was transferred to the Debtor on the eve of the bankruptcy filing in order to isolate the assets and forestall AFB and other secured creditors from exercising their rights and remedies against their respective collateral.

32. Moreover, the Debtor's case has several other attributes of new debtor syndrome. Upon information and belief, the Debtor's unsecured debts are minimal compared to its secured debts. It appears the Debtor has no employees, and the Debtor conducts all of its business through retaining the services of its affiliates. The Debtor has no means of servicing the debt other than through the transferred property and the Debtor's attempts to try to sue the encumbered cash and rents constituting other lenders' collateral to try to pay the costs in connection with the maintenance, security, insurance, and protecting of the Collateral (formerly owned by the Debtor's affiliates)

33. In addition, the Debtor exhibits each of the <u>Little Creek</u> factors indicative of bad faith: 1) the Debtor's only assets, by design, are the distressed assets transferred to the Debtor on the eve of the Debtor's bankruptcy filing 2) AFB's and other similarly situated secured creditors' liens encumber the Debtor's assets, including the Collateral; 3) upon information and belief, there are no employees of the Debtor except for its officers, little or not cash flow, and no available unencumbered sources of income to sustain plan of reorganization or to make adequate protection payments; 4) upon information and belief, the Debtor's unsecured debts are minimal compared to its secured debts; 5) the affiliates have been in default under the Loans for an extended period of time, and, but for the Debtor's bankruptcy filing, AFB would have the presently exercisable right to foreclose on the Collateral; 6) the Affiliates were unsuccessful in their attempts to sell or refinance the Collateral, leaving bankruptcy protection, as toms point down the road, as their strategy to forestall AFB's collection efforts; 7) the actions of the principals of the Debtor and the affiliates to transfer the Collateral were in violation of the terms of the loan documents, were fraudulent, and constitute gross mismanagement; and 8) as stated previously, the factors evidencing "new debtor syndrome" are present.

34. Given the facts of this case, this Court should find that the Debtor filed this case in bad faith and that the case should be dismissed promptly.

35. Clearly, given the fact that the Debtor and its affiliates have orchestrated potentially fraudulent conveyances from the Debtor's affiliates to the Debtor, such actions constitute gross mismanagement of the estate.

36. For all these reasons, AFB asks this Court to dismiss the case due to bad faith filing.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, AFB respectfully requests the Court enter an order:

Dismissing the Debtor's Chapter 11 Petition due to its bad faith filing.

Respectfully submitted,

*/s/ Keith M. Aurzada*
Keith M. Aurzada
Texas Bar No. 24009880
John C. Leininger
Texas Bar No. 24007544
Bryan Cave LLP
2200 Ross Ave., Suite 3300
Dallas, Texas 75201
(214) 721-8000 (Telephone)
(214) 721-8100 (Facsimile)

**Attorneys for Armed Forces Bank, N.A.**

**Certificate of Service**

The undersigned certifies that on January 18, 2011 a true and correct copy of the above and foregoing was served through the Court's ECF system on those parties consenting to such service, including the Debtor. It should be noted that as of the filing of this Motion, the Debtor had not yet filed a list of its 20 largest unsecured creditors. A copy of the motion, has been mailed to the parties on the attached service list.

By: /s/ Keith M. Aurzada
Keith M. Aurzada