Andrew E. Jillson
Texas State Bar No. 10666370
Cameron W. Kinvig
Texas State Bar No. 24055780
Hunton & Williams LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: 214-979-3000
Telecopy: 214-979-3963

ATTORNEYS FOR AMERICAN BANK OF COMMERCE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| FRE REAL ESTATE, INC. | § | CASE NO. 11-30210-bjh-11 |
| f/k/a TCI PARK WEST II, INC. | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

## JOINDER OF AMERICAN BANK OF COMMERCE IN WELLS FARGO CAPITAL FINANCE, INC.'S MOTION TO DISMISS FRE REAL ESTATE INC.'S CHAPTER 11 PETITION PURSUANT TO 11 U.S.C. § 1112(b) DUE TO BAD FAITH FILING, OR, IN THE ALTERNATIVE, TO CONVERT THE CASE TO A CHAPTER 7 CASE

**TO THE HONORABLE BARBARA J. HOUSER,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW American Bank of Commerce ("**Commerce**") and files this, its Joinder (the "**Joinder**") to Wells Fargo Capital Finance, Inc.'s ("**Wells Fargo**") Motion to Dismiss FRE Real Estate Inc.'s (the "**Debtor**") Chapter 11 Petition Pursuant to 11 U.S.C. § 1112(b) due to Bad Faith Filing, or, in the Alternative, to Convert the Case to a Chapter 7 Case (the "**Motion**"), and would hereby show this Court as follows:

### Jurisdiction

1. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b), 157(b)(2)(G), and 11 U.S.C. § 1112.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409.

**JOINDER TO MOTION TO DISMISS OR CONVERT**
**FRE REAL ESTATE, INC.'S BANKRUPTCY CASE—Page 1**

**Summary of Facts**

A.  **The Realco Indebtedness and Collateral Securing the Realco Indebtedness**

3. On or about October 28, 2009, One Realco Corporation ("**Realco**") entered into that certain loan agreement (the "**Agreement**") with Commerce, whereby Commerce agreed to lend Realco the sum of $4,325,855.00 (the "**Realco Indebtedness**").

4. To compel Commerce to enter into the Agreement, Realco signed a promissory note with Commerce on or about October 28, 2009 (the "**Note**"), stating that it promised to repay the Realco Indebtedness, plus interest, in monthly payments beginning on October 28, 2009 and continuing through October 28, 2011.[1]

5. To secure the promises made by Realco in the Agreement and the Note, Thornwood Land and Cattle, LLC ("**Thornwood**"), an affiliate of Realco, provided Commerce with certain deeds of trust (the "**Thornwood Deeds of Trust**"), whereby it granted Commerce first-lien security interests in various real and personal property then owned by Thornwood.

6. Specifically, Thornwood provided Commerce with a first-lien security interest in various real and personal property in Travis County, Texas, including but not limited to 9.961 acres of raw land, along with all proceeds from and all personal property attached to the same (the "**Austin Collateral**").

7. Similarly, Thornwood also provided Commerce with a first-lien security interest in various real and personal property located in Dallas County, Texas, including but not limited to real property located at 3838 Teleport, Irving, Texas, along with all proceeds from and all personal property attached to the same (the "**Irving Collateral**").

---

[1] The Note stated that Realco would pay monthly interest payments to Commerce beginning on October 28, 2009, with a $216,292.75 principal payment due on October 28, 2010, and a balloon payment of all outstanding principal remaining on the Note due and payable on October 28, 2011.

8.     Finally, Thornwood provided Commerce with a first-lien security interest in various real and personal property located in Bell County, Texas, including but not limited to 10.692 acres of raw land, along with all proceeds from and all personal property attached to the same (the "**Bell Collateral**").

9.     As additional collateral to secure the promises made in the Note and in the Agreement, TCI Hunters Glen, Inc. ("Hunters Glen"), another affiliate of Realco, provided Commerce with a deed of trust (the "Hunters Glen Deed of Trust"), granting it a second lien in real and personal property known as the Bridgewood Ranch Apartments, along with all proceeds generated by the same, and all other real and personal property associated with the same, located in Kaufman, Texas (the "**Kaufman Collateral**").

B.     **Realco's Default, Foreclosure on the Properties, and FRE's Bankruptcy Filing**

10.    Realco defaulted on its October, 2010 payment, and Commerce determined it would enforce its contractual remedies against the Austin, Irving, and Kaufman Properties. On or about December 13, 2010, Commerce's counsel sent Realco, Thornwood, and other entities—including the ultimate parent of FRE—its Notice of Default, Notice of Foreclosure Posting, and Notification of Disposition of Collateral (the "**Notices**"), alerting those parties that Commerce planned to foreclose on the Thornwood and Hunters Glen Deeds of Trust. Commerce posted the Austin, Irving, and Kaufman Properties for a January 4, 2011 foreclosure.

11.    On January 4, 2011, Commerce foreclosed on the Thornwood and Hunters Glen Deeds of Trust, and took ownership, via foreclosure deed, of the Austin, Irving and Kaufman Properties. Only after all foreclosure proceedings had been concluded did Commerce receive

notice[2] that FRE had filed for bankruptcy, and that the Austin, Irving, Kaufman, and Bell County Properties had been "purchased" by FRE immediately prior to bankruptcy.

