# EXHIBIT B

DRAFT

Michael D. Warner, Esq. (TX Bar No. 00792304)
Emily S. Chou, Esq. (TX Bar No. 24006997)
**COLE, SCHOTZ, MEISEL, FORMAN &**
**LEONARD, P.A.**
301 Commerce Street, Suite 1700
Fort Worth, Texas 76102
817-810-5250
817-810-5255 Facsimile
mwarner@coleschotz.com

COUNSEL FOR HIGHLAND CAPITAL MANAGEMENT, L.P., AS SPECIAL SERVICER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE:<br><br>FRE REAL ESTATE, INC.,<br><br>        DEBTOR. | CASE NO. 11-30210-BJH<br><br>CHAPTER 11 |

## ORIGINAL CHAPTER 11 PLAN OF ORDERLY LIQUIDATION
## PROPOSED BY HIGHLAND CAPITAL MANAGEMENT, L.P.

DRAFT

Highland Capital Management, L.P. ("HCMLP"), in its capacity as the Special Servicer for that certain indebtedness evidenced by: (1) that certain Loan Agreement dated January 19, 2007 (as amended, restated, replaced or supplemented, the "Loan Agreement") between TCI Park West II, Inc., a Nevada corporation (the "Borrower") and NexBank SSB, as Agent for itself and other participating lenders (the "Lenders"); and (2) that certain Promissory Note (as amended, restated, replaced or supplemented, the "Note") dated January 19, 2007, in the original principal amount of $62,000,000, executed by the Borrower for the benefit of the Lenders, proposes the following Original Chapter 11 Plan of Orderly Liquidation pursuant to Chapter 11 of the Bankruptcy Code ("Plan").[1]

## ARTICLE I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

Definitions.  As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.1    Access means Access 1st Capital, a creditor and party-in-interest in the Chapter 11 Case.

1.2    Access Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to Access that forms the basis of Access' Secured Claim and its liens on the FRE/Access Properties.

1.3    Administrative Bar Date means (i) any date set by Order of the Bankruptcy Court by which a Proof of Administrative Expense Claim must be filed, or (ii) if no such date is set, the first Business Day that is 10 calendar days after the Effective Date.

---

[1] Capitalized terms used herein shall have the meaning ascribed to them in Article I of the Plan.

DRAFT

1.4    <u>Administrative Expense Claim</u> means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, any actual and necessary costs and expenses of preserving the Estate, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate under Section 1930 of Chapter 123 of Title 28 of the United States Code, to the extent any such Claim was incurred, accrued, or arose during the period from and after the Commencement Date through the Effective Date.

1.5    <u>Allowed</u> means, with reference to any Claim or Equity Security Interest, any Claim or Equity Security Interest, proof of which was timely and properly filed or, if no proof of Claim or Equity Security Interest was filed, which has been or hereafter is listed by the Debtor in its Schedules, if any, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and, in each case, as to which: (A) no objection to allowance has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (B) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.6    <u>American Bank</u> means American Bank of Commerce, a creditor and party-in-interest in the Chapter 11 Case.

1.7    <u>American Bank Loan Documents</u> means any and all documents evidencing the indebtedness owed by the Debtor to American Bank that forms the basis of American Bank's Secured Claim and its liens on the FRE/American Bank Properties.

3

DRAFT

1.8    Armed Forces Bank means Armed Forces Bank, N.A., a creditor and party-in-interest in the Chapter 11 Case.

1.9    Armed Forces Bank Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to Armed Forces Bank that forms the basis of Armed Forces Bank's Secured Claim and its liens on the FRE/Armed Forces Properties.

1.10    Bankruptcy Code means Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.11    Bankruptcy Court means the United States Bankruptcy Court for the Northern District of Texas, having jurisdiction over the Chapter 11 Case, or if such Court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Northern District of Texas.

1.12    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, and any Local Rules of the Bankruptcy Court, as amended from time to time, and as applicable to the Chapter 11 Case.

1.13    Bar Date means _____, 2011, the date fixed by the Bankruptcy Court pursuant to the Bar Date Notice for a Holder of a Claim or Equity Security Interest (other than a Governmental Unit) to file a proof of Claim or Interest, as the case may be.

1.14    Business Day means any day other than a Saturday, Sunday or any other day on which commercial banks in Dallas, Texas are required or authorized to close by law or executive order.

1.15    Cash means legal tender of the United States of America and equivalents thereof.

4

# DRAFT

1.16   Causes of Action means all Claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Bankruptcy Code or other federal or state law, including, without limitation, any causes of action arising under Article 5 of the Bankruptcy Code.

1.17   Chapter 11 Case means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor, styled *In re FRE Real Estate, Inc.,* bearing Case No. 11-30210-BJH, currently pending in the Bankruptcy Court.

1.18   Claim shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.19   Claims Register means the document generated by the Bankruptcy Court which reflects the proofs of Claim filed by Holders of Claims and proofs of Interest filed by Holders of Equity Security Interests.

1.20   Class means any group of substantially similar Claims or Equity Security Interests classified by the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.

1.21   Clerk means the Clerk of the Bankruptcy Court.

1.22   Confirmation means the act of entry by the Bankruptcy Court of the Confirmation Order on the Docket.

1.23   Commencement Date means January 4, 2011, the date on which the Debtor commenced the Chapter 11 Case.

1.24   Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Docket.