12. From information gathered by Commerce since January 4, and upon information and belief, Thornwood and Hunters Glen both "sold" their interests in the Austin, Irving, Bell, and Kaufman Properties to Fenton Real Estate, Inc. ("**Fenton**") on or about December 23, 2010. Fenton changed its name to FRE on or about December 30, 2010, and filed for bankruptcy protection on January 4, 2011. From discussions with other creditors and parties-in-interest in this case, it appears that the ultimate parent company of FRE has attempted a "roll up" of a significant number of distressed parcels of real estate by having affiliated companies[3] "sell" these assets to FRE immediately prior to its bankruptcy filing. In this way, it appears that FRE is seeking their effective substantive consolidation in one pending bankruptcy case. While FRE has yet to file its schedules, it appears from statements made on the record by the Debtor that approximately one dozen lenders were affected by this bankruptcy filing, when well over thirty (30) properties constituting those lenders collateral were allegedly "sold" to FRE.

## Relief Requested

13. The allegations contained in paragraphs 1 through 11 are incorporated herein by reference. Commerce also specifically adopts and incorporates herein by reference the allegations and legal arguments contained in Wells Fargo's Motion, to the extent applicable here. This Joinder is filed in the alternative to Commerce's Motion Seeking to Annul or, Alternatively,

---

[2] Through a phone call by Mr. Jay LaJone to Mr. Rick Hightower—Commerce's real estate counsel that conducted the foreclosures in question.

[3] From statements made on the record, Commerce believes that approximately nineteen (19) affiliated entities allegedly "sold" property to FRE immediately prior to its bankruptcy filing.

Seeking Relief From, the Automatic Stay Under 11 U.S.C. § 362 (the "**Motion to Annul**"), filed of record with this Court on January 25, 2011.

14. Based on the allegations seen above, Commerce asserts that FRE's bankruptcy filing was made in bad faith under the Fifth Circuit's standards in *Little Creek*. In *Little Creek*, the Fifth Circuit adopted a set of non-exclusive factors it found determinative of a bad-faith bankruptcy filing. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986). These factors include the Court determining (1) whether the debtor has one asset, such as a tract of undeveloped property, (2) whether there are any employees, except for the principals, (3) whether there is any cash flow or other sources of income to sustain a plan or make adequate protection payments, (4) the number of unsecured creditors, and the size of their claims, (5) whether the property in question has been posted for foreclosures because of debt arrearages, (6) whether the debtor and one creditor may have proceeded to a stand-still in state court, (7) whether the debtor has lost in state court litigation, and is therefore required to post a bond in order to appeal, (8) whether bankruptcy offers the only hope of forestalling the debtor's loss of the property, (9) whether there are allegations of wrongdoing by the debtor, and (10) whether an entity has been created or "revitalized" on the eve of foreclosure to hold the debtor's asset or assets. *Id.*

15. The facts surrounding FRE's bankruptcy filing show that many of these tests are met, and that its bankruptcy was filed in bad faith. Specifically, other than its principals, FRE has few to no employees, with almost all work with and on the properties in question being conducted by a "related" management company. Much of the property held by the Debtor has no cash flow, and would therefore not be susceptible to reorganization if it was not "rolled up"

with separate income-producing property in an effective substantive consolidation.[4] The claims of unsecured creditors are relatively small in this case—approximately 1%-2% of the secured debt—and may turn out to be comprised in large part of trade creditors that simply were caught in the monthly billing queue at the time of the bankruptcy filing. Finally, most, if not all of the Debtor's property was posted for foreclosure immediately pre-petition in a "revitalized" entity which eventually became FRE. Clearly, these factors, along with those stated in the Motion to which Commerce joins, strongly indicate that FRE's bankruptcy was filed in bad faith, and that its case should be dismissed, or in the alternative, should be converted.

16. Additionally, Commerce specifically agrees to the hearing / ruling timeline set forth by this Court for a determination on the merits of the Motion, and hereby waives all right to have its joinder heard at any time, other than that previously set by the Court for the Motion.

WHEREFORE, PREMISES CONSIDERED, Commerce respectfully requests that this Court (1) dismiss this bankruptcy case, or (2) in the alternative, convert this bankruptcy case to one under Chapter 7 of the Bankruptcy Code. Additionally, and regardless of whether this Court chooses to dismiss or convert this bankruptcy case, Commerce requests that (1) this Court lift the automatic stay so that Commerce may exercise any remedies it may have under state law, including but not limited to the appointment of a receiver to gather and account for Commerce's cash collateral, and (2) it be granted any further relief to which it may be entitled.

Submitted this 26th day of January, 2011.

/s/ Andrew E. Jillson

---

[4] Indeed, without the alleged conveyance of many of the properties immediately prior to bankruptcy, any bankruptcy filing would have been considered a "single asset real estate" case, and would have required the entity holding such property to comply with Section 362(d)(3) of the Bankruptcy Code—including the payment of interest to creditors, or the filing of a plan within ninety (90) days of the petition date.

Andrew E. Jillson
Texas State Bar No. 10666370
Cameron W. Kinvig
Texas State Bar No. 24055780
Hunton & Williams LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: 214-979-3000
Telecopy: 214-979-3963

**ATTORNEYS FOR AMERICAN BANK OF COMMERCE**

## Certificate of Conference

The undersigned hereby certifies that he discussed the substance of this motion with counsel for FRE on January 20, and that the parties could not reach an agreement as to the relief requested herein at that time.

/s/ Cameron W. Kinvig
Cameron W. Kinvig

## Certificate of Service

The undersigned hereby certifies that the foregoing motion was served on all parties-in-interest requesting notice via this Court's ECF electronic filing system. To the extent that a party-in-interest requesting notice does not receive the same via this Court's ECF system, the same will be provided via U.S. Mail, First Class, facsimile, and/or e-mail.

/s/ Cameron W. Kinvig
Cameron W. Kinvig