1.25   Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

76332/0022-7302500v7

DRAFT

1.26   Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.27   Credit Bid means the right of the Holder of a Lien against a Property to bid at a Sale of such Property by offsetting the full amount of its Secured Claim or a portion thereof pursuant to Section 363(k) of the Bankruptcy Code.

1.28   Creditor means any Person that is the Holder of a Claim against the Debtor.

1.29   Debtor means FRE Real Estate, Inc., the debtor and debtor in possession in the Chapter 11 Case.

1.30   Debtor in Possession means the Debtor in its capacity as a debtor in possession in the Chapter 11 Case pursuant to Sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

1.31   Disbursing Agent means the person appointed pursuant to Article VI of the Plan.

1.32   Disclosure Statement means the Disclosure Statement relating to the Plan including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.33   Disputed means any Claim which is listed on the Schedules as disputed, contingent or unliquidated, or which is objected to in whole or in part in accordance with Article VII of the Plan.

1.34   Distribution means any distribution of Net Sale Proceeds to the Holders of Allowed Claims and Holders of Allowed Equity Security Interests.

1.35   Docket means the docket in the Chapter 11 Case maintained by the Clerk.

1.36   Effective Date means the date on which this Plan shall take effect, which date shall not be more than five (5) Business Days after the conditions specified in Article XI of the Plan have been satisfied or waived.

# DRAFT

1.37   Entity means an entity as defined in Section 101(15) of the Bankruptcy Code.

1.38   Estate means the estate created upon the commencement of the Chapter 11 Case by the Debtor pursuant to Section 541 of the Bankruptcy Code.

1.39   Equity Security Interest means a Holder of an equity security as the term is defined in Section 101(16) of the Bankruptcy Code.

1.40   Face Amount means (A) with respect to any Claim or Equity Security Interest, proof of which is Filed, an amount equal to: (i) the liquidated amount, if any, set forth therein; and/or (ii) any other amount estimated by the Bankruptcy Court in accordance with Section 502(c) of the Bankruptcy Code and the relevant provisions of the Plan; or (B) if no proof of Claim is Filed and such Claim is scheduled in the Debtor's Schedules, the amount of the Claim scheduled as undisputed, noncontingent and liquidated.

1.41   Fee Application means an application by a Professional for a Fee Claim.

1.42   Fee Claim means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered from the Commencement Date through and including the Effective Date.

1.43   File, Filed, or Filing means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Case.

1.44   Final Order means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending.

7

# DRAFT

1.45   <u>First Bank</u> means First Bank & Trust, a creditor and party-in-interest in the Chapter 11 Case.

1.46   <u>First Bank Loan Documents</u> means any and all documents evidencing the indebtedness owed by the Debtor to First Bank that forms the basis of First Bank's Secured Claim and its liens on the FRE/First Bank Properties.

1.47   <u>FRE</u> means the Debtor.

1.48   <u>FRE/Access Properties</u> means the various real properties owned by FRE, on which Access holds a secured lien.

1.49   <u>FRE/American Bank Properties</u> means the various real properties owned by FRE, on which American Bank holds a secured lien.

1.50   <u>FRE/Armed Forces Properties</u> means the various real properties owned by FRE, on which Armed Forces Bank holds a secured lien.

1.51   <u>FRE/First Bank Properties</u> means the various real properties owned by FRE, on which First Bank holds a secured lien.

1.52   <u>FRE/HCMLP Properties</u> means the various real properties owned by FRE, on which NexBank as Agent, Keycorp Real Estate Capital Markets, Inc. and/or HCMLP, as Special Servicer for NexBank, on behalf of the Lenders, holds a secured lien.

1.53   <u>FRE/Petra Properties</u> means the various real properties owned by FRE, on which Petra holds a secured lien.

1.54   <u>FRE/Propel Properties</u> means the various real properties owned by FRE, on which Propel holds a secured lien.

1.55   <u>FRE/Regions Properties</u> means the various real properties owned by FRE, on which Regions holds a secured lien.

8

DRAFT

1.56    FRE/RMR Properties means the various real properties owned by FRE, on which RMR holds a secured lien.

1.57    FRE/State Bank Properties means the various real properties owned by FRE, on which State Bank holds a secured lien.

1.58    FRE/U.S. Bank Properties means the various real properties owned by FRE, on which U.S. Bank holds a secured lien.

1.59    FRE/Weatherford Properties means the various real properties owned by FRE, on which Weatherford holds a secured lien.

1.60    FRE/Wells Fargo Properties means the various real properties owned by FRE, on which Wells Fargo holds a secured lien.

1.61    Governmental Unit shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

1.62    HCMLP means Highland Capital Management, L.P., in its capacity as the Special Servicer for that certain indebtedness evidenced by: (1) that certain Loan Agreement dated January 19, 2007 (as amended, restated, replaced or supplemented) between TCI Park West II, Inc., a Nevada corporation (the "Borrower") and NexBank SSB, as Agent for itself and other participating lenders (the "Lenders"); and (2) that certain Promissory Note (as amended, restated, replaced or supplemented) dated January 19, 2007, in the original principal amount of $62,000,000, executed by the Borrower for the benefit of the Lenders.

1.63    HCMLP Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to the Lenders that forms the basis of HCMLP's Secured Claim and the liens on the FRE/HCMLP Properties.

1.64    Holder means the beneficial holder of any Claim or Equity Security Interest.

# DRAFT

1.65    Lien shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.66    Net Sale Proceeds means the Sales Proceeds less (a) reasonable costs of Sale, (b) unpaid Liens on the Properties, if any, as of the date of closings of the Sales, (c) unpaid Allowed Administrative Expense Claims, (d) unpaid statutory fees assessed pursuant to 28 U.S.C. § 1930(a)(6), and (e) reasonable fees and expenses incurred by the Disbursing Agent after the Effective Date.

1.67    Order means an order or judgment of the Bankruptcy Court as entered on the Docket.

1.68    Person shall have the meaning set forth in Section 101(41) of the Bankruptcy Code.

1.69    Petra means Petra CRE CDO 2007-1, Ltd., a creditor and party-in-interest in the Chapter 11 Case.

1.70    Petra Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to Petra that forms the basis of Petra's Secured Claim and its liens on the FRE/Petra Properties.

1.71    Plan means this Original Chapter 11 Plan of Orderly Liquidation including, without limitation, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time.

1.72    Plan Proponent means HCMLP.

1.73    Propel means Propel Financial Services, a creditor and party-in-interest in the Chapter 11 Case.

76332/0022-7302500v7

DRAFT

1.74  <u>Propel Loan Documents</u> means any and all documents evidencing the indebtedness owed by the Debtor to Propel that forms the basis of Propel's Secured Claim and its liens on the FRE/Propel Properties.

1.75  <u>Properties</u> means, collectively, the FRE/Access Properties, FRE/American Bank Properties, FRE/Armed Forces Properties, FRE/First Bank Properties, FRE/HCMLP Properties, FRE/Petra Properties, FRE/Propel Properties, FRE/Regions Properties, FRE/RMR Properties, FRE/State Bank Properties, FRE/U.S. Bank Properties, FRE/Weatherford Properties, and FRE/Wells Fargo Properties (each individually, a "Property"), including all fixtures, improvements, licenses, permits and approvals relating thereto.

1.76  <u>Pro Rata, Ratable or Ratable Share</u> means a number (expressed as a percentage) equal to the proportion that an Allowed Claim, together with interest, if applicable, in a particular Class bears to the aggregate amount or number of: (A) Allowed Claims plus (B) Disputed Claims (in the aggregate Face Amount) in such Class as of the date of determination.

1.77  <u>Professional</u> means (A) any professional employed in the Chapter 11 Case pursuant to Section 327 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court and (B) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.78  <u>Professional Compensation and Reimbursement Claim</u> means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Commencement Date and prior to and including the Effective Date.

1.79  <u>Quarter</u> means the period beginning on the Effective Date and ending on the next of March 31, June 30, September 30, and December 31 and each three month period thereafter.

11

# DRAFT

1.80    Record Date means the day that is five (5) Business Days from and after the Confirmation Date.

1.81    Regions means Regions Bank, a creditor and party-in-interest in the Chapter 11 Case.

1.82    Regions Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to Regions that forms the basis of Regions' Secured Claim and its liens on the FRE/Regions Properties.

1.83    RMR means RMR Investments, Inc., a creditor and party-in-interest in the Chapter 11 Case.

1.84    RMR Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to RMR that forms the basis of RMR's Secured Claim and its liens on the FRE/RMR Properties.

1.85    Sales means the sales of the Properties pursuant to the Plan (each sale of an individual Property, a "Sale").

1.86    Sales Proceeds means the proceeds received from the Sales.

1.87    Schedules means the schedules of assets and liabilities, the list of Holders of Equity Security Interest and the statements of financial affairs, if any, Filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

1.88    Secured Claim means any Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest, which has been properly perfected as required by applicable law, but only to the extent of the value of the Debtor's interest in such property as determined pursuant to Section 506 of the Bankruptcy Code.

12

# DRAFT

1.89   State Bank means State Bank of Texas, a creditor and party-in-interest in the Chapter 11 Case.

1.90   State Bank Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to State Bank that forms the basis of State Bank's Secured Claim and its liens on the FRE/State Bank Properties.

1.91   U.S. Bank means U.S. Bank, National Association, a creditor and party-in-interest in the Chapter 11 Case.

1.92   U.S. Bank Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to U.S. Bank that forms the basis of U.S. Bank's Secured Claim and its liens on the FRE/U.S. Bank Properties.

1.93   Unsecured Claim means any Claim against the Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Commencement Date and that is not an Administrative Expense Claim or Priority Tax Claim.

1.94   Weatherford means The Bank of Weatherford & First Bank & Trust Co., a creditor and party-in-interest in the Chapter 11 Case.

1.95   Weatherford Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to Weatherford that forms the basis of Weatherford's Secured Claim and its liens on the FRE/Weatherford Properties.

1.96   Wells Fargo means Wells Fargo Capital Finance, Inc., a creditor and party-in-interest in the Chapter 11 Case.

1.97   Wells Fargo Loan Documents means any and all documents evidencing the indebtedness owed by the Debtor to Wells Fargo that forms the basis of Wells Fargo's Secured Claim and its liens on the FRE/Wells Fargo Properties.

# DRAFT

1.98    Interpretation; Application of Definitions and Rules of Construction.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to the Plan.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II.

## TREATMENT OF UNCLASSIFIED CLAIMS

2.1    Administrative Bar Date.  Requests for payment of Administrative Expense Claims other than Professional Compensation and Reimbursement Claims must be filed no later than the Administrative Bar Date.  Holders of Administrative Expense Claims that do not file requests for the allowance and payment thereof on or before the Administrative Bar Date shall be forever barred from asserting such Administrative Expense Claims against the Debtor or its Properties.

2.2    Administrative Expense Claims.  Except to the extent that any entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim, to be paid from the Sales Proceeds resulting from

14

DRAFT

the Sale of each Sale Property (as defined hereinafter), by each Holder of a Lien on each such Sale Property as its Pro Rata share of such Allowed Administrative Expense Claim (based on the price paid in such Sale), on the later of: (A) seven (7) Business Days after the closing of each Sale; and (B) seven (7) Business Days after the entry of a Final Order Allowing such Administrative Expense Claim, or as soon thereafter as is practicable.

2.3     Professional Compensation and Reimbursement Claims.   Any Person seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code: (A) shall file its respective final Fee Application for services rendered and reimbursement of expenses incurred through the Effective Date no later than sixty (60) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court and, (B) if granted such an award by the Bankruptcy Court, shall be paid in full in such amounts as are Allowed by the Bankruptcy Court, from the Sales Proceeds resulting from the Sale of each Sale Property, by each Holder of a Lien on each such Sale Property as its Pro Rata share of such Allowed Administrative Expense Claim (based on the price paid in such Sale), on the later of: (i) seven (7) Business Days after the closing on each Sale; and (ii) seven (7) Business Days after such Professional Compensation and Reimbursement Claim becomes an Allowed Professional Compensation and Reimbursement Claim, or as soon thereafter as is practicable.   Failure to file a final Fee Application timely shall result in the Fee Claim being forever barred and discharged.

2.4     Priority Tax Claims.   Priority Tax Claims are not classified pursuant to Section 1123(a)(1) of the Bankruptcy Code.   Each Holder of an Allowed Priority Tax Claim shall receive on account of such Claim Cash equal to the Allowed amount of such Claims from the Sales

15

# DRAFT

Proceeds resulting from the Sale of each Sale Property, from each Holder of a Lien on each such Sale Property as its Pro Rata share of such Priority Tax Claim (based on the price paid in such Sale), seven (7) Business days after the closing of each Sale, or upon such other terms as may be agreed to between each such Holder and the Disbursing Agent or as may be ordered by the Bankruptcy Court.

2.5    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of the title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash equal to the amount of such fees from the Sales Proceeds resulting from the Sale of each Sale Property, from each Holder of a Lien on each such Sale Property as its Pro Rata share of such statutory fees (based on the price paid in such Sale), seven (7) Business Days after the closing on each Sale.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

All Claims are classified as follows:

3.1    A Claim is in a particular Class only to the extent the Claim qualifies within the description of Claims of that Class, and only to the extent that it is an Allowed Claim, and such Claim is in a different Class to the extent the remainder of the Claim qualifies within the description of the different Class.  Pursuant to Section 1123(a)(4) of the Bankruptcy Code, all Allowed Claims of a particular Class shall receive the same treatment unless the holder of a particular Allowed Claim has agreed to a less favorable treatment for such Allowed Claim on or before the Confirmation Date.  All Claims shall be bound by the provisions of this Plan and are hereby classified as follows:

3.2    <u>Class 1 Claims</u>.  Class 1 consists of Allowed Priority Non-Tax Claims.

16

# DRAFT

3.3    <u>Class 2 Claims</u>.    Class 2 consists of the Holders of Secured Claims against the

Debtor's various Properties.

(A)    Class 2(A) consists of Access' Secured Claim against the FRE/Access

Properties.

(B)    Class 2(B) consists of American Bank's Secured Claim against the

FRE/American Bank Properties.

(C)    Class 2(C) consists of Armed Forces' Secured Claim against the

FRE/Armed Forces Properties.

(D)    Class 2(D) consists of First Bank's Secured Claim against the FRE/First

Bank Properties.

(E)    Class 2(E) consists of HCMLP's Secured Claim against the FRE/HCMLP

Properties.

(F)    Class 2(F) consists of Petra's Secured Claim against the FRE/Petra

Properties.

(G)    Class 2(G) consists of Propel's Secured Claim against the FRE/Propel

Properties.

(H)    Class 2(H) consists of Regions' Secured Claim against the FRE/Regions

Properties.

(I)    Class 2(I) consists of RMR's Secured Claim against the FRE/RMR

Properties.

(J)    Class 2(J) consists of State Bank's Secured Claim against the FRE/State

Bank Properties.

76332/0022-7302500v7

DRAFT

(K)   Class 2(K) consists of U.S. Bank's Secured Claim against the FRE/U.S. Bank Properties.

(L)   Class 2(L) consists of Weatherford's Secured Claim against the FRE/Weatherford Properties.

(M)   Class 2(M) consists of Wells Fargo's Secured Claim against the FRE/Wells Fargo Properties.

3.4   <u>Class 3 Claims</u>.  Class 3 consists of Allowed General Unsecured Claims.

3.5   <u>Class 4 Claims</u>.  Class 4 consists of the interests of the Holders of Equity Security Interests in the Debtor.

## ARTICLE IV.

## IMPAIRMENT OF CLAIMS

4.1   In the event of any controversy regarding the impaired or unimpaired status of the Holder of any Claim or Interest, the Bankruptcy Court shall determine whether an Allowed Claim or a Class of Claims is impaired or unimpaired.

4.2   <u>Unimpaired Classes</u>.  Because the Plan does not alter the legal, equitable, and contractual rights of the Holders of Claims in Class 1, the Holders of such Claims are unimpaired and are not entitled to vote to accept or reject the Plan.

4.3   <u>Impaired Classes</u>.  Holders of Claims in Classes 2 and 3, and Interests in Class 4, are impaired and are entitled to vote to accept or reject the Plan.

## ARTICLE V.

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

5.1   Holders of Allowed Class 1 Priority Non-Tax Claims shall be paid in full the Allowed amount of such Claims from the Sale Proceeds resulting from the Sale of each Sale

DRAFT

Property, from each Holder of a Lien on each such Sale Property as its Pro Rata share of such Class 1 Claim (based on the price paid in such Sale), seven (7) Business Days after the closing on each Sale, or upon such other terms as may be agreed to between such Holder and the Plan Proponent or as ordered by the Bankruptcy Court.

5.2    Each Holder of an Allowed Class 2 Claim shall retain its liens, claims, and interests against the Properties that secure its Claim and shall, no later than five (5) Business Days prior to the Confirmation Hearing, File with the Clerk a notice of its election (an "Election Notice") to either (a) have those Properties (the "Sale Properties," and each individually, a "Sale Property") sold by the Disbursing Agent pursuant to the Plan (the "Sale Option") or (b) opt out of the Sale process and restructure its debt pursuant to a written agreement with the Debtor, in full satisfaction of its Class 2 Claim (the "Restructuring Option"). If a Class 2 Creditor elects the Sale Option, it shall receive all rents, profits, and proceeds from the Properties securing its Claim until the earlier of (i) the satisfaction of that Creditor's Class 2 Claim (which shall include all interest, penalties, costs, attorneys' fees, real estate taxes and other municipal charges, operating expenses, insurance premiums, and/or other expenses that such Creditor may pay in connection with such Properties and as may be allowed pursuant to the Creditor's respective Loan Documents), and (ii) the Sale of such Properties, as described hereunder. In addition, each Class 2 Creditor shall receive, on account of its Class 2 Claim, (i) the proceeds remaining from the Sale of the Properties securing its Claim after payment of all claims secured by the Liens on such Properties that are prior to such Creditor's Lien, if any. If a Class 2 Creditor elects the Restructuring Option, it shall, simultaneous with the Filing of its Election Notice, File a copy of its written, fully-executed agreement with the Debtor to restructure such Creditor's debt. The terms of such Agreement, when Filed, shall be deemed to be incorporated in the Plan.

19

DRAFT

5.3     Except to the extent that the Holder, as of the Record Date, of an Allowed Unsecured Claim agrees to less favorable treatment, each such Holder with an Allowed Claim in Class 3 shall receive its *pro rata* share of the Net Sale Proceeds, if any, remaining after (i) the Holder of a Class 2 Secured Claim against a particular Property has had its Secured Claim against that Property paid in full, and (ii) the Holders of Class 3 Claims against a particular Property have had their Claims paid in full with interest at a rate of ____%.

5.4     Holders of Equity Security Interests in the Debtor shall retain their Class 4 Interests and receive the funds remaining in the Estate, if any, after payment to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Class 3 Claims (as such Class 3 Claims are paid pursuant to Article 5.5 of the Plan).

5.5     <u>Modification of Treatment of Claims and Equity Security Interest</u>.   The Plan Proponent reserves the right to modify the treatment of any Allowed Claim or Equity Security Interest in any manner adverse only to the Holder of such Claim or Equity Security Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Equity Security Interest whose Allowed Claim or Equity Security Interest, as the case may be, is being adversely affected.

## ARTICLE VI.

## PROVISIONS REGARDING THE DISBURSING AGENT

6.1     <u>Appointment of the Disbursing Agent</u>.   Subject to Bankruptcy Court approval, _____ shall be designated Disbursing Agent to carry out the provisions of the Plan.  The Disbursing Agent shall not be required to provide any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

DRAFT

6.2    <u>Rights and Powers of the Disbursing Agent</u>.    Any and all transfers of the Properties, including the execution of all contracts of sale, deeds and other documents necessary to effectuate and consummate the Plan and to make Distributions under the Plan, shall be made by the Disbursing Agent as agent of the Estate consistent with the provisions of the Plan and without the need for further Court order.    The Disbursing Agent shall, in addition to any powers and authority specifically set forth in other provisions of the Plan, be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) establish as necessary disbursements accounts for the deposit and distribution of Sale Proceeds; (iii) make Distributions in accordance with the Plan, (iv) employ and compensate professionals to represent it with respect to its responsibilities, and (v) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

6.3    <u>Post Confirmation Date Expenses of the Disbursing Agent</u>.    The Disbursing Agent shall receive compensation for services rendered in connection with each Sale Property (including, without limitation, taxes, reasonable attorney and professional fees and expenses) pursuant to the Plan at the Disbursing Agent's ordinary and customary hourly rate.    The Disbursing Agent's compensation related to a particular Property shall be payable solely from the Sale Proceeds resulting from the Sale of such Sale Property, seven (7) Business Days after the closing on each Sale; provided, however, that the Disbursing Agent shall File statements of proposed compensation with the Bankruptcy Court ten (10) calendar days before the Disbursing Agent is to be compensated.    If any creditor or party in interest Files an objection to the Disbursing Agent's proposed compensation before the expiration of such ten-day period, the

# DRAFT

Bankruptcy Court shall schedule a hearing to address that objection and the allowance of the Disbursing Agent's proposed compensation. If no objections are Filed before the expiration of such ten-day period, the Disbursing Agent shall be compensated as requested without further Order of the Bankruptcy Court.

6.4    Debtor's Obligation to Cooperate With Disbursing Agent. Immediately upon entry of the Confirmation Order, the Disbursing Agent shall be granted and shall have exclusive title, control, and possession of any Properties for which the Holder of a Secured Lien has elected the Sale Option (the "Sale Properties," and each individually, a "Sale Property"), and the Debtor and its members, officers, agents, representatives, attorneys and Holders of Equity Security Interests shall, without further Order of the Bankruptcy Court, peaceably turn over exclusive possession and control of the Sale Properties to the Disbursing Agent. The Disbursing Agent shall take possession of the Sale Properties on the Confirmation Date for the sole purpose of effectuating and consummating the Plan. The Debtor and its members, officers, agents, representatives, attorneys and Holders of Equity Security Interests shall cooperate with the Disbursing Agent and immediately turn over to the Disbursing Agent any and all of the Debtor's books, records and documents, of which the Disbursing Agent shall have exclusive title, possession, and control immediately upon entry of the Confirmation Order.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

7.1    Timing of Certain Distributions Under the Plan. Subject to the terms of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five business days

22

DRAFT

following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim.

7.2    Method of Payment.  Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

7.3    Objections to and Resolution of Claims.  Subject to the mechanism for objecting to a Creditor's Secured Claim for purposes of submitting a Credit Bid, as established pursuant to Article 8.1(A) of the Plan, the Debtor, Plan Proponent and/or Disbursing Agent shall have the right to file objections to Claims after the Effective Date.  All objections shall be litigated to entry of a Final Order; provided, however, that any proposed compromise, settlement, or resolution of an objection to a Claim is subject to approval by the Bankruptcy Court, which shall retain exclusive jurisdiction to approve such proposed compromise, settlement, or resolution.

7.4    Objection Deadline.  Subject to the mechanism for objecting to a Creditor's Secured Claim for purposes of submitting a Credit Bid, as established pursuant to Article 8.1(A) of the Plan, the Debtor, Plan Proponent, and/or the Disbursing Agent shall file and serve any objection to any Claims no later than sixty (60) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

7.5    No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

7.6    Escrow of Cash Distributions.  On any date that Distributions are to be made under the terms of the Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on

# DRAFT

such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expense Claims pursuant to Sections 503 and 507 of the Bankruptcy Code and (ii) any amount due but not payable on the Effective Date on account of Administrative Expense Claims pursuant to Section 503 and 507 of the Bankruptcy Code).    The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash.  Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

7.7    <u>Distribution After Allowance</u>.  Subject to the terms of the Plan, within the later of 15 days after (A) the entry of a Final Order resolving an objection to a Disputed Claim or (B) the closing on the Sale of a Sale Property, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

7.8    <u>Effect of Disallowance</u>.  If a Disputed Claim or any portion thereof does not become an Allowed Claim, the Disbursing Agent shall distribute the Cash held in trust for the benefit of the Holder of such Disputed Claim in accordance with Articles II and III of the Plan.

7.9    <u>Investment of Segregated Cash and Property</u>.  To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Equity Security Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or

DRAFT

proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

7.10   Delivery of Distributions.   Distributions to Holders of Allowed Claims and Allowed Equity Security Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

7.11   Undeliverable Distributions.

(A)   If the distribution to the Holder of any Claim or Equity Security Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Article 7.12 of the Plan.

(B)   Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to Article 7.12 of the Plan, within 30 days after the end of each Quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash and property that has become deliverable during the Preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

76332/0022-7302500v7

DRAFT

(C)    Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any Holder or an Allowed Claim of an Allowed Equity Security Interest.

7.12    Unclaimed Distributions.  Any Cash or other property to be distributed under the Plan shall revert to the Disbursing Agent if it is not claimed by the Entity (an "Unclaimed Distribution") entitled thereto before the later of (i) three months after the Effective Date or (ii) thirty days after an Order allowing the Claim of that Entity becomes a Final Order, and such Entity's claim shall be deemed to be reduced to zero.  Any Unclaimed Distribution shall be distributed by the Disbursing Agent in accordance with Article 7 of the Plan.

7.13    Set-Off.  The Disbursing Agent may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor or the Disbursing Agent may hold against the holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Plan Proponent or the Disbursing Agent of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Disbursing Agent has or may have against such holder.

## ARTICLE VIII.

## IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN

8.1    Means for Implementation of the Plan.  In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan:

(A)    Sale of Sale Properties.  Immediately upon Confirmation of the Plan, the Disbursing Agent shall have the sole authority, with the assistance of any attorneys, brokers, consultants, or other representatives it employs (the "Disbursing Agent Representatives"), to sell the Sale Properties via auction (the "Sales").  The Sales shall be free and clear of all liens, claims and interests pursuant to Section 363(b) and (f) of the Bankruptcy Code.  The Holder of a Lien

DRAFT

against a Sale Property may Credit Bid at a Sale of such Property pursuant to Section 363(k) of the Bankruptcy Code. Any Creditor or party in interest wishing to object to the right of a Holder of a Lien against a Sale Property to Credit Bid for that property, based on the information contained in such Holder's Filed proof of claim, must, no later than five business days after the Effective Date of the Plan, File a written objection with the Bankruptcy Court and serve it simultaneously on the Holder of the Lien or its counsel of record. Subject to the Bankruptcy Court's calendar, a hearing on any such objection shall be held no later than ten (10) calendar days after such objection has been Filed.

The Disbursing Agent shall have the sole and exclusive authority to determine all relevant details of the Sales, including without limitation, the purchase price and the identity of the purchasers. The Debtor, any of its attorneys and representatives, and any tenants of the Sale Properties, shall fully cooperate with the Disbursing Agent and the Disbursing Agent Representatives in the process of marketing for sale and selling the Sale Properties, and in transferring title and occupancy to the eventual purchasers. Notwithstanding the identity of the record titleholders, the Disbursing Agent, or his agent(s), shall be empowered to and may, at its option, execute any and all documents to effectuate the Sales, as agent for the Debtor, including deeds and all other necessary documents. Such execution by the Disbursing Agent shall be sufficient to convey good and marketable title to the Sale Properties, in lieu of execution by the Debtor.

In addition, beginning on the Effective Date, and continuing through the Distribution Date, any lockbox and/or other arrangements that existed prior to the Commencement Date for the collection and payment of all rents, profits, and proceeds from the tenants of the Sale Properties shall remain in full force and effect.

27

DRAFT

8.2   <u>Restructuring Option</u>.  Upon entry of the Confirmation Order, any written, fully-executed agreement between the Debtor and a Class 2 Creditor that has elected the Restructuring Option, that has been Filed simultaneously with such Creditor's Election Notice, shall be deemed a part of this Plan and shall be binding on all parties to such agreement.

8.3   <u>Exemption from Transfer Taxes</u>.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

## ARTICLE IX.

## DISCHARGE AND RELEASES

9.1   <u>Term of Bankruptcy Injunction or Stays</u>.  All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order or a separate Order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Security Interest in the Debtor, are permanently enjoined, on and after the Confirmation Date, from (A) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Security Interest, (B) the enforcement, attachment, collection or recovery by any

28

DRAFT

manner or means of any judgment, award, decree or Order against the Debtor on account of any

such Claim or Equity Security Interest, (C) creating, perfecting or enforcing any encumbrance of

any kind against the Debtor or against the property or interests in property of the Debtor on

account of any such Claim or Equity Security Interest and (D) asserting any right of setoff,

subrogation or recoupment of any kind against any obligation due from the Debtor or against the

property or interests in property of the Debtor on account of any such Claim or Equity Security

Interest.

9.2    <u>Exculpation</u>.  The Plan Proponent and the Disbursing Agent and their respective

members, partners, officers, directors, employees and agents (including any attorneys or other

Professionals retained by such Persons) shall have no liability to any Holder of any Claim or

Equity Security Interest for any act or omission in connection with, or arising out of the Chapter

11 Case, the Plan, the solicitation of votes for and the pursuit of confirmation of this Plan, the

consummation of this Plan, or the administration of this Plan or the property to be distributed

under this Plan, except for willful misconduct or gross negligence as determined by a Final Order

of the Bankruptcy Court and, in all respects, shall be entitled to rely on the advice of counsel

with respect to their duties and responsibilities under this Plan.

9.3    <u>Release of Plan Proponent</u>.  Except as provided to the contrary in the Plan, in

consideration of the value conferred upon the Estate under this Plan, including the cash proceeds

that will fund Distributions to Creditors and Equity Security Interest Holders, the Plan

Proponent, together with its officers, directors, agents representatives, employees and

professionals, shall, upon the Effective Date of the Plan be forever discharged and released from

any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of

action and liabilities, whether liquidated or unliquidated, fixed or contingent, mature or

DRAFT

unmatured, known or unknown, foreseen or unforeseen, in law or equity asserted or to be asserted by the Debtor, the Estate and Creditors.

9.4   <u>No Release of Guarantors or Other Third Parties</u>.   Nothing in this Plan shall be deemed to release any guarantor or other third party that is obligated to pay a debt owed by the Debtor to a Creditor, and any action to collect payment of any such debt is unaffected by this Plan.

## ARTICLE X.

## CAUSES OF ACTION

10.1   <u>Causes of Action</u>.   Subject to the occurrence of the Effective Date, the Disbursing Agent may, in its sole discretion, pursue any Causes of Action.   The proceeds, if any, from prosecution of the Causes of Action, shall be paid, first, to the extent necessary, to the Holders of Allowed Administrative Expense Claims, if any, on a Pro Rata basis; second, to the extent necessary, to the Holders of Priority Tax Claims, if any, on a Pro Rata basis; third, to the extent necessary, to the Holders of Class 1 Claims, if any, on a Pro Rata basis; fourth, to the extent necessary, to the Holders of Class 3 Claims, if any, on a Pro Rata basis; and fifth, to the extent necessary, to the Holders of Class 4 Interests, on a Pro Rata basis.

## ARTICLE XI.

## CONDITIONS TO THE EFFECTIVE DATE

11.1   <u>Conditions Precedent to the Effective Date</u>.   The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

(A)   The Confirmation Order shall have become a Final Order.

(B)   The Disbursing Agent shall be duly appointed, qualified and acting in that capacity.

76332/0022-7302500v7

DRAFT

11.2   <u>Effect of Failure of Conditions</u>.   If each condition to the Effective Date has not

been satisfied or duly waived within one (1) year after the Confirmation Date, then upon motion

by any party in interest, made before the time that each of the conditions has been satisfied or

duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the

Confirmation Order will be vacated by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that

notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of

the conditions to the Effective Date is either satisfied or duly waived by the Plan Proponent

before the Bankruptcy Court enters a Final Order granting such motion.   If the Confirmation

Order is vacated pursuant to this Section, the Plan shall be deemed null and void in all respects

including, without limitation, the discharge of Claims pursuant to Section 1141 of the

Bankruptcy Code and nothing contained herein shall (A) constitute a waiver or release of any

Claims by or against the Debtor or (B) prejudice in any manner the rights of the Plan Proponent.

11.3   <u>Waiver of Conditions to Confirmation and Effective Date</u>.   Each of the conditions

to the Effective Date may be waived in writing, in whole or in part, by the Plan Proponent,

without notice or an Order of the Bankruptcy Court.   The failure to satisfy or to waive any

condition may be asserted by the Plan Proponent regardless of the circumstances giving rise to

failure of such condition to be satisfied (including any action or inaction by the Plan Proponent).

The failure of the Plan Proponent to exercise any of the foregoing rights will not be deemed a

waiver of any other rights, and each such right will be deemed an ongoing right that may be

asserted at any time.

76332/0022-7302500v7

DRAFT

## ARTICLE XII.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(A)    To issue Orders pursuant to Section 363(b) of the Bankruptcy Code authorizing the sale of the Property and approving related bidding procedures;

(B)    To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(C)    To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(D)    To issue such Orders in aid of execution and consummation of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(E)    To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(F)    To hear and determine all Fee Applications;

(G)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(H)    To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(I)    To hear any other matter not inconsistent with the Bankruptcy Code;

(J)    To enter a final decree closing the Chapter 11 Case;

DRAFT

(K)     To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(L)     To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(M)     To issue any orders necessary to convey good and marketable title in and to the Sale Properties to the Disbursing Agent;

(N)     To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

(O)     To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement, including the Plan Documents;

(P)     To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

(Q)     To resolve disputes concerning any reserves with respect to Disputed Claims, Disputed Equity Security Interest or the administration thereof; and

(R)     To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the Claims Bar Date, the hearing on the approval of the

DRAFT

Disclosure Statement as containing adequate information, the hearing on the confirmation of the

Plan for the purpose of determining whether a Claim, or Equity Security Interest is discharged

hereunder or for any other purpose.

## ARTICLE XIII.

### MISCELLANEOUS PROVISIONS

13.1    <u>Amendment or Modification of the Plan</u>.    Alterations, amendments or

modifications of the Plan may be proposed in writing by the Plan Proponent, at any time before

the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the

conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponent shall have

complied with Section 1125 of the Bankruptcy Code.

13.2    <u>Severability</u>.    In the event that the Bankruptcy Court determines, before the

Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such

provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such

Claims or Equity Security Interest as to which the provision is determined to be invalid, void or

unenforceable.    The invalidity, voidability or unenforceability of any such provision shall in no

way limit or affect the enforceability and operative effect of any other provision of the Plan.

13.3    <u>Revocation or Withdrawal of the Plan</u>.    The Plan Proponent reserves the right to

revoke or withdraw the Plan before the Confirmation Date.    If the Plan Proponent revokes or

withdraws the Plan before the Confirmation Date, then the Plan shall be deemed null and void.

In such event, nothing contained herein shall constitute or be deemed a waiver or release of any

Claims by or against the Debtor, the Plan Proponent or Disbursing Agent or to prejudice in any

manner the rights of either of the Debtor, the Plan Proponent or Disbursing Agent in any further

proceedings involving the Debtor.

76332/0022-7302500v7

DRAFT

13.4   <u>Binding Effect</u>.  The Plan shall be binding upon and inure to the benefit of the

Debtor, the Plan Proponent, the Holders of Claims, and Equity Security Interest, and their

respective successors and assigns.

13.5   <u>Notices</u>.  All notices, requests and demands to or upon the Plan Proponent to be

effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to

have been duly given or made when actually delivered or, in the case of notice by facsimile

transmission, when received and telephonically confirmed, addressed as follows:

> Highland Capital Management, L.P.
> c/o Michael D. Warner, Esq.
> Cole, Schotz, Meisel, Forman & Leonard, P.A.
> 301 Commerce Street, Suite 1700
> Fort Worth, Texas 76102
> (817) 810-5250
> (817) 810-5255 (Facsimile)

13.6   <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or

other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the

rights and obligations arising under the Plan shall be governed by, and construed and enforced in

accordance with, the laws of the State of Texas, without giving effect to the principles of

conflicts of law of such jurisdiction.

13.7   <u>Withholding and Reporting Requirements</u>.  In connection with the consummation

of the Plan, the Plan Proponent and Disbursing Agent shall comply with all withholding and

reporting requirements imposed by any federal, state, local or foreign taxing authority and all

distributions hereunder shall be subject to any such withholding and reporting requirements.

13.8   <u>Allocation of Plan Distributions Between Principal and Interest</u>.  To the extent

that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and

accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount

DRAFT

of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

13.9   Headings.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

13.10   Exhibits/Schedules.  All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

13.11   Filing of Additional Documents.  On or before substantial consummation of the Plan, the Plan Proponent shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.12   No Admissions.   Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

13.13   Successors and Assigns.  The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

13.14   Reservation of Rights.  Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Plan Proponent with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Plan Proponent with respect to the Debtor, Holders of Claims or Equity Security Interest before the Effective Date.

DRAFT

13.15  <u>Implementation</u>.   The Plan Proponent shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Plan.

13.16  <u>Inconsistency</u>.  In the event of any inconsistency among the Plan, the Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

13.17  <u>Compromise of Controversies</u>.   Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate and all Holders of Claims and Equity Security Interest against the Debtor.

Dated: January __, 2011

                                          HIGHLAND CAPITAL MANAGEMENT, L.P.


                                          _____
                                          BY:

76332/0022-7302500v7