# Exhibit B

After Recording
Please Return To:
Dena Cromer
Jefferson Heritage Bank
P.O. Box 69
Denton, Texas 76202-0069

AFTER RECORDING, RETURN TO:
JAMES P. LAZAR, P.C.
6949 SHERRY LANE, SUITE 111
DALLAS, TX 75225

1238021

12/27/00
Deed of Trust     2447782     152.00

## DEED OF TRUST
### (With Security Agreement and Assignment of Rents)

STATE OF TEXAS    §

COUNTY OF DALLAS    §

This DEED OF TRUST (With Security Agreement And Assignment Of Rents) (herein referred to as the "Deed of Trust"), entered into as of the 19ᵗʰ day of December, 2000, by Westgrove Air Plaza, Ltd., a Texas limited partnership, as Grantor, whose mailing address for notice hereunder is 5910 N. Central Expressway, Suite 350, Dallas, Texas 75206, to BRYAN SANDLIN or RAY ROBERTS, Trustee, whose address is P.O. Box 69 Denton, Texas 76202-0069, for the benefit of the hereinafter described Beneficiary.

### W I T N E S S E T H:

### ARTICLE I

### DEFINITIONS

1.1    **Definitions** As used herein, the following terms shall have the following meanings:

**Beneficiary:** Jefferson Heritage Bank, whose address for notice hereunder is P.O. Box 69 Denton, Texas 76202-0069, Attention: Mark Mesnier or Will Gilmore, Jr., and the subsequent holder or holders, from time to time, of the Note.

**Code:** The Uniform Commercial Code, as amended from time to time, in effect in the state in which the Mortgaged Property is located.

**Constituent Party:** Any signatory to this Deed of Trust that signs on Grantor's behalf that is a corporation, general partner, general partnership, limited partnership, joint venture, trust, or other type of business organization.

**Construction Contracts:** Any and all contracts, subcontracts, and agreements, written or oral, between Grantor and any other party, and between parties other than Grantor, in any way relating to the construction of the Improvements on the Land or the supplying of material (specifically fabricated or otherwise), labor, supplies, or other services therefor.

**Contractor:** Any party performing work or supplying materials pursuant to any of the Construction Contracts.

**Contracts:** All of the rights, title, and interest of Grantor in, to, and under any and all (i) contracts for the purchase of all or any portion of the Mortgaged Property, whether such Contracts are now or at any time hereafter existing, including but without limitation, any and all earnest money or other deposits escrowed or to be escrowed or letters of credit provided or to be provided by the purchasers under the Contracts, including all amendments and supplements to and renewals and extensions of the Contracts at any time made, and together with all payments, earnings, income, and profits arising from sale of all or any portion of the Mortgaged Property or from the Contracts and all other sums due or to become due under and pursuant thereto and together with any and all earnest money, security, letters of credit or other deposits under any of the Contracts; (ii) contracts, licenses, permits, and rights relating to living unit equivalents for water, wastewater, and other utility services whether executed, granted, or issued by a private person or entity or a governmental or quasi-governmental agency, which are directly or indirectly related to, or connected with, the development of the Mortgaged Property, whether such contracts, licenses, and permits are now or at any time thereafter existing, including without limitation, any and all rights of living unit equivalents with respect to water, wastewater, and other utility services, certificates, licenses, zoning variances, permits, and no-action letters from each governmental authority required: (a) to evidence compliance by Grantor and all improvements constructed or to be constructed on the Mortgaged Property with all legal requirements applicable to the Mortgaged Property, (b) for the construction of any Improvements on the Mortgaged Property (including, without limitation, the Construction Contracts), and (c) to develop or operate the Mortgaged Property as a commercial and/or residential project; (iii) any and all right, title, and interest Grantor may have in any financing arrangements relating to the financing of or the purchase of all or any portion of the Mortgaged Property by future purchasers; (iv) all plans, specifications, and drawings prepared for the Mortgaged Property, including all amendments and supplements thereto; and (v) all other contracts which in any way relate to the design, use, enjoyment, occupancy, operation, maintenance, or ownership of the Mortgaged Property (save and

except any and all leases, subleases, or other agreements pursuant to which Grantor is granted a possessory interest in the Land), including but not limited to engineers contracts, architects contracts, maintenance agreements and service contracts and renewals and extensions of such contracts at any time made, and together with all rebates, refunds or deposits, and all other sums due or to become due under and pursuant thereto and together with all powers, privileges, options, and other benefits of Grantor under such contracts.

    <u>Debt Service Ratio:</u>  In respect of any period of time, the ratio of (a) Rents received from the Leases during such period, minus any operating costs, taxes or other expenses associated with the Mortgaged Property borne by Grantor during such period, <u>divided by</u> (b) the payments required to be paid under the Note in respect of such period of time.  All calculations used to determine the Debt Service Ratio will utilize GAAP accrual method of accounting.

    <u>Debtor Relief Laws:</u>  Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors.

    <u>Default Rate:</u>  The rate of interest specified in the Note to be paid by the maker of the Note from and after the occurrence of a default in payment under the provisions of the Note and Loan Documents but not in excess of the Maximum Lawful Rate.

    <u>Disposition:</u>  Any sale, lease (except as permitted under this Deed of Trust), exchange, assignment, conveyance, transfer, trade, or other disposition of all or any portion of the Mortgaged Property (or any interest therein) or all or any part of the beneficial ownership interest in Grantor (if Grantor is a corporation, partnership, general partnership, limited partnership, joint venture, trust, or other type of business association or legal entity).

    <u>Environmental Indemnity:</u>  That certain Hazardous Waste Warranty and Indemnification Agreement signed by Borrower and Guarantor for the benefit of Lender.

    <u>Environmental Law:</u>  Any federal, state, or local law, statute, ordinance, or regulation pertaining to health, industrial hygiene, or the environmental conditions on, under, or about the Mortgaged Property, including without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") as amended, 42 U.S.C. § 9601 et seq., the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. Section 6901 et seq. ("RCRA"), the Texas Water Code ("TWC"), the Texas Solid Waste Disposal Act, Texas Health & Safety Code ("THSC") § 361.001 et seq. and regulations, rules, guidelines, or standards promulgated pursuant to such laws, as such statutes, regulations, rules, guidelines, and standards are amended from time to time, including, without limitation, such environmental laws, statutes, ordinances and regulations as may be referenced in the Loan Documents or Environmental Indemnity.

    <u>Event of Default:</u>  Any happening or occurrence described in Article VI hereof.

    "<u>Financial Statements</u>" means such balance sheets (including disclosure of all contingent liabilities), profit and loss statements, reconciliations of capital and surplus, changes in financial condition, schedules of sources and uses of funds, statements of cash flow, operating statements with respect to the Mortgaged Property, pro forma schedules of sources and uses of funds and other financial information of Grantor and Guarantor, as shall be required by Beneficiary, from time to time, or as required under this Deed of Trust, or any other Loan Document, which statements shall be compiled by a certified public accountant and certified as true and correct by an officer of Grantor or Guarantor, as applicable, and prepared in accordance with GAAP standards and otherwise in accordance with the requirements of this Deed of Trust.

    <u>Fixtures:</u>  All materials, supplies, equipment, systems, apparatus, and other items now owned or hereafter acquired by Grantor and now or hereafter attached to, installed in, or used in connection with (temporarily or permanently) any of the Improvements or the Land, which are now owned or hereafter acquired by Grantor and are now or hereafter attached to the Land or the Improvements, and including but not limited to any and all partitions, dynamos, window-screens and shades, draperies, rugs and other floor coverings, awnings, motors, engines, boilers, furnaces, pipes, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, water tanks, swimming pools, heating, ventilation, refrigeration, plumbing, laundry, lighting, generating, cleaning, waste disposal, transportation (of people or things, including but not limited to, stairways, elevators, escalators, and conveyors), incinerating, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, and all other utilities whether or not situated in easements, together with all accessions, appurtenances, replacements, betterments, and substitutions for any of the foregoing and the proceeds thereof.

    <u>GAAP:</u>  Generally accepted accounting principles, applied on a consistent basis, as set forth in Opinions of the Accounting Principles Board of the American Institute of Certified Public Accountants and/or in statements of the Financial Accounting Standards Board and/or their respective successors and which are applicable in the circumstances as of the date in question.  Accounting principles are applied on a "consistent basis" when the

-2-

accounting principles observed in a current period are comparable in all material respects to those accounting principles applied in a preceding period.

**Governmental Authority:** Any and all applicable courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city or otherwise), whether now or hereafter in existence.

**Grantor:** The individual or entity described as Grantor in the initial paragraph of this Deed of Trust and any and all subsequent owners of the Mortgaged Property or any part thereof (without hereby implying Beneficiary's consent to any Disposition of the Mortgaged Property).

**Ground Leases:** Those certain Ground Leases described on **Exhibit A** attached hereto and incorporated herein by this reference.

**Guarantor (individually and/or collectively, as the context may require):** Those persons, firms, or entities designated as Guarantor in the Guaranty.

**Guaranty (individually and/or collectively, as the context may require):** That or those instruments of guaranty, if any, now or hereafter in effect, from Guarantor to Beneficiary guaranteeing the repayment of all or any part of the Indebtedness or the satisfaction of, or continued compliance with, the Obligations, or both.

**Hazardous Substance:** Hazardous Substance is any substance, product, waste, or other material which is or becomes listed, regulated, or addressed as being a toxic, hazardous, polluting, or similarly harmful substance under any Environmental Law, including without limitation: (i) any substance included within the definition of "hazardous waste" pursuant to Section 1004 of RCRA; (ii) any substance included within the definition of "hazardous substance" pursuant to Section 101 of CERCLA; (iii) any substance included within (a) the definition of "regulated substance" pursuant to Section 26.342(9) of TWC or (b) the definition of "hazardous substance" pursuant to Section 361.003(13) of THSC; (iv) asbestos; (v) polychlorinated biphenyls; (vi) petroleum products; (vii) underground storage tanks, whether empty, filled or partially filled with any substance; (viii) any other substance the presence of which on the Mortgaged Property is prohibited by any Environmental Laws or requires special handling or notification of any Governmental Authority; and (ix) any Hazardous Substance referred to in the Loan Documents.

**Impositions:** (i) All real estate and personal property taxes, charges, assessments, standby fees, excises, and levies and any interest, costs, or penalties with respect thereto, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which at any time prior to or after the execution hereof may be assessed, levied, or imposed upon the Mortgaged Property or the ownership, use, occupancy, or enjoyment thereof, or any portion thereof, or the sidewalks, streets, or alleyways adjacent thereto; (ii) any charges, fees, license payments, or other sums payable for or under any easement, license, or agreement maintained for the benefit of the Mortgaged Property; (iii) water, gas, sewer, electricity, and other utility charges and fees relating to the Mortgaged Property; and (iv) assessments and charges arising under any subdivision, condominium, planned unit development, or other declarations, restrictions, regimes, or agreements affecting the Mortgaged Property.

**Improvements:** Any and all streets, roads, landscaping, street signs, street lighting, curbs and gutters, sanitary sewer and water facilities, utilities, electricity and similar provisions, buildings, residences, covered garages, air conditioning towers, open parking areas, structures and other improvements, and any and all additions, alterations, betterments or appurtenances thereto, now or at any time hereafter situated, placed, or constructed upon the Land or any part thereof.

**Indebtedness:** (i) The principal of, interest on, or other sums evidenced by the Note or the Loan Documents; and (ii) any other amounts, payments or premiums payable under the Loan Documents; and (iii) any and all renewals, extensions and rearrangements thereof.

**"Insurance Policies"** shall mean insurance policies (or a blanket policy endorsed in a manner satisfactory to Beneficiary) issued by companies acceptable to Beneficiary which have an A.M. Best's rating of at least A+ Class XII covering (a) loss by perils, hazards, liabilities, fire, extended coverage, vandalism, malicious mischief and other risks and casualties and in such amounts as required by Beneficiary, but in no event less than the amount of the Loan; (b) during the period of any construction as to any part of the Mortgaged Property, (i) all-risks form of builder's risk insurance (on a completed value, non-reporting form), (ii) contractor's liability, worker's compensation and employer's liability insurance, (iii) professional liability insurance for architects and engineers, (iv) commercial general liability insurance and excess umbrella liability insurance, (v) contractual liability insurance, (vi) flood insurance unless Grantor delivers the evidence required herein that flood insurance is not required and (vii) all-risks form of property insurance on personal property (including personal property stored offsite); (c) after all the construction of the Mortgaged Property is complete, (i) all-risks form of property insurance covering real and personal property, (ii) commercial general liability insurance, (iii) worker's compensation and employer's liability insurance, (iv) contractual liability insurance, and (v) flood insurance, unless Grantor delivers the evidence required herein that flood insurance is not required; (d) environmental insurance protection, including coverage for pre-existing conditions in the amount of at least $1,000,000; and (e) such other insurance, if any, as Beneficiary may require from time to time, or which is required by the Deed of Trust. All physical

- 3 -

damage policies and renewals shall contain a standard mortgage clause naming Beneficiary as mortgagee, which clause shall expressly state that any breach of any condition or warranty by Grantor shall not prejudice the rights of Beneficiary under such insurance, and a loss payable clause in favor of the Beneficiary for personal property, contents, inventory, equipment, loss of rents and business interruption. All liability policies and renewals shall name Beneficiary as an additional insured. All policies shall include a provision requiring that the insurer give Beneficiary thirty (30) days prior written notice of non-renewal, cancellation or modification and shall otherwise be in form and substance satisfactory to Beneficiary. No additional parties shall appear in the mortgagee loss payable clause without Beneficiary's prior written consent, except as such may be required by a blanket policy. All deductibles shall be in amounts reasonably acceptable to Beneficiary. In the event of the foreclosure of the Deed of Trust or any other transfer of title to the Mortgaged Property in full or partial satisfaction of the Loans, all right, title and interest of Grantor in and to all casualty insurance policies and renewals thereof then in force shall, to the extent such interest is transferable, pass to the purchaser or grantee.

**Land:** The real property or interest therein described in **Exhibit "A"** attached hereto and incorporated herein by this reference, together with all right, title, interest, and privileges of Grantor in and to (a) all streets, ways, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to such real property or the improvements thereon; (b) any strips or gores of real property between such real property and abutting or adjacent properties; (c) all water and water rights, timber, crops, pertaining to such real estate; and (d) all appurtenances and all reversions and remainders in or to such real property.

**Leases:** Any and all leases, master leases, subleases, licenses, concessions, or other agreements (written or oral, now or hereafter in effect) which grant to third parties a possessory interest in and to, or the right to use, all or any part of the Mortgaged Property, together with all security and other deposits or payments made in connection therewith.

**Legal Requirements:** Any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Grantor, any Guarantor or the Mortgaged Property, including, without limiting the generality of the foregoing, (i) any and all requirements pertaining to the design, ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction of the Mortgaged Property, (ii) any and all covenants, conditions, and restrictions contained in any deeds, other forms of conveyance, or in any other instruments of any nature that relate in any way or are applicable to the Mortgaged Property or the ownership, use, or occupancy thereof, (iii) Grantor's or any Guarantor's presently or subsequently effective bylaws and articles of incorporation or partnership, limited partnership, joint venture, trust, or other form of business association agreement, (iv) any and all Leases, (v) any and all Construction Contracts and Contracts, and (vi) any and all leases, other than those described in (iv) above, and other contracts (written or oral) of any nature that relate in any way to the Mortgaged Property and to which Grantor or any Guarantor may be bound, including, without limiting the generality of the foregoing, any lease or other contract pursuant to which Grantor is granted a possessory interest in and to the Land and/or the Improvements.

**Loan Documents:** The Loan Documents, the Note, this Deed of Trust, the Guaranty, the Environmental Indemnity and any and all other documents now or hereafter executed by the Grantor, Guarantor, or any other person or party in connection with the loan evidenced by the Note or in connection with the payment of the indebtedness or the performance and discharge of the Obligations.

**Material Adverse Effect:** Any material and adverse effect on (i) the business condition (financial or otherwise), operations, prospects, results of operations, capitalization, liquidity or any properties of the Grantor, taken as a whole, (ii) the value of the Mortgaged Property, (iii) the ability of Grantor to pay and perform the indebtedness and the Obligations, respectively, or (iv) the validity. enforceability or binding effect of any of the Loan Documents.

**Maximum Lawful Rate:** The rate utilized by Beneficiary pursuant to either (i) the Indicated (weekly) rate ceiling from time to time in effect as provided in Chapter 303 of the Texas Finance Code, as the same may be amended from time to time, or (ii) United States federal law which permits Beneficiary to contract for, charge, or receive a greater amount of interest than that provided by Chapter 303 of the Texas Finance Code, as the same may be amended from time to time, for the purpose of determining the maximum lawful rate allowed by applicable laws. Additionally, to the extent permitted by applicable law now or hereinafter in effect, Beneficiary may, at its option and from time to time, implement any other method of computing the Maximum Lawful Rate under such Chapter 303 of the Texas Finance Code, as the same may be amended from time to time, or under other applicable law by giving notice, if required, to Grantor as provided by applicable law now or hereafter in effect.

**Minerals:** All substances in, on, or under the Land which are now, or may become in the future, intrinsically valuable, that is, valuable in themselves, and which now or may be in the future enjoyed through extraction or removal from the property, including without limitation, oil, gas, and all other hydrocarbons, coal, lignite, carbon dioxide and all other nonhydrocarbon gasses, uranium and all other radioactive substances, and gold, silver, copper, iron and all other metallic substances or ores.

- 4 -

**Mortgaged Property:** Leasehold created pursuant to the Ground Lease, together with and including the Land, Minerals, Fixtures, Improvements, Personalty, Contracts, Leases and Rents, and any interest of Grantor now owned or hereafter acquired in and to the Land, Minerals, Fixtures, Personalty, Contracts, Leases and Rents, together with any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Indebtedness or the performance and discharge of the Obligations. As used in this Deed of Trust, the term "Mortgaged Property" shall be expressly defined as meaning all or, where the context permits or requires, any portion of the above and all or, where the context permits or requires, any interest therein.

**Note:** That certain Promissory Note of even date herewith, incorporated herein by this reference, executed by Grantor and payable to the order of Beneficiary in the principal amount of up to Four Million Four Hundred Thousand and No/100 Dollars ($4,400,000.00), bearing interest as therein specified, containing an attorneys' fee clause, interest and principal being payable as therein specified, and finally maturing on the date specified therein, and secured by, among other things, this Deed of Trust; and any and all renewals, modifications, rearrangements, reinstatements, enlargements, or extensions of such promissory note or of any promissory note or notes given in renewal, substitution or replacement therefor.

**Obligations:** Any and all of the covenants, conditions, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Grantor, Guarantor, or any other person or party to the Loan Documents to Beneficiary, Trustee, or others as set forth in the Loan Documents, the Leases, and in any deed, lease, sublease, or other form of conveyance, or any other agreement pursuant to which Grantor is granted a possessory interest in the Land.

**Permitted Exceptions:** The liens, easements, restrictions, security interests, and other matters (if any) as reflected on Exhibit "B" attached hereto and incorporated herein by reference and the liens and security interests created by the Loan Documents.

**Personalty:** All of the right, title, and interest that Grantor now has or at any time hereafter acquires in and to (i) furniture, furnishings, equipment, machinery, goods (including, but not limited to, crops, farm products, timber and timber to be cut, and extracted Minerals); (ii) general intangibles, money, insurance proceeds, accounts, contract and subcontract rights, trademarks, tradenames, inventory; (iii) all refundable, returnable, or reimbursable fees, deposits or other funds or evidences of credit or indebtedness deposited by or on behalf of Grantor with any governmental agencies, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable, or reimbursable tap fees, utility deposits, commitment fees and development costs, any awards, remunerations, reimbursements, settlements, or compensation heretofore made or hereafter to be made by any Governmental Authority pertaining to the Land, Improvements, Fixtures, Contracts, or Personalty, including but not limited to those for any vacation of, or change of grade in, any streets affecting the Land or the Improvements and those for municipal utility district or other utility costs incurred or deposits made in connection with the Land; and (iv) all other personal property of any kind or character as defined in and subject to the provisions of the Code (Article 9 - Secured Transactions); any and all of which are now owned or hereafter acquired by Grantor, and which are now or hereafter situated in, on, or about the Land or the Improvements, or used in or necessary to the complete and proper planning, development, construction, financing, use, occupancy, or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use in or on the Land or the Improvements, together with all accessions, replacements, and substitutions thereto or therefor and the proceeds thereof.

**Plans:** Any and all plans, specifications, shop drawings and other technical descriptions for construction of the Improvements on the Land, and all supplements thereto and amendments and modifications thereof.

**Rents:** All of the rents, revenues, income, proceeds, profits, security and other types of deposits (after Grantor acquires title thereto), and other benefits paid or payable by parties to the Contracts and/or Leases, other than Grantor for using, leasing, licensing, insuring, possessing, operating from, residing in, selling, or otherwise enjoying all or any portion of the Mortgaged Property.

**Subordinate Mortgage:** Any mortgage, deed of trust, pledge, lien (statutory, constitutional, or contractual), security interest, encumbrance or charge, or conditional sale or other title retention agreement, covering all or any portion of the Mortgaged Property executed and delivered by Grantor, the lien of which is subordinate and inferior to the lien of this Deed of Trust.

**Trustee:** The individual described as Trustee in the initial paragraph of this Deed of Trust.

1.2     **Additional Definitions.** As used herein, the following terms shall have the following meanings:

    (a)     "Hereof," "hereby," "hereto," "hereunder," "herewith" and similar terms mean of, by, to, under and with respect to, this Deed of Trust or to the other documents or matters being referenced.

    (b)     "Heretofore" means before, "hereafter" means after, and "herewith" means concurrently with, the date of this Deed of Trust.

- 5 -

(c)     All pronouns, whether in masculine, feminine or neuter form, shall be deemed to refer to the object of such pronoun whether same is masculine, feminine or neuter in gender, as the context may suggest or require.

(d)     All terms used herein, whether or not defined in Section 1.1 hereof, and whether used in singular or plural form, shall be deemed to refer to the object of such term whether such is singular or plural in nature, as the context may suggest or require.

## ARTICLE II

## GRANT

2.1     **Grant.**  To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Grantor has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY, unto Trustee, in trust, the Mortgaged Property, subject, however, to the Permitted Exceptions, TO HAVE AND TO HOLD the Mortgaged Property unto Trustee, forever, and Grantor does hereby bind itself, its successors, and assigns to WARRANT AND FOREVER DEFEND the title to the Mortgaged Property unto Trustee against every person whomsoever lawfully claiming or to claim the same or any part thereof; provided, however, that if Grantor shall pay (or cause to be paid) the Indebtedness as and when the same shall become due and payable and shall fully perform and discharge (or cause to be fully performed and discharged) the Obligations on or before the date same are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate, in accordance with the provisions hereof, otherwise same shall remain in full force and effect.  A certificate or other written statement executed on behalf of Trustee or Beneficiary confirming that the Indebtedness has not been fully paid or the Obligations have not been fully performed or discharged shall be sufficient evidence thereof for the purpose of reliance by third parties on such fact.

## ARTICLE III

## WARRANTIES AND REPRESENTATIONS

Grantor hereby unconditionally warrants and represents to Beneficiary, as of the date hereof and at all times during the term of this Deed of Trust, as follows:

3.1     **Organization and Power.**  If Grantor or any Constituent Party is a corporation, general partnership, limited partnership, joint venture, trust, or other type of business association, as the case may be, Grantor and any Constituent Party, if any, (a) is either a corporation duly incorporated with a legal status separate from its affiliates, or a partnership or trust, joint venture or other type of business association duly organized, validly existing, and in good standing under the laws of the state of its formation or existence, and has complied with all conditions prerequisite to its doing business in the state in which the Mortgaged Property is located, and (b) has all requisite power and all governmental certificates of authority, licenses, permits, qualifications, and documentation to own, lease, and operate its properties and to carry on its business as now being, and as proposed to be, conducted.

3.2     **Validity of Loan Documents.**  The execution, delivery, and performance by Grantor of the Loan Documents (other than the Guaranty), (a) if Grantor, or any signatory who signs on its behalf, is a corporation, general partnership, limited partnership, joint venture, trust, or other type of business association, as the case may be, are within Grantor's and each Constituent Party's powers and have been duly authorized by Grantor's and each Constituent Party's board of directors, shareholders, partners, venturers, trustees, or other necessary parties, and all other requisite action for such authorization has been taken, (b) have received any and all requisite prior governmental approvals in order to be legally binding and enforceable in accordance with the terms thereof, and (c) will not violate, be in conflict with, result in a breach of, or constitute (with due notice or lapse of time, or both) a default under or violation of any Legal requirement or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of Grantor's and any Constituent Party's or Guarantor's property or assets, except as contemplated by the provisions of the Loan Documents.  The Loan Documents constitute the legal, valid, and binding obligations of Grantor, Guarantor, and others obligated under the terms of the Loan Documents, enforceable in accordance with their respective terms.

3.3     **Information.**  All information, financial statements, reports, papers, and data given or to be given to Beneficiary with respect to Grantor, each Constituent Party, or the Mortgaged Property are, or at the time of delivery will be, accurate, complete, and correct in all material respects and do not, or will not, omit any fact, the inclusion of which is necessary to prevent the facts contained therein from being materially misleading.  Since the date of the financial statements of Grantor or any Constituent Party heretofore furnished to Beneficiary, no Material Adverse Effect has occurred or arisen and, except as heretofore disclosed in writing to Beneficiary, Grantor, and each Constituent Party have not incurred any material liability, direct or indirect, fixed or contingent.

3.4     **Title and Lien.**  Grantor owns the leasehold estate created under the Ground Lease, the Land and Improvements, subject to the terms of the Ground Lease, and has good and marketable title to the Fixtures and

- 6 -

2001 249 05681

Personally, free and clear of any liens, charges, encumbrance, security interests, claim, restrictions, options, covenants, other rights, titles, interests or estates of any nature whatsoever, except the Permitted Exceptions. This Deed of Trust constitutes a valid, subsisting first lien on the Mortgaged Property; a valid, subsisting first priority security interest in and to the Personalty, and to the extent that the terms Leases and Rents include items covered by the Code, in and to the Leases and Rents; and a valid, subsisting first priority assignment of the Leases and Rents not covered by of the Code, all in accordance with the terms hereof. No construction, including demolition, has been or shall be undertaken by or on behalf of Grantor prior to the recording of this Deed of Trust by or on behalf of Beneficiary.

3.5     No Default under the Ground Lease and Leases. There is no default or event which, with the giving of notice or the passage of time, or both, would constitute a default under the Ground Lease.

3.6     Business Purposes. The loan evidenced by the Note is solely for the purpose of carrying on or acquiring a business of Grantor, and is not for personal, family, household, or agricultural purposes.

3.7     Taxes. Grantor, each Constituent Party, and Guarantor have filed all federal, state, county, municipal, and city income and other tax returns required to have been filed by them and have paid all taxes and related liabilities which have become due pursuant to such returns or pursuant to any assessments received by them. Neither Grantor, any Constituent Party, nor Guarantor knows of any basis for any additional assessment in respect of any such taxes and related liabilities, except that which may result from increased valuation or tax rate resulting from the construction of the Improvements.

3.8     Mailing Address. Grantor's mailing address, as set forth in the opening paragraph hereof or as changed pursuant to the provisions hereof, is true and correct.

3.9     Relationship of Grantor and Beneficiary. The relationship between Grantor and Beneficiary is solely that of debtor and creditor, and Beneficiary has no fiduciary or other special relationship with the Grantor, and no term or condition of any of the Loan Documents shall be construed so as to deem the relationship between Grantor and Beneficiary to be other than that of debtor and creditor.

3.10     No Reliance on Beneficiary. Grantor is experienced in the ownership and operation of properties similar to the Mortgaged Property, and Grantor and Beneficiary have relied and are relying solely upon Grantor's expertise and business plan in connection with the construction of the Improvements and ownership and operation of the Mortgaged Property. Grantor is not relying on Beneficiary's expertise or business acumen in connection with the Mortgaged Property or in connection with the construction of the Improvements.

3.11     No Litigation. There are no (i) actions, suits, or proceedings, at law or in equity, before any Governmental Authority or arbitrator pending or threatened against or affecting Grantor, Guarantor, or any Constituent Party or involving the Mortgaged Property, (ii) outstanding or unpaid judgment against the Grantor, any Guarantor, any Constituent Party, or the Mortgaged Property, or (iii) defaults by Grantor with respect to any order, writ, injunction, decree, or demand of any Governmental Authority or arbitrator, any of which items (i), (ii) or (iii) would have a Material Adverse Effect.

3.12     Financial Statements. Each financial statement of Grantor herewith or heretofore delivered to Beneficiary was prepared in conformity with GAAP and truly discloses such party's financial condition (including all of such party's contingent liabilities) as of the date thereof and the results of its operations for the period covered thereby, and there has been no material adverse change in Grantor's financial condition and operations subsequent to the date of the most recent financial statement of each delivered to Beneficiary.

3.13     No Undisclosed Debt. Grantor has no debt which has not been disclosed to Beneficiary in writing. None of Grantor's assets are subject to any lien except as has been disclosed in writing to Beneficiary.

3.14     Authorization. No authorization, approval, or consent of, and no filing or registration with, any court, governmental authority, or third party is or will be necessary for the execution, delivery, or performance by Grantor of this Deed of Trust and the other Loan Documents to which Grantor is or may become a party or the validity or enforceability thereof.

3.15     System Compliance. The storm and sanitary sewer system, water system, all utility systems of the Mortgaged Property and other parts of the Improvements comply with all Legal Requirements, including without limitation, applicable environmental, pollution control, and ecological laws, ordinances, rules, and regulations; and Grantor has obtained or caused to be obtained and will continue to obtain or cause to be obtained from all Governmental Authorities having jurisdiction of the Mortgaged Property all necessary permits, licenses, or other authorizations (and Grantor has made or will when required make all necessary filings with such Governmental Authorities) for the construction, occupancy, operation, and use of the Improvements.

3.16     Submittals. The Loan Documents and all Financial Statements, schedules, opinions, certificates, confirmations, affidavits, agreements and other materials submitted to Beneficiary by or on behalf of Grantor in connection with the Loan Documents fully and fairly state the matters with which they purport to deal; and neither

- 7 -

misstate any material fact, nor, separately or in the aggregate, fail to state any material fact necessary to make the statements made not misleading.

3.17 <u>Utility and Access Availability</u>. All utility and municipal services required for the occupancy and operation of the Improvements, including, but not limited to, water supply, storm and sanitary sewer systems, gas, electric, and telephone facilities, are available to the Land for the normal and intended use of the Improvements including the intended uses of Grantor. All streets, alleys and easements necessary to serve the Mortgaged Property for the uses represented by Grantor to Beneficiary are dedicated and accepted by the applicable Governmental Authorities as public rights of way.

3.18 <u>Compliance with Restrictions</u>. The current use of the Mortgaged Property complies and will comply with all applicable restrictive covenants and Legal Requirements and all standards and regulations of appropriate supervising boards of fire underwriters and similar agencies. Grantor has complied with all applicable laws, ordinances, and restrictions pertaining to and affecting the Mortgaged Property. Grantor has no information or knowledge of any change contemplated in any applicable laws or restrictions or of any natural or artificial conditions upon the Mortgaged Property which would prevent or render more costly Grantor's completion of the Mortgaged Property.

3.19 <u>Development Rights</u>. Grantor has not directly or indirectly conveyed, assigned or otherwise disposed of or transferred (or agreed to do so) any development rights, air rights, or other similar rights, privileges, or attributes with respect to the Mortgaged Property, including those arising under any zoning or land use ordinance or other Governmental Requirements.

3.20 <u>Regulation U</u>. The proceeds of the Loan are not being used and shall not be used to purchase or carry any "margin stock" within the meaning of Regulation "U" of the Board of Governors of the Federal Reserve System, nor to extend credit to others for that purpose.

3.21 <u>ERISA</u>. Grantor is in compliance in all material respects with all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended.

3.22 <u>Insider</u>. Grantor is not, and no person having "control" (as that term is defined in 12 U.S.C. §375b(b)(5) or in regulations promulgated pursuant thereto and applied to savings associations under 12 U.S.C. §1468) of Grantor is an "executive officer," "director," or person who directly or indirectly or in concert with one or more persons owns, controls, or has the power to vote more than 10% of any class of "voting securities" (as those terms are defined in 12 U.S.C. §375b(b) or in regulations promulgated pursuant thereto and applied to savings associations under 12 U.S.C. §1468) of Beneficiary, of a bank holding company of which Beneficiary is a subsidiary, or of any subsidiary of a bank holding company of which Beneficiary is a subsidiary, or of any bank at which Beneficiary maintains a correspondent account, or of any bank which maintains a correspondent account with Beneficiary or any other banking association which is an "affiliate" of Beneficiary under 12 U.S.C. §1468).

3.23 <u>Zoning</u>. The Land is currently zoned under a zoning classification permitting the current uses of the Mortgaged Property, and the Mortgaged Property complies with the density, minimum lot size, depth of lot, and other requirements established by all applicable Legal Requirements.

3.24 <u>Not a Foreign Person</u>. Neither Grantor nor any Guarantor is a "foreign person" within the meaning of the Internal Revenue Code of 1986, as amended ("IRC"), Sections 1445 and 7701 (i.e., Grantor and each Guarantor is not a non-resident alien, foreign corporation, foreign ownership, foreign trust, or foreign estate as those terms are defined in the IRC and any regulations promulgated thereunder).

3.25 <u>Environmental and Hazardous Substances</u>.

(a) The Mortgaged Property and the operations conducted thereon do not violate any applicable law, statute, ordinance, rule, regulation, order, or determination of any Governmental Authority or any restrictive covenant or deed restriction (recorded or otherwise), including without limitation all applicable zoning ordinances and building codes, flood disaster laws and Environmental Laws.

(b) The Mortgaged Property and operations conducted thereon are not in violation of or subject to any existing, pending, or threatened action, suit, investigation, inquiry, or proceeding by any governmental or non-governmental entity or person or to any remedial obligations under any Environmental Law.

(c) All notices, permits, licenses, or similar authorizations, if any, required to be obtained or filed in connection with the ownership, operation, or use of the Mortgaged Property, including, without limitation, the past or present generation, treatment, storage, disposal, or release of a Hazardous Substance (as hereinafter defined) into the environment, have been duly obtained or filed.

(d) The Mortgaged Property does not contain any Hazardous Substance.

- 8 -

(e)     Grantor has taken all steps necessary to determine and has determined that no Hazardous Substances have been generated, treated, placed, held, located, or otherwise released on, under, from, or about the Mortgaged Property.

(f)     Grantor has not undertaken, permitted, authorized, or suffered and will not undertake, permit, authorize, or suffer the presence, use, manufacture, handling, generation, transportation, storage, treatment, discharge, release, burial, or disposal on, under, from or about the Mortgaged Property of any Hazardous Substance or the transportation to or from the Mortgaged Property of any Hazardous Substance.

(g)     There is no pending or, to the current actual knowledge of Grantor, threatened litigation, proceedings, or investigations before or by any administrative agency in which any person or entity alleges or is investigating any alleged presence, release, threat of release, placement on, under, from or about the Mortgaged Property, or the manufacture, handling, generation, transportation, storage, treatment, discharge, burial, or disposal on, under, from or about the Mortgaged Property, or the transportation to or from the Mortgaged Property, of any Hazardous Substance.

(h)     Grantor has not received any notice, and has no actual or constructive knowledge, that any Governmental Authority or any employee or agent thereof has determined, or threatens to determine, or is investigating any allegation that there is a presence, release, threat of release, placement on, under, from or about the Mortgaged Property, or the use, manufacture, handling, generation, transportation, storage, treatment, discharge, burial, or disposal on, under, from or about the Mortgaged Property, or the transportation to or from the Mortgaged Property, of any Hazardous Substance.

(i)     There have been no communications or agreements between Grantor and any Governmental Authority thereof or any private entity, including, but not limited to, any prior owners or operators of the Mortgaged Property, relating in any way to the presence, release, threat of release, placement on, under or about the Mortgaged Property, or the use, manufacture, handling, generation, transportation, storage, treatment, discharge, burial, or disposal on, under or about the Mortgaged Property, or the transportation to or from the Mortgaged Property, of any Hazardous Substance.

(j)     Neither Grantor nor, to the current actual knowledge of Grantor, any other person, including, but not limited, to any predecessor owner, tenant, licensee, occupant, user, or operator of all or any portion of the Mortgaged Property, has ever caused, permitted, authorized, or suffered, and Grantor will not cause, permit, authorize, or suffer, any Hazardous Substance to be placed, held, located, or disposed of on, under or about any other real property, all or any portion of which is legally or beneficially owned by Grantor, in any jurisdiction now or hereafter having in effect a so-called "superlien" law or ordinance or any part thereof, the effect of which law or ordinance would be to create a lien on the Mortgaged Property to secure any obligation in connection with the "superlien" law of such other jurisdiction.

(k)     Grantor has been issued all required federal, state, and local licenses, certificates, or permits relating to Grantor, and its facilities, business assets, property, leaseholds, and equipment are in compliance in all respects with all applicable federal, state, and local laws, rules, and regulations relating to, air emissions, water discharge, noise emissions, solid or liquid waste disposal, hazardous waste or materials, or other environmental, health, or safety matters.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

Grantor hereby unconditionally covenants and agrees with Beneficiary, until the entire Indebtedness shall have been paid in full and all of the Obligations shall have been fully performed and discharged as follows:

4.1     Payment and Performance.  Grantor will pay the Indebtedness as and when specified in the Loan Documents, and will perform and discharge all of the Obligations, in full and on or before the dates same are to be performed.

4.2     Existence.  Grantor will and will cause each Constituent Party to preserve and keep in full force and effect its existence (separate and apart from its affiliates), rights, franchises, and trade names.

4.3     Compliance with Legal Requirements.  Grantor will promptly and faithfully comply with, conform to, and obey all Legal Requirements, whether the same shall necessitate structural changes in, improvements to, or interfere with the use or enjoyment of, the Mortgaged Property.

4.4     First Lien Status.  Grantor will protect the first lien and security interest status of this Deed of Trust and the other Loan Documents and will not permit to be created or to exist in respect of the Mortgaged Property or any part thereof any lien or security interest on a parity with, superior to, or inferior to any of the liens or security interests hereof, except for the Permitted Exceptions.

-9-

4.5    Leases: Within thirty (30) days after the end of each calendar year (or upon the request of Beneficiary upon the occurrence of an Event of Default), Grantor shall provide to Beneficiary a true, correct, and complete copy of all Leases then in effect (including all amendments thereto) and a current rent roll containing such information as Beneficiary may Request. All Leases must be in form and substance satisfactory to Beneficiary. Beneficiary reserves the right to (i) disapprove any concessions in any proposed Leases and/or (ii) require the payment of reserves by Grantor to cover any particular lease concessions. Upon execution of a new Lease of any portion of the Mortgaged Property, Grantor shall, at Grantor's expense, provide Beneficiary with a subordination, non-disturbance and attornment agreement with respect to such Lease in form acceptable to Beneficiary, suitable for recording in Dallas County, Texas.

4.6    Payment of Impositions. Grantor will duly pay and discharge, or cause to be paid and discharged, the Impositions not later than the earlier to occur of (i) the due date thereof, (ii) the day any fine, penalty, interest, or cost may be added thereto or imposed, or (iii) the day any lien may be filed for the nonpayment thereof (if such day is used to determine the due date of the respective item), unless the same is being contested in good faith by appropriate proceedings and reserves deemed adequate by Beneficiary have been established therefor. Grantor shall deliver to Beneficiary a written receipt evidencing the payment of the respective Imposition.

4.7    Repair. Grantor will keep the Mortgaged Property in first-class order and condition and will make all repairs, replacements, renewals, additions, betterments, improvements, and alterations thereof and thereto, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, which are necessary or reasonably appropriate to keep same in such order and condition. Grantor will prevent any act, occurrence, or neglect which might impair the value or usefulness of the Mortgaged Property for its intended usage as set forth in the Plans or elsewhere in the Loan Documents. In instances where repairs, replacements, renewals, additions, betterments, improvements, or alterations are required to and to the Mortgaged Property on an emergency basis to prevent loss, damage, waste, or destruction thereof, Grantor shall proceed to repair, replace, add to, better, improve, or alter same, or cause same to be repaired, replaced, added to, bettered, improved, or altered, notwithstanding anything to the contrary contained in Section 5.2 hereof; provided, however, that in instances where such emergency measures are to be taken, Grantor will notify Beneficiary in writing of the commencement of same and the measures to be taken, and, when same are completed, the completion date and the measures actually taken.

4.8    Payment for Labor and Materials. Grantor will promptly pay all bills for labor, materials, and specifically fabricated materials incurred in connection with the Mortgaged Property and never permit to exist in respect of the Mortgaged Property or any part thereof any lien or security interest, even though inferior to the liens and security interests hereof, for any such bill, and in any event never permit to be created or exist in respect of the Mortgaged Property or any part thereof any other or additional lien or security interest on a parity with, superior, or inferior to any of the liens or security interests hereof, except for the Permitted Exceptions.

4.9    Tax on Deed of Trust. At any time any law shall be enacted imposing or authorizing the imposition of any tax upon this Deed of Trust, or upon any rights, titles, liens, or security interests created hereby, or upon the Indebtedness or any part thereof, Grantor will immediately pay all such taxes, provided that if such law as enacted makes it unlawful for Grantor to pay such tax, Grantor shall not pay nor be obligated to pay such tax. Nevertheless, if a law is enacted making it unlawful for Grantor to pay such taxes, then Grantor must prepay the Indebtedness in full within sixty (60) days after demand therefor by Beneficiary.

4.10    Statement of Unpaid Balance. At any time and from time to time, Grantor will furnish promptly, upon the request of Beneficiary, a written statement or affidavit, in form satisfactory to Beneficiary, stating the unpaid balance of the Indebtedness and that there are no offsets or defenses against full payment of the Indebtedness and the terms hereof, or if there are any such offsets or defenses, specifying them.

4.11    Expenses. Grantor will pay on demand all reasonable and bona fide out-of-pocket costs, fees, and expenses and other expenditures, including, but not limited to, reasonable attorneys' fees and expenses, paid or incurred by Beneficiary or Trustee to third-parties incident to this Deed of Trust or any other Loan Document (including without limitation, reasonable attorneys' fees and expenses in connection with the negotiation, preparation, and execution hereof and of any other Loan Documents and any amendment hereto or thereto, any release hereof, any consent, approval or waiver hereunder or under any other Loan Document, the making of any advance under the Note, and any suit to which Beneficiary or Trustee is a party involving this Deed of Trust or the Mortgaged Property) or incident to the enforcement of the Indebtedness or the exercise of any right or remedy of Beneficiary under any Loan Document.

4.12    Material Litigation. Grantor will promptly inform Beneficiary of any litigation against Grantor, or affecting any of Grantor's property, if such litigation or potential litigation might, in the event of an unfavorable outcome, have a Material Adverse Effect on Grantor's or Guarantors' financial condition or might cause an Event of Default.

4.13    Notice of Default. Upon Grantor's knowledge of an Event of Default, Grantor will notify Beneficiary, within five (5) days of the occurrence thereof, of the occurrence of an Event of Default or an event which, with the giving of notice or lapse of time or both, would constitute an Event of Default.

- 10 -

**4.14** **Compliance with Legal Requirements.** Grantor shall timely comply with all restrictive covenants and Legal Requirements and, at Beneficiary's request, promptly deliver to Beneficiary evidence thereof. Grantor assumes full responsibility for the compliance of the Mortgaged Property with all restrictive covenants and Legal Requirements and with sound building and engineering practices. Notwithstanding any approvals by Beneficiary, Beneficiary shall have no obligation or responsibility whatsoever with respect to the operation, repair and/or maintenance of the Mortgaged Property. Immediately upon Grantor's receipt of any notice from a Governmental Authority of noncompliance with any Legal Requirements, Grantor shall provide Beneficiary with written notice thereof.

**4.15** **Insurance.** Grantor shall maintain or cause to be maintained in force the Insurance Policies at all times and shall furnish to Beneficiary a certificate or certificates from the respective insurer(s) setting forth the nature and extent of all insurance maintained by Grantor in accordance with the Loan Documents. Grantor shall comply or cause compliance at all times with the provisions of the Insurance Policies covering or applicable to Grantor or the Mortgaged Property or any portion thereof, with all requirements of the issuer of any such policy, and with all orders, rules, regulations, and other requirements of the National Board of Fire Underwriters (or any body exercising similar functions) applicable to or affecting any part of the Mortgaged Property or any use or condition thereof.

**4.16** **Ground Lease, Tax and Insurance Reserves.** Until repayment of the Indebtedness, Grantor shall, on the first day of each calendar month, deposit with Beneficiary a sum equal to (i) one-twelfth of the aggregate annual amount which would be sufficient to pay the taxes and assessments applicable to the Mortgaged Property (the "Taxes"); (ii) one-twelfth of the aggregate of the current insurance premiums for the Insurance Policies (the "Insurance and Tax Reserve Account"); and (iii) one-twelfth of the aggregate annual Ground Lease rent. The Ground Lease rent paid by Borrower to Lender shall be held by Lender/Beneficiary in a separate, interest bearing escrow account, according to the terms of the escrow agreement (the "Ground Lease Rent Account"). The determination of the amount of such reserves and the fractional part thereof to be deposited on the first day of each calendar month with Beneficiary shall be made by Beneficiary in its sole discretion. So long as no Event of Default exists, to the extent of amounts on deposit in the Insurance and Tax Reserve Account, Beneficiary shall apply the Insurance and Tax Reserve Account to payments of Taxes and Insurance premiums required to be made by Grantor under the Loan Documents. Grantor shall be responsible for insuring the receipt by Beneficiary at least thirty (30) days prior to the respective due date for payment thereof of all bills, invoices and statements for all Taxes and insurance premiums. In making any payment from the Insurance and Tax Reserve Account, Beneficiary shall be entitled to rely on any bill, statement or estimate obtained from the appropriate public office or insurance company or agent without any inquiry into the accuracy of such bill, statement or estimate, nor the validity, enforceability or contestability of any tax, assessment, valuation, sale, forfeiture, tax lien, title or claim thereof. If the Insurance and Tax Reserve Account or the Ground Lease Rent Account is not sufficient to pay the Taxes and insurance premiums on the Mortgaged Property, or the rent due pursuant to the Ground Lease, Grantor shall promptly pay to Beneficiary, upon demand, an amount which Beneficiary shall estimate as sufficient to make up such deficiency. Beneficiary's acceptance of deposits from Grantor into the Insurance and Tax Reserve Account and the Ground Lease Rent Account shall not impose any responsibility on Beneficiary beyond the payment of the Ground Lease Rent Account of Taxes, insurance premiums and rent for which such deposits were paid into the Insurance and Tax Reserve Account following Beneficiary's receipt of bill, invoices or statements therefor in accordance with the terms hereof. Unless expressly required by applicable law, no amounts in the Insurance and Tax Reserve Account shall be deemed to be escrow or trust funds, and no earnings or interest on such accounts shall be payable to Grantor.

**4.17** **Restrictive Covenants.** Grantor shall not impose any restrictive covenants, easements, or other encumbrance upon the Mortgaged Property, execute or file any subdivision plat affecting the Mortgaged Property or amendment thereto, or consent to the annexation of the Mortgaged Property to any municipality without the prior written consent of Beneficiary. Grantor shall not amend or modify any restrictive covenants affecting the Mortgaged Property without Beneficiary's prior written consent. Grantor shall comply with all obligations and pay all assessments arising under any restrictive covenants applicable to the Mortgaged Property; provided, however, the foregoing covenant shall not amend or modify any other duties and obligations of Grantor or any rights or benefits of Beneficiary under the Loan Documents. Grantor shall not encumber the Mortgaged Property with any easements without the Beneficiary's prior written consent.

**4.18** **Current Financial Statements.** So long as any of the Indebtedness remains outstanding hereunder, Grantor will furnish or cause to be furnished to Beneficiary:

(a)      as soon as available, but in any event within one hundred twenty (120) days after the end of each calendar year, financial statements for Grantor compiled by a certified public accountant, including a balance sheet of Grantor as of the end of each such calendar year and the related consolidated statements of income and retained earnings and consolidated statements of cash flows for such calendar year and the preceding calendar year in comparative form, all with a report thereon and certified by the chief financial officer, or other responsible officer, of Grantor to present fairly, in accordance with GAAP, the information contained therein, and/also accompanied by a certificate of the chief financial officer, or other responsible officer, of Grantor as to the existence of no default under the Loan or Loan Documents during the calendar year covered by the foregoing financial statements;

(b)      as soon as available, but in any event no later than the applicable dates for filing under the Governmental Regulations, all tax returns and extensions thereto prepared for Grantor and Guarantor, each

- 11 -

prepared in accordance with sound accounting principles consistently applied by and certified to be true and correct by the chief financial officer of Grantor, or other responsible officer, and a certified public accountant acceptable to Beneficiary; and

(c)      as soon as available, but in any event within one hundred twenty (120) days after the end of each year, financial and cash flow statements of Guarantor, compiled by a certified public accountant, and all personal tax returns and extensions thereto, of the Guarantor.

(d)      such other information respecting the condition or operations, financial or otherwise, of the Grantor and Guarantor, as the Beneficiary may from time to time reasonably request.

Grantor will keep adequate books and records, in accordance with GAAP, of all of its transactions. Grantor further agrees to allow Beneficiary from time to time to inspect all books and records relating to Grantor's financial condition or to the Indebtedness, and to make and take away copies of such books and records. Failure of Grantor to comply with the foregoing financial reporting requirements shall be an Event of Default under Section 6.1.

4.19      <u>Environment and Hazardous Substances</u>. Grantor will:

(a)      not use, generate, manufacture, produce, store, release, discharge, treat, or dispose of on, under, from or about the Mortgaged Property or transport to or from the Mortgaged Property any Hazardous Substance or allow any other person or entity to do so;

(b)      keep and maintain the Mortgaged Property in compliance with, and shall not cause or permit the Mortgaged Property to be in violation of, any Environmental Law;

(c)      establish and maintain, at Grantor's sole expense, a system to assure and monitor continued compliance with Environmental Laws and the exclusion of Hazardous Substances from the Mortgaged Property, by any and all owners or operators of the Mortgaged Property, which system shall include annual reviews of such compliance by employees or agents of Grantor who are familiar with the requirements of the Environmental Laws and, at the request of Beneficiary no more than once each year, a detailed review of such compliance of the environmental condition of the Mortgaged Property (the "Environmental Update Report") in scope satisfactory to Beneficiary by an environmental consulting firm approved in advance by Beneficiary; provided, however, that if any Environmental Update Report indicates any violation of any Environmental Law or a need for Remedial Work, such system shall include at the request of Beneficiary a detailed review of the status of such violation (a "Supplemental Report") by such environmental consultant. Grantor shall furnish an Environmental Update Report or such Supplemental Report to the Beneficiary within sixty (60) days after Beneficiary so requests, together with such additional information as Beneficiary may reasonably request;

(d)      give prompt written notices to Beneficiary of: (i) any proceeding or inquiry by any governmental or non- governmental entity or person with respect to the presence of any Hazardous Substance on, under, from or about the Mortgaged Property, the migration thereof from or to other property, the disposal, storage, or treatment of any Hazardous Substance generated or used on, under or about the Mortgaged Property, (ii) all claims made or threatened by any third party against Grantor or the Mortgaged Property or any other owner or operator of the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance, and (iii) Grantor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause the Mortgaged Property or any part thereof to be subject to any investigation or cleanup of the Mortgaged Property pursuant to any Environmental Law;

(e)      permit Beneficiary to join and participate in, as a party if it so elects, any legal proceedings or actions initiated with respect to the Mortgaged Property in connection with any Environmental Law or Hazardous Substance, and Grantor shall pay all attorneys' fees incurred by Beneficiary in connection therewith;

(f)      protect, indemnify, defend and hold harmless Beneficiary, their parents, subsidiaries, directors, officers, employees, representatives, agents, successors, and assigns from and against any and all loss, damage, costs, expense, action, causes of action, or liability (including reasonable attorneys' fees and costs) directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under or about the Mortgaged Property, whether known or unknown at the time of the execution hereof, including without limitation (i) all foreseeable consequential damages of any such use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence, and (ii) the costs of any required or necessary environmental investigation or monitoring, any repair, cleanup, or detoxification of the Mortgaged Property, and the preparation and implementation of any closure, remedial, or other required plans. This covenant and the indemnity contained herein shall survive the payment of the Indebtedness, the release of the lien of the Mortgage, or the extinguishment of the lien by foreclosure or action in lieu thereof; and

(g)      in the event that any Remedial Work is reasonably necessary or desirable, Grantor shall commence and thereafter diligently prosecute to completion all such Remedial Work within thirty (30) days after written demand by Beneficiary for performance thereof (or such shorter period of time as may be required under

- 12 -

any Legal Requirement). All Remedial Work shall be performed by contractors approved in advance by Beneficiary, and under the supervision of a consulting engineer approved by Beneficiary. All costs and expenses of such Remedial Work shall be paid by Grantor including, without limitation, Beneficiary's reasonable attorneys' fees and costs incurred in connection with monitoring or review of such Remedial Work. In the event Grantor shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Beneficiary may, but shall not be required to, cause such Remedial Work to be performed, and all costs and expenses thereof, or incurred in connection therewith, shall become part of the Indebtedness.

Beneficiary (by its officers, employees and agents), after the occurrence of an Event of Default, may contract for the services of persons (the "Site Reviewers") to perform environmental site assessments (the "Site Assessments") on the Mortgaged Property for the purpose of determining whether there exists on the Mortgaged Property any environmental condition which could reasonably be expected to result in any liability, cost or expense to the owner, occupier or operator of such Mortgaged Property arising under any Legal Requirements (as defined in the Loan Agreement) relating to Hazardous Substances. The Site Assessments may be performed at any time or times, upon reasonable notice, and under reasonable conditions established by Grantor which do not impede the performance of the Site Assessments. The Site Reviewers are hereby authorized to enter upon the Mortgaged Property for such purposes. The parties understand and hereby agree that the Site Assessments shall be for the sole and exclusive use, benefit and reliance of Beneficiary in assessing the value of its security interest in the Mortgaged Property and will not be relied on by Grantor for any purpose. The Site Reviewers are further authorized to perform both above and below the ground testing for environmental damage or the presence of Hazardous Substances on the Mortgaged Property and such other tests on the Mortgaged Property as may be necessary to conduct the Site Assessments in the reasonable opinion of the Site Reviewers. Grantor will supply to the Site Reviewers such historical and operational information regarding the Mortgaged Property as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and will make available for meetings with the Site Reviewers appropriate personnel having knowledge of such matters. The reasonable cost of performing such Site Assessments shall be paid by Grantor upon demand of Beneficiary if the Hazardous Substances were placed on the Mortgaged Property from or after the date hereof and any such expenses borne by Beneficiary and not immediately reimbursed by Grantor, shall be secured by the Mortgage.

4.20    Indemnity.  Grantor shall indemnify and defend Beneficiary against, and shall hold Beneficiary harmless from, any and all losses, damages (whether general, punitive or otherwise), liabilities, claims, causes of action (whether legal, equitable or administrative), judgments, court costs and legal or other expenses (including attorneys' fees) which Beneficiary may suffer or incur as a direct or indirect consequence of: (i) Beneficiary's performance under the Loan Documents, including without limitation, Beneficiary's exercise or failure to exercise any rights, remedies or powers under any of the Loan Documents; (ii) Grantor's failure to perform any of Grantor's obligations as and when required, including, without limitation, any failure of any representation or warranty of Grantor to be true and correct and any failure by Grantor to satisfy any condition; (iii) any claim or cause of action of any kind by any person or entity to the effect that Beneficiary is in any way responsible or liable for any act or omission by Grantor, whether on account of any theory of derivative liability or otherwise; (iv) any act or omission by Grantor, any contractor, subcontractor or material supplier, engineer, architect or other person or entity, except Beneficiary, with respect to any of the Mortgaged Property; (v) any claim or cause of action of any kind by any person or entity which would have the effect of denying Beneficiary the full benefit or protection of any provision under any of the Loan Documents; (vi) any claim that Beneficiary is responsible for the payment of a fee, commission or other compensation to a broker, finder or packager in connection with the Loan or the Mortgaged Property or the performance of the Loan Documents; (vii) the construction or other work contemplated herein; (viii) the operation, leasing or maintenance of the Mortgaged Property; and (ix) any other action or inaction by, or matter which is the responsibility of, Grantor, except for any such claim, injury, damage, loss or liability caused solely by the willful misconduct or gross negligence of Beneficiary or their agents or employees. Beneficiary's right of indemnity shall not be directly or indirectly limited, prejudiced, impaired or eliminated in any way by any finding or allegation that Beneficiary's conduct is active, passive or subject to any theory of any kind, character or nature for any act or omission by Grantor or any other person or entity except Beneficiary. Notwithstanding the foregoing, Grantor shall not be obligated to indemnify Beneficiary with respect to any intentional tort or act of gross negligence which Beneficiary is personally determined by the judgment of a court of competent jurisdiction (sustained on appeal, if any) to have committed. Grantor shall pay any indebtedness arising under said indemnity to Beneficiary immediately upon demand by Beneficiary. This indemnity shall survive the payment of all amounts payable pursuant to the Note and all Loan Documents. Payment by Beneficiary shall not be a condition precedent to the obligations of Grantor under this indemnity.

4.21    Debt Service Coverage.  Grantor shall maintain at all times a Debt Service Coverage of not less than 1.10 to 1.00.

4.22    Partnership Operation Account.  For so long as the Indebtedness is outstanding, Grantor shall maintain its operating accounts with Beneficiary.

## ARTICLE V

## NEGATIVE COVENANTS

Grantor hereby unconditionally covenants and agrees with Beneficiary until the entire Indebtedness shall have been paid in full and all of the Obligations shall have been fully performed and discharged as follows:

- 13 -

5.1   Use Violations.  Grantor will not use, maintain, operate, or occupy, or allow the use, maintenance, operation, or occupancy of, the Mortgaged Property in any manner which (a) violates any Legal Requirement, (b) may be dangerous unless safeguarded as required by law and/or appropriate insurance, (c) constitutes a public or private nuisance, or (d) makes void, voidable, or cancelable, or increases the premium of, any insurance then in force with respect thereto.

5.2   Waste; Alterations.  Grantor will not commit or permit any waste or impairment of the Mortgaged Property.  Grantor will make promptly all repairs, renewals and replacements necessary to such end.  Grantor will discharge all claims for labor performed and material furnished therefor, and will not suffer any lien of mechanics or materialmen to attach to any part of the Mortgaged Property.  Grantor will guard every part of the Mortgaged Property from removal, destruction and damage and will not do or suffer to be done any act whereby the value of any part of the Mortgaged Property may be lessened, normal wear and tear excepted.  Grantor will not (subject to the provisions of Sections 4.3 and 4.6 hereof), without the prior written consent of Beneficiary, make or permit to be made any alterations or additions to the Mortgaged Property of a material nature.  Beneficiary shall have the right to inspect the Mortgaged Property at any reasonable time to determine, in its discretion, whether Grantor is complying with the foregoing provisions of this paragraph.

5.3   Replacement of Fixtures and Personalty.  Grantor will not, without the prior written consent of Beneficiary, permit any of the Fixtures or Personalty to be removed at any time from the Land or Improvements unless the removed item is removed temporarily for maintenance and repair or, if removed permanently, is replaced by an article of equal suitability and value, owned by Grantor, free and clear of any lien or security interest except as may be approved in writing by Beneficiary.

5.4   Change in Zoning.  Grantor will not seek or acquiesce in a zoning reclassification of all or any portion of the Mortgaged Property or grant or consent to any easement, dedication, plat, or restriction (or allow any easement to become enforceable by prescription), or any amendment or modification thereof, covering all or any portion of the Mortgaged Property, without Beneficiary's prior written consent.

5.5   No Drilling.  Grantor will not, without the prior written consent of Beneficiary, permit any drilling or exploration for or extraction, removal, or production of, any Minerals from the surface or subsurface of the Land regardless of the depth thereof or the method of mining or extraction thereof.

5.6   Transfer of Ownership Interest in Grantor.  Without the prior written consent of Beneficiary, Grantor shall not (i) sell, pledge, encumber, assign or transfer, voluntarily or involuntarily or allow to be sold, pledged, encumbered, assigned or transferred, the Mortgaged Property or any interest in Grantor or (ii) terminate, dissolve or merge with another entity.  Grantor, in requesting the consent of Beneficiary to any such transfer or other transactions, shall provide Beneficiary with such information regarding the proposed transfer or other transaction and the proposed transferee as is necessary for Beneficiary to determine the effect such transfer may have upon (a) Grantor's performance hereunder and (b) Beneficiary's compliance with all applicable banking regulations, including without limitation, the loans to one Grantor requirements.

5.7   No Subordinate Mortgages.  Grantor will not create, place, or permit to be created or placed, or through any act or failure to act, acquiesce in the placing of, or allow to remain any Subordinate Mortgage regardless of whether such Subordinate Mortgage is expressly subordinate to the liens or security interests of the Loan Documents with respect to the Mortgaged Property other than the Permitted Exceptions.

5.8   Change in Assets of Business.  Grantor will not, without obtaining Beneficiary's prior written consent, dispose of any of its assets, other than in the ordinary course of business, or make any changes to the nature or type of Grantor's basic business operations or format.

## ARTICLE VI
## EVENTS OF DEFAULT

6.1   The term "Event of Default," as used herein and in the Loan Documents, shall mean the occurrence or happening, at any time and from time to time, of any one or more of the following:

(a)   Payment of Indebtedness.  If Grantor shall fail, refuse, or neglect to pay, in full, any installment or portion of the Indebtedness as and when the same shall become due and payable, whether at the due date thereof stipulated in the Loan Documents, upon acceleration or otherwise and such failure to pay continues for five (5) days following delivery of written notice thereof to Grantor.

(b)   Performance of Obligations.  If Grantor shall fail, refuse or neglect or cause the failure, refusal, or neglect to comply with, perform and discharge fully and timely any of the Obligations as and when called for and such default remains uncured after the expiration of a period of thirty (30) days following delivery of written notice of default to Grantor.

- 14 -

2002k9 05689

(c)     **False Representation.** If any representation, warranty, or statement made by Grantor, Guarantor, or others in, under, or pursuant to the Loan Documents or any affidavit or other instrument executed or delivered with respect to the Loan Documents or the Indebtedness is determined by Beneficiary to be false or misleading in any material respect as of the date hereof or thereof or shall become so at any time prior to the repayment in full of the Indebtedness.

(d)     **Default Under Other Lien Document.** If Grantor shall default or commit an event of default under and pursuant to any other mortgage or security agreement which covers or affects any part of the Mortgaged Property.

(e)     **Insolvency; Bankruptcy.** If Grantor (i) shall execute an assignment for the benefit of creditors or an admission in writing by Grantor of Grantor's inability to pay, or Grantor's failure to pay, debts generally as the debts become due; or (ii) shall allow the levy against the Mortgaged Property or any part thereof, of any execution, attachment, sequestration or other writ which is not vacated within sixty days after the levy; or (iii) shall allow the appointment of a receiver, trustee or custodian of Grantor or of the Mortgaged Property or any part thereof, which receiver, trustee or custodian is not discharged within sixty (60) days after the appointment; or (iv) files as a debtor a petition, case, proceeding or other action pursuant to, or voluntarily seeks the benefit or benefits of any Debtor Relief Law, or takes any action in furtherance thereof, or (v) files either a petition, complaint, answer or other instrument which seeks to effect a suspension of, or which has the effect of suspending any of the rights or powers of Beneficiary or Trustee granted in the Note, herein or in any Loan Document; or (vi) allows the filing of a petition, case, proceeding or other action against Grantor as a debtor under any Debtor Relief Law or seeks appointment of a receiver, trustee, custodian or liquidator of Grantor or of the Mortgaged Property, or any part thereof, or of any significant portion of Grantor's other property, which filing, action or appointment is not vacated, discharged or otherwise resolved, as applicable, within sixty (60) days after the filing, action or appointment occurs; and (a) Grantor admits, acquiesces in or fails to contest diligently the material allegations thereof, or (b) the petition, case, proceeding or other action results in the entry of an order for relief or order granting the relief sought against Grantor, or (c) the petition, case, proceeding or other action is not permanently dismissed or discharged on or before the earlier of trial thereon or thirty days next following the date of filing; or (vii) fails to have discharged within a period of ten (10) days any attachment, sequestration or similar writ levied upon the Mortgaged Property; or (viii) fails to pay immediately any final money judgment against Grantor.

(f)     **Dissolution or Transfer of Ownership.** If Grantor, any Constituent Party, or any Guarantor, shall die, dissolve, terminate or liquidate, or merge with or be consolidated into any other entity; provided that, in the case of the death of any Guarantor, no Event of Default shall occur if, within thirty (30) days thereafter a substitute Guarantor with financial status comparable to the deceased Guarantor and otherwise satisfactory to Lender shall assume all obligations of Guarantor in respect of the Indebtedness under documentation in form and substance acceptable to Beneficiary in Beneficiary's sole discretion. If Grantor is a corporation, the sale, pledge, encumbrance or assignment of its stock without the prior written consent of Lender. If Borrower is a partnership, the sale, pledge, encumbrance or assignment of any of its partnership interests or the withdrawal from or admission into it of any general partner without the prior written consent of Lender.

(g)     **No Further Encumbrances.** If Grantor creates, places, or permits to be created or placed, or through any act or failure to act, acquiesces in the placing of, or allows to remain, any Subordinate Mortgage, regardless of whether such Subordinate Mortgage is expressly subordinate to the liens or security interests of the Loan Documents, with respect to the Mortgaged Property, other than the Permitted Exceptions. If Grantor, without the prior written consent of Lender, grants any easement, files any plat, condominium declaration or restriction or otherwise encumbers the Mortgaged Property, unless such action is expressly permitted upon the Loan Documents.

(h)     **Disposition of Mortgaged Property and Beneficial Interest in Grantor.** If Grantor makes a Disposition, without the prior written consent of Beneficiary.

(i)     **Condemnation.** If any condemnation proceeding is instituted or threatened which would, in Beneficiary's sole judgment, materially impair the use and enjoyment of the Mortgaged Property for its intended purposes.

(j)     **Destruction of Improvements.** If the Mortgaged Property is demolished, destroyed, or substantially damaged so that, in Beneficiary's judgment, it cannot be restored or rebuilt with available funds to the condition existing immediately prior to such demolition, destruction, or damage within a reasonable period of time.

(k)     **Material Adverse Change.** If Beneficiary reasonably determines that any event shall have occurred that has or could be expected to have a Material Adverse Effect.

(l)     **Abandonment.** If Grantor abandons all or any portion of the Mortgaged Property.

- 15 -

(m)  Guarantor's or Constituent Party's Default.  The occurrence of any event referred to in Sections 6.1(e) and 6.1(m) hereof with respect to any Guarantor, Constituent Party or other person or entity obligated in any manner to pay or perform the Indebtedness or Obligations, respectively, or any part thereof (as if such Guarantor, Constituent Party or other person or entity were the "Grantor" in such Sections).

(n)  Default by Partner or Member.  If Borrower is a partnership, a default by any partner under Borrower's partnership agreement.  If Borrower is a limited liability company, a default by any member under Borrower's articles of organization or regulations.

(o)  Event of Default in Loan Documents.  An Event of Default as defined in any of the Loan Documents.

(p)  Cross-Default with Other Loans.  If Grantor defaults, and fails to cure said default within any applicable cure period, in the payment of any other indebtedness or the performance of any other obligations owed to Beneficiary in addition to those evidenced by the Loan Documents.

(q)  Default Under Ground Lease.  If a default exists under any Ground Lease or any Ground Lease is terminated for any reason.

6.2  Notice to Ground Lessor; Ground Lessor's Cure Rights.  Upon the occurrence of any event or condition which constitutes an Event of Default or which, with the passage of time or the giving of notice, or both, would constitute an Event of Default, then, prior to any acceleration of the Indebtedness or posting of notice of foreclosure as a result of such event or condition, the Beneficiary shall deliver written notice of such event or condition to the Ground Lessor and Ground Lessor shall have a period of fifteen (15) days in which to cure any Event of Default arising out of any such event or condition.  During the existence of any such Event of Default and prior to any foreclosure of this Deed of Trust, the Ground Lessor shall have the option (but not the obligation) of assuming the Grantor's obligations under the Loan secured by this Deed of Trust.  Such assumption by Ground Lessor shall operate to cure any default under the terms of this Deed of Trust or any of the Loan Documents or delay in any way any foreclosure of this Deed of Trust.

## ARTICLE VII

## REMEDIES

7.1  Beneficiary's Remedies Upon Default.  Upon the occurrence of an Event of Default or any event or circumstance which, with the lapse of time, or the giving of notice, or both, would constitute an Event of Default, Beneficiary may, at Beneficiary's option, and by or through Trustee, by Beneficiary itself or otherwise, do any one or more of the following:

(a)  Right to Perform Grantor's Covenants.  If Grantor has failed to keep or perform any covenant whatsoever contained in this Deed of Trust or the other Loan Documents, Beneficiary may, but shall not be obligated to any person to do so, perform or attempt to perform said covenant, and any payment made or expense incurred in the performance or attempted performance of any such covenant shall be and become a part of the Indebtedness, and Grantor promises, upon demand, to pay to Beneficiary, at the place where the Note is payable, all sums so advanced or paid by Beneficiary, with interest from the date when paid or incurred by Beneficiary at the Default Rate.  No such payment by Beneficiary shall constitute a waiver of any Event of Default.  In addition to the liens and security interests hereof, Beneficiary shall be subrogated to all rights, titles, liens, and security interests securing the payment of any debt, claim, tax, or assessment for the payment of which Beneficiary may make an advance, or which Beneficiary may pay.

(b)  Right of Entry.  Beneficiary may, prior or subsequent to the institution of any foreclosure proceedings, enter upon the Mortgaged Property, or any part thereof, and take exclusive possession of the Mortgaged Property and of all books, records, and accounts relating thereto and to exercise without interference from Grantor any and all rights which Grantor has with respect to the management, possession, operation, protection, or preservation of the Mortgaged Property.

(c)  Right to Accelerate.  Beneficiary may, without notice, demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration, or any other notice or any other action, all of which are hereby waived by Grantor and all other parties obligated in any manner whatsoever on the Indebtedness, declare the entire unpaid balance of the Indebtedness immediately due and payable, and upon such declaration, the entire unpaid balance of the Indebtedness shall be immediately due and payable.  The failure to exercise any remedy available to the Beneficiary shall not be deemed to be a waiver of any rights or remedies of the Beneficiary under the Loan Documents, at law or in equity.

- 16 -

7000249 05691

(d)  Foreclosure-Power of Sale.  Beneficiary may request Trustee to proceed with foreclosure under the power of sale which is hereby conferred, such foreclosure to be accomplished in accordance with the following provisions:

(i)  Public Sale.  Trustee is hereby authorized and empowered, and it shall be Trustee's special duty, upon such request of Beneficiary, to sell the Mortgaged Property, or any part thereof, at public auction to the highest bidder for cash, with or without having taken possession of same.  Any such sale (including notice thereof) shall comply with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust.  If there is no statute in force at the time of the sale governing sales of Texas real property under powers of sale conferred by deeds of trust, such sale shall comply with applicable law, at the time of the sale, governing sales of Texas real property under powers of sale conferred by deeds of trust.

(ii)  Right to Require Proof of Financial Ability and/or Cash Bid.  At any time during the bidding, the Trustee may require a bidding party (A) to disclose its full name, state and city of residence, occupation, and specific business office location, and the name and address of the principal the bidding party is representing (if applicable), and (B) to demonstrate reasonable evidence of the bidding party's financial ability (or, if applicable, the financial ability of the principal of such bidding party), as a condition to the bidding party submitting bids at the foreclosure sale.  If any such bidding party (the "Questioned Bidder") declines to comply with the Trustee's requirement in this regard, or if such Questioned Bidder does respond but the Trustee, in Trustee's sole and absolute discretion, deems the information or the evidence of the financial ability of the Questioned Bidder (or, if applicable, the principal of such bidding party) to be inadequate, then the Trustee may continue the bidding with reservation; and in such event (1) the Trustee shall be authorized to caution the Questioned Bidder concerning the legal obligations to be incurred in submitting bids, and (2) if the Questioned Bidder is not the highest bidder at the sale, or if having been the highest bidder the Questioned Bidder fails to deliver the cash purchase price payment promptly to the Trustee, all bids by the Questioned Bidder shall be null and void.  The Trustee may, in Trustee's sole and absolute discretion, determine that a credit bid may be in the best interest of the Grantor and Beneficiary, and elect to sell the Mortgaged Property for credit or for a combination of cash and credit; provided, however, that the Trustee shall have no obligation to accept any bid except an all cash bid.  In the event the Trustee requires a cash bid and cash is not delivered within a reasonable time after conclusion of the bidding process, as specified by the Trustee, but in no event later than 3:45 p.m. local time on the day of sale, then said contingent sale shall be null and void, the bidding process may be recommenced, and any subsequent bids or sale shall be made as if no prior bids were made or accepted.

(iii)  Sale Subject to Unmatured Indebtedness.  In addition to the rights and powers of sale granted under the preceding provisions of this subsection, if default is made in the payment of any installment of the Indebtedness, Beneficiary may, at Beneficiary's option, at once or at any time thereafter while any matured installment remains unpaid, without declaring the entire Indebtedness to be due and payable, orally or in writing direct Trustee to enforce this trust and to sell the Mortgaged Property subject to such unmatured Indebtedness and to the rights, powers, liens, security interests, and assignments securing or providing recourse for payment of such unmatured Indebtedness, in the same manner, all as provided in the preceding provisions of this subsection.  Sales made without maturing the Indebtedness may be made hereunder whenever there is a default in the payment of any installment of the Indebtedness, without exhausting the power of sale granted hereby, and without affecting in any way the power of sale granted under this subsection, the unmatured balance of the Indebtedness or the rights, powers, liens, security interests, and assignments securing or providing recourse for payment of the Indebtedness.

(iv)  Partial Foreclosure.  Sale of a part of the Mortgaged Property shall not exhaust the power of sale, but sales may be made from time to time until the Indebtedness is paid and the Obligations are performed and discharged in full.  It is intended by each of the foregoing provisions of this subsection that Trustee may, after any request or direction by Beneficiary, sell not only the Land and the Improvements, but also the Fixtures and Personalty and other interests constituting a part of the Mortgaged Property or any part thereof, along with the Land and the Improvements or any part thereof, as a unit and as a part of a single sale, or may sell at any time or from time to time any part or parts of the Mortgaged Property separately from the remainder of the Mortgaged Property.  It shall not be necessary to have present or to exhibit at any sale any of the Mortgaged Property.

(v)  Trustee's Deeds.  After any sale under this subsection, Trustee shall make good and sufficient deeds, assignments, and other conveyances to the purchaser or purchasers

- 17 -

thereunder in the name of Grantor, conveying the Mortgaged Property or any part thereof so sold to the purchaser or purchasers with general warranty of title by Grantor. It is agreed that in any deeds, assignments or other conveyances given by Trustee, any and all statements of fact or other recitals therein made as to the identity of Beneficiary, the occurrence or existence of any Event of Default, the notice of intention to accelerate, or acceleration of, the maturity of the Indebtedness, the request to sell, notice of sale, time, place, terms and manner of sale, and receipt, distribution, and application of the money realized therefrom, the due and proper appointment of a substitute trustee, and without being limited by the foregoing, any other act or thing having been duly done by or on behalf of Beneficiary or by or on behalf of Trustee, shall be taken by all courts of law and equity as *prima facie* evidence that such statements or recitals state true, correct, and complete facts and are without further question to be so accepted, and Grantor does hereby ratify and confirm any and all acts that Trustee may lawfully do in the premises by virtue hereof.

(e) **Beneficiary's Judicial Remedies.** Beneficiary, or Trustee, upon written request of Beneficiary, may proceed by suit or suits, at law or in equity, to enforce the payment of the Indebtedness and the performance and discharge of the Obligations in accordance with the terms hereof, of the Note, and the other Loan Documents, to foreclose the liens and security interests of this Deed of Trust as against all or any part of the Mortgaged Property, and to have all or any part of the Mortgaged Property sold under the judgement or decree of a court of competent jurisdiction. This remedy shall be cumulative of any other nonjudicial remedies available to the Beneficiary with respect to the Loan Documents. Proceeding with a request or receiving a judgment for legal relief shall not be or be deemed to be an election of remedies or bar any available nonjudicial remedy of the Beneficiary.

(f) **Beneficiary's Right to Appointment of Receiver.** Beneficiary, as a matter of right and without regard to the sufficiency of the security for repayment of the Indebtedness and performance and discharge of the Obligations, without notice to Grantor and without any showing or insolvency, fraud, or mismanagement on the part of Grantor, and without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, shall be entitled to the appointment of a receiver or receivers of the Mortgaged Property or any part thereof and of the Rents, and Grantor hereby irrevocably consents to the appointment of a receiver or receivers. Any receiver appointed pursuant to the provisions of this subsection shall have the usual powers and duties of receivers in such matters.

(g) **Beneficiary's Uniform Commercial Code Remedies.** The Beneficiary may exercise its rights of enforcement with respect to Fixtures and Personalty under the Code, and in conjunction with, in addition to or in substitution for the rights and remedies under the Code the Beneficiary may:

(i) without demand or notice to Grantor, enter upon the Mortgaged Property to take possession of, assemble, receive, and collect the Personalty, or any part thereof, or to render it unusable;

(ii) the Beneficiary may require Grantor to assemble the Personalty and make it available at a place the Beneficiary designates which is mutually convenient to allow the Beneficiary to take possession or dispose of the Personalty;

(iii) written notice mailed to Grantor as provided herein at least ten (10) days prior to the date of public sale of the Personalty or prior to the date after which private sale of the Personalty will be made shall constitute reasonable notice;

(iv) any sale made pursuant to the provisions of this subsection shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with the sale of the other Mortgaged Property under power of sale as provided herein upon giving the same notice with respect to the sale of the Personalty hereunder as is required for such sale of the other Mortgaged Property under power of sale, and such sale shall be deemed to be pursuant to a security agreement covering both real and personal property under 9.501(d) of the Code;

(v) in the event of a foreclosure sale, whether made by the Trustee under the terms hereof, or under judgment of a court, the Personalty and the other Mortgaged Property may, at the option of the Beneficiary, be sold as a whole;

(vi) it shall not be necessary that the Beneficiary take possession of the Personalty, or any part thereof, prior to the time that any sale pursuant to the provisions of this subsection is conducted, and it shall not be necessary that the Personalty or any part thereof be present at the location of such sale;

(vii) prior to application of proceeds of disposition of the Personalty to the Indebtedness, such proceeds shall be applied to the reasonable expenses of retaking, holding.

- 18 -

preparing for sale or lease, selling, leasing and the like, and the reasonable attorneys' fees and legal expenses incurred by the Beneficiary;

(viii)    after notification, if any, hereafter provided in this subsection, Beneficiary may sell, lease, or otherwise dispose of the Personalty, or any part thereof, in one or more parcels at public or private sale or sales, at Beneficiary's offices or elsewhere, for cash, on credit, or for future delivery. Upon the request of Beneficiary, Grantor shall assemble the personalty and make it available to Beneficiary at any place designated by Beneficiary that is reasonably convenient to Grantor and Beneficiary. Grantor agrees that Beneficiary shall not be obligated to give more than ten (10) days' written notice of the time and place of any public sale or of the time after which any private sale may take place and that such notice shall constitute reasonable notice of such matters. Grantor shall be liable for all expenses of retaking, holding, preparing for sale, or the like, and all attorneys' fees, legal expenses, and all other costs and expenses incurred by Beneficiary in connection with the collection of the Indebtedness and the enforcement of Beneficiary's rights under the Loan Documents. Beneficiary shall apply the proceeds of the sale of the Personalty against the Indebtedness in accordance with the provisions of Section 7.4 of this Deed of Trust. Grantor shall remain liable for any deficiency if the proceeds of any sale or disposition of the Personalty are insufficient to pay the Indebtedness in full. Grantor waives all rights of marshalling in respect of the Personalty;

(ix)    any and all statements of fact or other recitals made in any bill of sale or assignment or other instrument evidencing any foreclosure sale hereunder, the nonpayment of the Indebtedness, the occurrence of any Event of Default, the Beneficiary having declared all or a portion of such Indebtedness to be due and payable, the notice of time, place, and terms of sale and of the properties to be sold having been duly given, or any other act or thing having been duly done by the Beneficiary, shall be taken as prima facie evidence of the truth of the facts so stated and recited; and

(x)    the Beneficiary may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by the Beneficiary, including the sending of notices and the conduct of the sale, but in the name and on behalf of the Beneficiary.

(h)    Rights Relating to Leases and Rents. Grantor has, pursuant to Article IX of this Deed of Trust, assigned, as collateral, to Beneficiary all Rents under each of the Leases covering all or any portion of the Mortgaged Property. Beneficiary, or Trustee on Beneficiary's behalf, may at any time, and without notice, either in person, by agent, or by receiver to be appointed by a court, enter and take possession of the Mortgaged Property or any part thereof, and, in its own name, sue for or otherwise collect the Rents. Grantor hereby agrees with Beneficiary, upon notice from Trustee or Beneficiary to Grantor of the occurrence of an Event of Default, terminates the limited license granted to Grantor in Section 9.2 hereof, and thereafter direct the lessees under the Leases to pay direct to Beneficiary the Rents due and to become due under the Leases and attorn in respect of all other obligations thereunder direct to Beneficiary, or Trustee on Beneficiary's behalf, without any obligation on their part to determine whether an Event of Default does in fact exist or has in fact occurred. All Rents collected by Beneficiary, or Trustee acting on Beneficiary's behalf, shall be applied as provided for in Section 7.4 of this Deed of Trust; provided, however, that if the costs, expenses, and attorneys' fees shall exceed the amount of Rents collected, the excess shall be added to the Indebtedness, shall bear interest at the Default Rate, and shall be immediately due and payable. The entering upon and taking possession of the Mortgaged Property, the collection of Rents, and the application thereof as aforesaid shall not cure or waive any Event of Default or notice of default, if any, hereunder nor invalidate any act done pursuant to such notice, except to the extent any such default is fully cured. Failure or discontinuance by Beneficiary, or Trustee on Beneficiary's behalf, at any time or from time to time, to collect said Rents shall not in any manner impair the subsequent enforcement by Beneficiary, or Trustee on Beneficiary's behalf, of the right, power and authority herein conferred upon it. Nothing contained herein, nor the exercise of any right, power, or authority herein granted to Beneficiary, or Trustee on Beneficiary's behalf, shall be, or shall be construed to be, an affirmation by it of any tenancy, lease, or option, nor an assumption of liability under, nor the subordination of, the lien or charge of this Deed of Trust, to any such tenancy, lease, or option, nor an election of judicial relief, if any such relief is requested or obtained as to Leases or Rents, with respect to the Mortgaged Property or any other collateral given by Grantor to Beneficiary. In addition, from time to time, Beneficiary may elect, and notice hereby is given to each lessee under any Lease, to subordinate the lien of this Deed of Trust to any Lease by unilaterally executing and recording an instrument of subordination, and upon such election the lien of this Deed of Trust shall be subordinate to the Lease identified in such instrument of subordination; provided, however, in each instance such subordination will not affect or be applicable to, and expressly excludes any lien, charge, encumbrance, security interest, claim, easement, restriction, option, covenant and other rights, titles, interests or estates of any nature whatsoever with respect to all or any portion of the Mortgaged Property to the extent that the same may have arisen or intervened during the period between the recordation of this Deed of Trust and the execution of the Lease identified in such instrument of subordination.

- 19 -

(i)     **Other Rights.** Beneficiary (i) may surrender the insurance policies maintained pursuant to Section 4.7 hereof or any part thereof, and upon receipt shall apply the unearned premiums as a credit on the Indebtedness, in accordance with the provisions of Section 7.4 hereof, and, in connection therewith, Grantor hereby appoints Beneficiary as agent and attorney-in-fact (which is coupled with an interest and is therefore irrevocable) for Grantor to collect such premiums; and (ii) apply the reserve for Impositions and insurance premiums, if any, required by the provisions of this Deed of Trust, toward payment of the Indebtedness; and (iii) shall have and may exercise any and all other rights and remedies which Beneficiary may have at law or in equity, or by virtue of any Loan Document or under the Code, or otherwise.

(j)     **Beneficiary as Purchaser.** Beneficiary may be the purchaser of the Mortgaged Property or any part thereof, at any sale thereof, whether such sale be under the power of sale herein vested in Trustee or upon any other foreclosure of the liens and security interests hereof, or otherwise, and Beneficiary shall, upon any such purchase, acquire good title to the Mortgaged Property so purchased, free of the liens and security interests hereof, unless the sale was made subject to an unmatured portion of the Indebtedness. The Beneficiary, as purchaser, shall be treated in the same manner as any third party purchaser and the proceeds of the Beneficiary's purchase shall be applied in accordance with Section 7.4 of this Deed of Trust.

    7.2     **Other Rights of Beneficiary.** Should any part of the Mortgaged Property come into the possession of Beneficiary, whether before or after default, Beneficiary may (for itself or by or through other persons, firms, or entities) hold, lease, manage, use, or operate the Mortgaged Property for such time and upon such terms as Beneficiary may deem prudent under the circumstances (making such repairs, alterations, additions, and improvements thereto and taking such other action as Beneficiary may from time to time deem necessary or desirable) for the purpose of preserving the Mortgaged Property or its value, pursuant to the order of a court of appropriate jurisdiction or in accordance with any other rights held by Beneficiary in respect of the Mortgaged Property. Grantor covenants to promptly reimburse and pay to Beneficiary on demand, at the place where the Note is payable, the amount of all reasonable expenses (including without limitation the cost of any insurance, Impositions, or other charges) incurred by Beneficiary in connection with Beneficiary's custody, preservation, use, or operation of the Mortgaged Property, together with interest thereon from the date incurred by Beneficiary at the Default Rate; and all such expenses, costs, taxes, interest, and other charges shall be and become a part of the Indebtedness. It is agreed, however, that the risk of loss or damage to the Mortgaged Property is on Grantor, and Beneficiary shall have no liability whatsoever for decline in value of the Mortgaged Property, for failure to obtain or maintain insurance, or for failure to determine whether insurance in force is adequate as to amount or as to the risks insured. Possession by the Beneficiary shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Mortgaged Property or collateral not in Beneficiary's possession.

    7.3     **Possession After Foreclosure.** If the liens or security interests hereof shall be foreclosed by power of sale granted herein, by judicial action, or otherwise, the purchaser at any such sale shall receive, as an incident to purchaser's ownership, immediate possession of the property purchased, and if Grantor or Grantor's successors shall hold possession of said property or any part thereof subsequent to foreclosure, Grantor and Grantor's successors shall be considered as tenants at sufferance of the purchaser at foreclosure sale (without limitation of other rights or remedies, at a reasonable rental per day, due and payable daily, based upon the value of the portion of the Mortgaged Property so occupied and sold to such purchaser), and anyone occupying such portion of the Mortgaged Property, after demand is made for possession thereof, shall be guilty of forcible detainer and shall be subject to eviction and removal, forcible or otherwise, with or without process of law, and all damages by reason thereof are hereby expressly waived.

    7.4     **Application of Proceeds.** The proceeds from any sale, lease, or other disposition made pursuant to this Article VII, or the proceeds from the surrender of any insurance policies pursuant hereto, or any Rents collected by Beneficiary from the Mortgaged Property, or the reserve for Impositions and insurance premiums, if any, required by the provisions of this Deed of Trust or sums received pursuant to Section 8.1 hereof, or proceeds from insurance which Beneficiary elects to apply to the Indebtedness pursuant to Section 8.2 hereof, shall be applied by Trustee, or by Beneficiary, as the case may be, to the Indebtedness in the following order and priority: (1) to the payment of all expenses of advertising, selling, and conveying the Mortgaged Property or part thereof, and/or prosecuting or otherwise collecting Rents, proceeds, premiums, or other sums including reasonable attorneys' fees and a reasonable fee or commission to Trustee, not to exceed five percent of the proceeds thereof or sums so received; (2) to the remainder of the Indebtedness as follows: first, to the remaining accrued but unpaid interest, second, to the matured portion of principal of the Indebtedness, and third, to prepayment of the unmatured portion, if any, of principal of the Indebtedness applied to installments of principal in inverse order of maturity; and (3) the balance, if any and to the extent applicable, remaining after the full and final payment of the Indebtedness and full performance and discharge of the Obligations to the holder or beneficiary of any inferior liens covering the Mortgaged Property, if any, in order of the priority of such inferior liens (Trustee and Beneficiary shall hereby be entitled to rely exclusively upon a commitment for title insurance issued to determine such priority); and (4) the cash balance, if any, to the Grantor. The application of proceeds of sale or other proceeds as otherwise provided herein shall be deemed to be a payment of the Indebtedness like any other payment.

- 20 -

The balance of the Indebtedness remaining unpaid, if any, shall remain fully due and owing in accordance with the terms of the Note or the other Loan Documents.

       7.5     <u>Abandonment of Sale.</u> In the event a foreclosure hereunder is commenced by Trustee in accordance with <u>Subsection 7.1(d)</u> hereof, at any time before the sale, Trustee may abandon the sale, and Beneficiary may then institute suit for the collection of the Indebtedness and for the foreclosure of the liens and security interests hereof and of the Loan Documents. If Beneficiary should institute a suit for the collection of the Indebtedness and for a foreclosure of the liens and security interests, Beneficiary may, at any time before the entry of a final judgment in said suit, dismiss the same and require Trustee to sell the Mortgaged Property or any part thereof in accordance with the provisions of this Deed of Trust.

       7.6     <u>Payment of Fees.</u> If the Note or any other part of the Indebtedness shall be collected or if any of the Obligations shall be enforced by legal proceedings, whether through a probate or bankruptcy court or otherwise, or shall be placed in the hands of an attorney for collection after maturity, whether matured by the expiration of time or by an option given to the Beneficiary to mature same, or if Beneficiary becomes a party to any suit where this Deed of Trust or the Mortgaged Property or any part thereof is involved, Grantor agrees to pay Beneficiary's attorneys' fees and expenses incurred, and such fees shall be and become a part of the Indebtedness and shall bear interest from the date such costs are incurred at the Default Rate.

       7.7     <u>Miscellaneous.</u>

     (a)     In case Beneficiary shall have proceeded to invoke any right, remedy, or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon same for any reason, Beneficiary shall have the unqualified right so to do and, in such event, Grantor and Beneficiary shall be restored to their former positions with respect to the Indebtedness, the Loan Documents, the Mortgaged Property or otherwise, and the rights, remedies, recourses and powers of Beneficiary shall continue as if same had never been invoked.

     (b)     In addition to the remedies set forth in this Article, upon the occurrence of an Event of Default, the Beneficiary and Trustee shall, in addition, have all other remedies available to them at law or in equity.

     (c)     All rights, remedies, and recourses of Beneficiary granted in the Note, this Deed of Trust, the other Loan Documents, any other pledge of collateral, or otherwise available at law or equity: (i) shall be cumulative and concurrent; (ii) may be pursued separately, successively, or concurrently against Grantor, the Mortgaged Property, or any one or more of them, at the sole discretion of Beneficiary; (iii) may be exercised as often as occasion therefor shall arise, it being agreed by Grantor that the exercise or failure to exercise any of same shall in no event be construed as a waiver or release thereof or of any other right, remedy, or recourse; (iv) shall be nonexclusive; (v) shall not be conditioned upon Beneficiary exercising or pursuing any remedy in relation to the Mortgaged Property prior to Beneficiary bringing suit to recover the Indebtedness or suit on the Obligations; and (vi) in the event Beneficiary elects to bring suit on the Indebtedness and/or the Obligations and obtains a judgment against Grantor prior to exercising any remedies in relation to Mortgaged Property, all liens and security interests, including the lien of this Deed of Trust, shall remain in full force and effect and may be exercised at Beneficiary's option.

     (d)     Beneficiary may release, regardless of consideration, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating, or releasing the lien or security interests evidenced by this Deed of Trust or the other Loan Documents or affecting the obligations of Grantor or any other party to pay the Indebtedness or perform and discharge the Obligations. For payment of the Indebtedness, Beneficiary may resort to any of the collateral therefor in such order and manner as Beneficiary may elect. No collateral heretofore, herewith, or hereafter taken by Beneficiary shall in any manner impair or affect the collateral given pursuant to the Loan Documents, and all collateral shall be taken, considered, and held as cumulative.

     (e)     Grantor hereby irrevocably and unconditionally waives and releases: (i) all benefits that might accrue to Grantor by virtue of any present or future law exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption, or extension of time for payment; (ii) all notices of any Event of Default or of Trustee's exercise of any right, remedy, or recourse provided for under the Loan Documents; and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

     (f)     Grantor and Beneficiary mutually agree that there are no, nor shall there be any, implied covenants of good faith and fair dealing or other similar covenants or agreements in this Deed of Trust and the other Loan Documents. All agreed contractual duties are set forth in this Deed of Trust, the Note, and the other Loan Documents.

202 49 05696

(g)     The remedies in this Article VII are available under and governed by the real property laws of Texas and are not governed by the personal property laws of Texas, including but not limited to, the power to dispose of personal property in a commercially reasonable manner under Section 9,504 of the Code.

(h)     Notwithstanding any provision in this Article VII or elsewhere in this Deed of Trust or any rights or remedies granted by this Deed of Trust, Lender does not waive and expressly reserves all rights and benefits now or hereafter accruing to or available to Lender under the "security interest exception" set forth in 40 C.F.R. Section 300.1100. No action taken by Lender pursuant to this Deed of Trust or any other Loan Document shall be deemed or construed to be a waiver of any rights under the "secured creditor exemption" or "secured party exemption" under CERCLA.

ARTICLE VIII

SPECIAL PROVISIONS

8.1     Condemnation Proceeds. Beneficiary shall be entitled to receive any and all sums which may be awarded and become payable to Grantor for condemnation of the Mortgaged Property or any part thereof, for public or quasi-public use, or by virtue of private sale in lieu thereof. and any sums which may be awarded or become payable to Grantor for damages caused by public works or construction on or near the Mortgaged Property. All such sums are hereby assigned to Beneficiary, and Grantor shall, upon request of Beneficiary, make, execute, acknowledge, and deliver any and all additional assignments and documents as may be necessary from time to time to enable Beneficiary to collect and receive for any such sums. Beneficiary shall not be, under any circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any of such sums. Any sums received by Beneficiary as a result of condemnation shall be applied to the Indebtedness in accordance with the provision of Section 7.4 hereof.

8.2     Insurance Proceeds. The proceeds of any and all insurance upon the Mortgaged Property (other than proceeds of general public liability insurance) shall be collected by Beneficiary. and Beneficiary shall have the option, in Beneficiary's sole discretion, to apply any proceeds so collected either to the restoration of the Mortgaged Property. in the amounts, manner, method and pursuant to such requirements and documents as Beneficiary may require, or to the liquidation of the Indebtedness in accordance with the provisions of Section 7.4 hereof.

Notwithstanding the foregoing provisions of this Section 8.2, subject to the conditions contained in this paragraph, Beneficiary agrees to make available to Grantor the proceeds of the casualty insurance for restoration of the premises for any damage up to fifty percent (50%) of the replacement cost of the Improvements (as such amounts are determined by Beneficiary); provided that, as a condition to Beneficiary's obligation to release such proceeds for restoration purposes (i) there shall be no Event of Default or event which, with the giving of notice or passage of time, or both, would constitute an Event of Default then in existence under the Loan Documents or under the Ground Leases and (ii) Grantor provides to Beneficiary evidence reasonably satisfactory to Beneficiary that all such restoration work will be completed on or before the maturity date of the Note. In the event any casualty insurance proceeds are to be disbursed for purposes of financing restoration of the Improvements, such proceeds shall be disbursed as the restoration work progresses and Beneficiary may establish such procedures, guidelines or requirements as Beneficiary determines to be appropriate, in Beneficiary's discretion, for the disbursement of such proceeds.

8.3     Reserve for Impositions and Insurance Premiums. On the first day of each calendar month prior to the maturity of the Note, Grantor shall pay to Beneficiary (i) a sum equal to the premiums that will next become due and payable on the insurance policies covering Grantor, the Mortgaged Property or any part thereof or such other insurance policies required hereby or by the Loan Documents, plus (ii) Impositions next due on the Mortgaged Property or any part thereof as estimated by Beneficiary, all sums paid previously to Beneficiary therefor, divided by the number of months to elapse before one month prior to the date when each of such premiums and Impositions will become due, such sums to be held by Beneficiary without interest to Grantor, unless interest is required by applicable law, for the purposes of paying such premiums and Impositions. In addition, on the 15ᵗʰ day of each month, beginning on January 15, 2001, Grantor shall pay to Beneficiary all payments due which become due under the Ground Leases on the first day of the next following month. Any excess reserve shall, at the discretion of Beneficiary, be credited by Beneficiary on subsequent reserve payments or subsequent payments to be made on the Note by the maker thereof, and any deficiency shall be paid by Grantor to Beneficiary on or before the date when Beneficiary demands such payment to be made, but in no event after the date when such premiums and Impositions shall become delinquent. In the event there exists a deficiency in such fund or reserve at any time when Impositions or insurance premiums are due and payable, Beneficiary may, but shall not be obligated to, advance the amount of such deficiency on behalf of Grantor and such amounts so advanced shall become a part of the Indebtedness, shall be immediately due and payable, and shall bear interest at the Default Rate from the date of such advance through and including the date of repayment. Transfer of legal title to the Mortgaged Property shall automatically transfer to the holder of legal title to the Mortgaged Property the interest of Grantor in all sums deposited with Beneficiary under the provisions hereof or otherwise.

- 22 -

8.4     **Indemnity.** If Beneficiary is made a party defendant to any litigation concerning this Deed of Trust or the Mortgaged Property or any interest therein, or the occupancy thereof by Grantor, then Grantor shall indemnify, defend, and hold harmless Beneficiary from all liability, claim, loss, cost, or expense by reason of such litigation, including without limitation attorneys' fees and expenses incurred by Beneficiary in any such litigation, whether or not any such litigation is prosecuted to judgment. If Beneficiary brings an action against Grantor hereunder, Grantor shall pay to Beneficiary, Beneficiary's attorneys' fees and expenses, and the right to such attorneys' fees and expenses shall be deemed to have accrued on the commencement of such action, and shall be enforceable whether or not such action is prosecuted to judgment. If Grantor breaches any term of this Deed of Trust or if Beneficiary believes it is necessary or desirable to take any action to protect or enforce the lien or security interest hereby created in the Mortgaged Property or the covenants herein or in the other Loan Documents, Beneficiary may employ an attorney or attorneys to protect its rights hereunder and thereunder, and in the event of such employment, Grantor shall pay Beneficiary the attorneys' fees and expenses incurred by Beneficiary, whether or not an action is actually commenced against Grantor by reason of such breach and including, without limitation, a judicial foreclosure action or a foreclosure proceeding pursuant to the power of sale provided herein.

8.5     **Subrogation.** Grantor waives any and all right to claim, recover, or subrogation against Beneficiary or its officers, directors, employees, agents, attorneys, or representatives for loss or damage to Grantor, the Mortgaged Property, Grantor's property or the property of others under Grantor's control from any cause insured against or required to be insured against by the provisions of the Loan Documents.

8.6     **Waiver of Setoff.** The Indebtedness, or any part thereof, shall be paid by Grantor without notice, demand, counterclaim, setoff, deduction, or defense and without abatement, suspension, deferment, diminution, or reduction by reason of: (i) any damage to, destruction of, or any condemnation or similar taking of the Mortgaged Property; (ii) any restriction or prevention of or interference with any use of the Mortgaged Property; (iii) any title defect or encumbrance or any eviction from the Mortgaged Property by superior title or otherwise; (iv) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, or other like proceeding relating to Trustee, Beneficiary, or Grantor, or any action taken with respect to this Deed of Trust by any trustee or receiver of Beneficiary or Grantor, or by any court, in any such proceeding; (v) any claim which Grantor has or might have against Trustee or Beneficiary; (vi) any default or failure on the part of Beneficiary to perform or comply with any of the terms hereof or of any other agreement with Grantor; or (vii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing, whether or not Grantor shall have notice or knowledge of any of the foregoing. Except as expressly provided herein, Grantor waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution, or reduction of the Indebtedness.

8.7     **Setoff.** Beneficiary shall be entitled to exercise both the rights of setoff and banker's lien, if applicable, against the interest of Grantor in and to each and every account and other property of Grantor which are in the possession of Beneficiary to the full extent of the outstanding balance of the Indebtedness.

8.8     **Consent to Disposition.** It is expressly agreed that Beneficiary may predicate Beneficiary's decision to grant or withhold consent to a Disposition on such terms and conditions as Beneficiary may require, in Beneficiary's sole discretion, including without limitation (i) consideration of the creditworthiness of the party to whom such Disposition will be made and its management ability with respect to the Mortgaged Property, (ii) consideration of whether the security for repayment of the Indebtedness and the performance and discharge of the Obligations, or Beneficiary's ability to enforce its rights, remedies, and recourses with respect to such security, will be impaired in any way by the proposed Disposition, (iii) an increase in the rate of interest payable under the Note or any other change in the terms and provisions of the Note and other Loan Documents, (iv) reimbursement of Beneficiary for all costs and expenses incurred by Beneficiary in investigating the creditworthiness and management ability of the party to whom such Disposition will be made and in determining whether Beneficiary's security will be impaired by the proposed Disposition, (v) payment to Beneficiary of a transfer fee to cover the cost of documenting the Disposition in its records, (vi) payment of Beneficiary's reasonable attorneys' fees in connection with such Disposition, (vii) the express assumption of payment of the Indebtedness and performance and discharge of the Obligations by the party to whom such Disposition will be made (with or without the release of Grantor from liability for such Indebtedness and Obligations), (viii) the execution of assumption agreements, modification agreements, supplemental loan documents, and financing statements, satisfactory in form and substance to Beneficiary, (ix) endorsements (to the extent available under applicable law) to any existing mortgagee title insurance policies insuring Beneficiary's liens and security interests covering the Mortgaged Property, and (x) require additional security for the payment of the Indebtedness and performance and discharge of the Obligations.

8.9     **Consent to Subordinate Mortgage.** In the event of consent by Beneficiary to the granting of a Subordinate Mortgage, or in the event the above-described right of Beneficiary to declare the Indebtedness to be immediately due and payable upon the granting of a Subordinate Mortgage without the prior written consent of Beneficiary is determined by a court of competent jurisdiction to be unenforceable under the provisions of any applicable law, Grantor will not execute or deliver any Subordinate Mortgage unless (i) it shall contain express covenants to the effect: (a) that the Subordinate Mortgage is in all respects unconditionally subject and subordinate to the lien and security interest evidenced by this Deed of Trust and each term and provision hereof; (b) that if any action or proceeding shall be instituted to foreclose the Subordinate Mortgage (regardless of whether the same is a

- 23 -

judicial proceeding or pursuant to a power of sale contained therein), no tenant of any portion of the Mortgaged Property will be named as a party defendant, nor will any action be taken with respect to the Mortgaged Property which would terminate any occupancy or tenancy of the Mortgaged Property without the prior written consent of Beneficiary; (c) that the rents and profits, if collected through a receiver or by the holder of the Subordinate Mortgage, shall be applied first to the Indebtedness, next to the payment of the Impositions, and then to the performance and discharge of the Obligations; and (d) that if any action or proceeding shall be brought to foreclose the Subordinate Mortgage (regardless of whether the same is a judicial proceeding or pursuant to a power of sale contained therein), written notice of the commencement thereof will be given to Beneficiary contemporaneously with the commencement of such action or proceeding; and (ii) a copy thereof shall have been delivered to Beneficiary not less than ten (10) days prior to the date of the execution of such Subordinate Mortgage.

## ARTICLE IX

## ASSIGNMENT OF LEASES AND RENTS

9.1    Assignment.  For Ten Dollars ($10.00) and other good and valuable consideration, including the indebtedness evidenced by the Note, the receipt and sufficiency of which are hereby acknowledged and confessed, Grantor has GRANTED, BARGAINED, SOLD, and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, and CONVEY unto Beneficiary, as security for the payment of the Indebtedness and the performance and discharge of the Obligations, the Leases and the Rents subject only to the Permitted Exceptions applicable thereto and the License (herein defined); TO HAVE AND TO HOLD the Leases and the Rents unto Beneficiary, forever, and Grantor does hereby bind itself, its successors, and assigns to warrant and forever defend the title to the Leases and the Rents unto Beneficiary against every person whomsoever lawfully claiming or to claim the same or any part thereof, provided, however, that if Grantor shall pay or cause to be paid the Indebtedness as and when same shall become due and payable and shall perform and discharge or cause to be performed and discharged the Obligations on or before the date same are to be performed and discharged, then this assignment shall terminate and be of no further force and effect, and all rights, titles, and interests conveyed pursuant to this assignment shall become vested in Grantor without the necessity of any further act or requirement by Beneficiary, Trustee, or Beneficiary.

9.2    Limited License.  Beneficiary hereby grants to Grantor a limited license (the "License"), nonexclusive with the rights of Beneficiary reserved in Section 9.4 hereof, to exercise and enjoy all incidences of the status of a lessor of the Leases and the Rents, including without limitation, the right to collect, demand, sue for, attach, levy, recover, and receive the Rents, and to give proper receipts, releases, and acquittances therefor. Grantor hereby agrees to receive all Rents and hold the same as a trust fund to be applied, and to apply the Rents so collected, first to the payment of the Indebtedness, next to the payment of the Impositions, and then to the performance and discharge of the Obligations.  Thereafter, Grantor may use the balance of the Rent collected in any manner not inconsistent with the Loan Documents.

9.3    Enforcement of Leases.  So long as the License is in effect, Grantor shall (i) submit any and all proposed Leases to Beneficiary for approval prior to the execution thereof, (ii) duly and punctually perform and comply with any and all representations, warranties, covenants, and agreements expressed as binding upon the lessor under any Lease, (iii) maintain each of the Leases in full force and effect during the term thereof, (iv) appear in and defend any action or proceeding in any manner connected with any of the Leases, (v) deliver to Beneficiary copies of all Leases, and (vi) deliver to Beneficiary such further information, and execute and deliver to Beneficiary such further assurances and assignments, with respect to the Leases as Beneficiary may from time to time request. Without Beneficiary's prior written consent, Grantor shall not (i) do or knowingly permit to be done anything to impair the value of any of the Leases, (ii) except for security or similar deposits, collect any of the Rent more than one month in advance of the time when the same becomes due under the terms of any Lease, (iii) discount any future accruing Rents, (iv) amend, modify, or terminate any of the Leases, or (v) assign or grant a security interest in or to the License or any of the Leases and/or Rents.

9.4    No Merger of Estates.  So long as any part of the Indebtedness and the Obligations secured hereby remain unpaid and unperformed or undischarged, the ground leasehold estate and the ground space leasehold estates to the Mortgaged Property shall not merge but rather shall remain separate and distinct, notwithstanding the union of such estates either in Grantor, Beneficiary, any lessee, or any third party purchaser or otherwise.

9.5    Grantor's Indemnity.  Grantor shall indemnify and hold harmless Beneficiary and Trustee from and against any and all liability, loss, cost, damage, or expense which Beneficiary may incur under or by reason of this assignment, or for any action taken by Beneficiary and/or Trustee hereunder, or by reason of or in defense of any and all claims and demands whatsoever which may be asserted against Beneficiary and/or Trustee arising out of the Leases or with respect to the Rents. In the event Beneficiary and/or Trustee incurs any such liability, loss, cost, damage, or expense, the amount thereof together with all reasonable attorneys' fees and interest thereon at the Default Rate shall be payable by Grantor to Beneficiary and/or Trustee immediately, without demand, and shall be deemed a part of the Indebtedness and secured under Article II hereof.

- 24 -

249 05699

## ARTICLE X

### SECURITY AGREEMENT

10.1    Security Interest.  This Deed of Trust (a) shall be construed as a deed of trust on real property, and (b) shall also constitute and serve as a "Security Agreement" on personal property (whether tangible or intangible) within the meaning of, and shall constitute until the grant of this Deed of Trust shall terminate as provided in Article II hereof, a first and prior security interest under the Code as to property within the scope thereof and in the state where the Mortgaged Property is located with respect to the Personalty, Fixtures, Contracts, Leases and Rents.  To this end, Grantor has GRANTED, BARGAINED, CONVEYED, ASSIGNED, TRANSFERRED, and SET OVER, and by these presents does GRANT, BARGAIN, CONVEY, ASSIGN, TRANSFER and SET OVER, unto Trustee and Beneficiary, a first and prior security interest and all of Grantor's right, title and interest in, to, under and with respect to (i) the Personalty, Fixtures, Leases, and Rents and (ii) all accounts of Grantor held by Beneficiary to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.  It is the intent of Grantor, Beneficiary, and Trustee that this Deed of Trust encumber all Leases and Rents, that all items contained in the definition of "Leases" and "Rents" which are included within the Code be covered by the security interest granted in this Article X, and that all items contained in the definition of "Leases" and "Rents" which are excluded from the Code be covered by the provisions of Article II and Article IX hereof.

10.2    Financing Statements.  Grantor hereby agrees with Beneficiary to execute and deliver to Beneficiary, in form and substance satisfactory to Beneficiary, such "Financing Statements" and such further assurances and continuation statements as Beneficiary may, from time to time, reasonably consider necessary to create, perfect, and preserve Beneficiary's security interest herein granted, and Beneficiary may cause such statements and assurances to be recorded and filed, at such times and places as may be required or permitted by law to so create, perfect, and preserve such security interest.  This document, and any photocopy of this document may be filed by Beneficiary and shall be sufficient as a financing statement.

## ARTICLE XI

### CONCERNING THE TRUSTEE

11.1    No Required Action.  Trustee shall not be required to take any action toward the execution and enforcement of the trust hereby created or to institute, appear in, or defend any action, suit, or other proceeding in connection therewith where, in his opinion, such action would be likely to involve him in expense or liability, unless requested so to do by a written instrument signed by Beneficiary, and, if Trustee so requests, unless Trustee is tendered security and indemnity satisfactory to Trustee against any and all cost, expense, and liability arising therefrom.  Trustee shall not be responsible for the execution, acknowledgment, or validity of the Loan Documents, or for the proper authorization thereof, or for the sufficiency of the lien and security interest purported to be created hereby, and Trustee makes no representation in respect thereof or in respect of the rights, remedies, and recourses of Beneficiary.

11.2    Certain Rights.  With the approval of Beneficiary, Trustee shall have the right to take any and all of the following actions: (i) to select, employ, and advise with counsel (who may be, but need not be, counsel for Beneficiary) upon any matters arising hereunder, including the preparation, execution, and interpretation of the Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his agents or attorneys, (iii) to select and employ, in and about the execution of his duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee, and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence or bad faith, and (iv) any and all other lawful action as Beneficiary may instruct Trustee to take to protect or enforce Beneficiary's rights hereunder.  Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Mortgaged Property for debts contracted for or liability or damages incurred in the management or operation of the Mortgaged Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Grantor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

11.3    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner

- 25 -

249 05700

from any other moneys (except to the extent required by applicable law) and Trustee shall be under no liability for interest on any moneys received by Trustee hereunder.

11.4    Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing or verbally to Beneficiary.  If Trustee shall die, resign, or become disqualified from acting in the execution of this trust, or if, for any reason, Beneficiary shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Beneficiary shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers, and duties of the aforenamed Trustee. Such appointment may be executed by any authorized agent of Beneficiary, and if such Beneficiary be a corporation and such appointment be executed in its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Grantor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his successor or successors in this trust, shall do lawfully by virtue hereof.  If multiple substitute Trustees are appointed, each of such multiple substitute Trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Deed of Trust or applicable law.

11.5    Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Grantor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to the Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by the Trustee or substitute Trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Grantor.

11.6    Succession Instruments.  Any substitute Trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of his or his predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Beneficiary or of the substitute Trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute Trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute Trustee so appointed in the Trustee's place.

11.7    No Representation by Trustee or Beneficiary.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Beneficiary pursuant to the Loan Documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, neither Trustee nor Beneficiary shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness, or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Beneficiary.

ARTICLE XII

MISCELLANEOUS

12.1    Release.  If the Indebtedness is paid in full in accordance with the terms of this Deed of Trust, the Note, and the other Loan Documents, and if Grantor shall well and truly perform each and every of the Obligations to be performed and discharged in accordance with the terms of this Deed of Trust, the Note and the other Loan Documents, then this conveyance shall become null and void and be released at Grantor's request and expense, and Beneficiary shall have no further obligation to make advances under and pursuant to the provisions hereof or in the other Loan Documents.

12.2    Performance at Grantor's Expense.  Grantor shall (i) pay all legal fees incurred by Beneficiary in connection with the preparation of the Loan Documents (including any amendments thereto or consents, releases, or waivers granted thereunder); (ii) reimburse Beneficiary, promptly upon demand, for all amounts expended, advanced, or incurred by Beneficiary to satisfy any obligation of Grantor under the Loan Documents, which amounts shall include all court costs, attorneys' fees (including, without limitation, for trial, appeal, or other proceedings), fees of auditors and accountants and other investigation expenses reasonably incurred by Beneficiary in connection with any such matters; and (iii) any and all other costs and expenses of performing or complying with any and all of the Obligations. Except to the extent that costs and expenses are included within the definition of "Indebtedness," the payment of such costs and expenses shall not be credited, in any way and to any extent, against any installment on or portion of the Indebtedness.

12.3    Survival of Obligations.  Each and all of the Obligations shall survive the execution and delivery of the Loan Documents and the consummation of the loan called for therein and shall continue in full force and

- 26 -

7002249 05701

effect until the Indebtedness shall have been paid in full; provided, however, that nothing contained in this Section 12.3 shall limit the obligations of Grantor as otherwise set forth herein.

12.4 <u>Recording and Filing.</u> Grantor will cause the Loan Documents (requested by the Beneficiary) and all amendments and supplements thereto and substitutions therefor to be recorded, filed, re-recorded, and refiled in such manner and in such places as Trustee or Beneficiary shall reasonably request, and will pay all such recording, filing, re-recording and refiling taxes, documentary stamp taxes, fees, and other charges.

12.5 <u>Notices.</u> All notices or other communications required or permitted to be given pursuant to this Deed of Trust shall be in writing and shall be considered as properly given if (i) mailed by first class United States mail, postage prepaid, registered or certified with return receipt requested, (ii) by delivering same in person to the intended addressee, (iii) by delivery to an independent third party commercial delivery service for same day or next day delivery and providing for evidence of receipt at the office of the intended addressee, or (iv) by prepaid telegram, telex, or telefacsimile to the addressee. Notice so mailed shall be effective upon its deposit with the United States Postal Service or any successor thereto; notice sent by such a commercial delivery service shall be effective upon delivery to such commercial delivery service; notice given by personal delivery shall be effective only if and when received by the addressee; and notice given by other means shall be effective only if and when received at the office or designated place or machine of the intended addressee. For purposes of notice, the addresses of the parties shall be as set forth on page 1 of this Deed of Trust; provided, however, that either party shall have the right to change its address for notice hereunder to any other location within the continental United States by the giving of thirty (30) days' notice to the other party in the manner set forth herein.

12.6 <u>Covenants Running with the Land.</u> All Obligations contained in this Deed of Trust and the other Loan Documents are intended by Grantor, Beneficiary, and Trustee to be, and shall be construed as, covenants running with the Mortgaged Property until the lien of this Deed of Trust has been fully released by Beneficiary.

12.7 <u>Successors and Assigns.</u> Subject to the provisions of Section 6.1(h) hereof, all of the terms of the Loan Documents shall apply to, be binding upon, and inure to the benefit of the parties thereto, their successors, assigns, heirs, and legal representatives, and all other persons claiming by, through, or under them.

12.8 <u>No Waiver; Severability.</u> Any failure by Trustee or Beneficiary to insist, or any election by Trustee or Beneficiary not to insist, upon strict performance by Grantor or others of any of the terms, provisions, or conditions of the Loan Documents shall not be deemed to be a waiver of same or of any other term, provisions, or conditions thereof, and Trustee or Beneficiary shall have the right at any time or times thereafter to insist upon strict performance by Grantor or others of any and all of such terms, provisions, and conditions. The Loan Documents are intended to be performed in accordance with, and only to the extent permitted by, all applicable Legal Requirements. If any provision of any of the Loan Documents or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, then neither the remainder of the instrument in which such provision is contained nor the application of such provision to other persons or circumstances nor the other instruments referred to herein shall be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

12.9 <u>Counterparts.</u> To facilitate execution, this Deed of Trust may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of, or on behalf of, each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single Instrument. It shall not be necessary in making proof of this Deed of Trust to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto. Any signature and acknowledgment page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures and acknowledgments thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature and acknowledgment pages.

12.10 <u>Applicable Law.</u> The Loan Documents shall be governed by and construed according to the laws of the state of Texas from time to time in effect except to the extent preempted by United States federal law.

12.11 <u>Controlling Agreement.</u> It is expressly stipulated and agreed to be the intent of Grantor, Trustee and Beneficiary at all times to comply with applicable Texas law or applicable United States federal law (to the extent that it permits Beneficiary to contract for, charge, take, reserve, or receive a greater amount of interest than under Texas law) and that this section shall control every other covenant and agreement in this Deed of Trust and the other Loan Documents. If the applicable law is ever judicially interpreted so as to render usurious any amount called for under the Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Indebtedness, or if Beneficiary's exercise of the option to accelerate the maturity of the Note, or if any prepayment by Grantor results in Grantor having paid any interest in excess of that permitted by applicable law, then it is Grantor's, Trustee's and Beneficiary's express intent that all excess amounts theretofore collected by Beneficiary shall be credited on the principal balance of the Note and all other Indebtedness (or, if the Note and all other Indebtedness have been or would thereby be paid in full, refunded to Grantor), and the provisions of the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as

- 27 -

to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Beneficiary for the use, forbearance, or detention of the Indebtedness shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Indebtedness until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the Maximum Lawful Rate from time to time in effect and applicable to the Indebtedness for so long as the Indebtedness is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code, as amended, (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to the loan evidenced by the Loan Documents and/or secured hereby. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Trustee and/or Beneficiary to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

12.12    Subrogation.   If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Mortgaged Property, then, to the extent of such funds so used, Beneficiary shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Mortgaged Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Beneficiary and are merged with the lien and security interest created herein as cumulative security for the repayment of the Indebtedness and the performance and discharge of the Obligations.

12.13    Rights Cumulative.   Beneficiary shall have all rights, remedies, and recourses granted in the Loan Documents and available at law or in equity (including, without limitation, those granted by the Code and applicable to the Mortgaged Property or any portion thereof), and the same (i) shall be cumulative and concurrent, (ii) may be pursued separately, successively, or concurrently against Grantor or others obligated for the Indebtedness or any part thereof, or against any one or more of them, or against the Mortgaged Property, at the sole discretion of Beneficiary, (iii) may be exercised as often as occasion therefor shall arise, it being agreed by Grantor that the exercise, discontinuance of the exercise of or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy, or recourse, and (iv) are intended to be, and shall be, nonexclusive. All rights and remedies of Beneficiary hereunder and under the other Loan Documents shall extend to any period after the initiation of foreclosure proceedings, judicial or otherwise, with respect to the Mortgaged Property.

12.14    Payments.   Remittances in payment of any part of the Indebtedness other than in the required amount in funds immediately available at the place where the Note is payable shall not, regardless of any receipt or credit issued therefor, constitute payment until the required amount is actually received by Beneficiary in funds immediately available at the place where the Note is payable (or such other place as Beneficiary, in Beneficiary's sole discretion, may have established by delivery of written notice thereof to Grantor) but such payment may be made and accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Beneficiary of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default.

12.15    Exceptions to Covenants.   Grantor shall not be deemed to be permitted to take any action or to fail to take any action with respect to any particular covenant or condition contained herein or in any of the Loan Documents if the action or omission would result in the breach of any other covenant or condition contained herein or in any of the Loan Documents which has not been specifically waived or consented to by Beneficiary, nor shall Beneficiary be deemed to have consented to any such act or omission if the same would provide cause for acceleration of the Indebtedness as a result of the breach of any other covenant or condition contained herein or in any of the Loan Documents which has not been specifically waived or consented to by Beneficiary.

12.16    Reliance.   Grantor recognizes and acknowledges that in entering into the loan transaction evidenced by the Loan Documents and accepting this Deed of Trust, Beneficiary is expressly and primarily relying on the truth and accuracy of the foregoing warranties and representations set forth in Article III hereof without any obligation to investigate the Mortgaged Property and notwithstanding any investigation of the Mortgaged Property by Beneficiary; that such reliance exists on the part of Beneficiary prior hereto; that such warranties and representations are a material inducement to Beneficiary in making the loan evidenced by the Loan Documents and accepting of this Deed of Trust; and that Beneficiary would not be willing to make the loan evidenced by the Loan Documents and accept this Deed of Trust in the absence of any of such warranties and representations.

12.17    Change of Security.   Any part of the Mortgaged Property may be released, regardless of consideration, by Beneficiary from time to time without impairing, subordinating, or affecting in any way the lien, security interest, and other rights hereof against the remainder. The lien, security interest, and other rights granted hereby shall not be affected by any other security taken for the Indebtedness or Obligations, or any part thereof. The taking of additional collateral, or the amendment, extension, renewal, or rearrangement of the Indebtedness or Obligations, or any part thereof, shall not release or impair the lien, security interest, and other rights granted hereby, or affect the liability of any endorser or guarantor or improve the right of any junior lienholder; and this Deed of Trust, as well as any instrument given to secure any amendment, extension, renewal, or rearrangement of the Indebtedness or any part thereof, shall be and remain a first and prior lien, except as otherwise provided herein,

- 28 -

on all of the Mortgaged Property not expressly released until the Indebtedness is fully paid and the Obligations are fully performed and discharged.

12.18   Headings.  The Article, Section, and Subsection entitlements hereof are inserted for convenience of reference only and shall in no way alter, modify, or define, or be used in construing the text of such Articles, Sections, or Subsections.

12.19   Entire Agreement; Amendment.  THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO.  The provisions of this Deed of Trust and the Loan Documents may be amended or waived only by an instrument in writing signed by the Grantor and Beneficiary.

12.20   Waiver of Right to Trial by Jury.  GRANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY BENEFICIARY IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS.

12.21   Purchase Money Lien.  A portion of the Indebtedness secured hereby is in payment of the purchase price of the Mortgaged Property, said Indebtedness being secured by this Deed of Trust and by a vendor's lien on the Mortgaged Property, which is expressly retained in a deed of the Mortgaged Property of even date herewith to Borrower.  This Deed of Trust does not waive the vendor's lien, and the two (2) liens and the rights created by this Deed of Trust and said deed shall be cumulative. In exercising its foreclosure remedy hereunder, Beneficiary may elect to foreclose under either of the liens without waiving the other or may foreclose under both liens.

EXECUTED as of the date first above written.

GRANTOR:

WESTGROVE AIR PLAZA, LTD.,
a Texas limited partnership

By:   Westgrove Air Plaza of Texas, LLC,
      a Texas limited liability company
Its:  General Partner

By: _____
Name: _Joel Lenman_
Title: _President_

_The Navesink Group, LLC_
_Manager_

- 29 -

STATE OF TEXAS §

COUNTY OF DALLAS §

Before me, the undersigned authority, on this day personally appeared Joel Lenahon, Pres. of Westgrove Air Plaza of Texas, LLC, a Texas limited liability company, as General Partner of Westgrove Air Plaza, Ltd., a Texas limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity stated, and as the act and deed of said entity.

Given under my hand and seal of office this 19TH day of December, 2000.

Notary Public, State of Texas
My Commission Expires: _____

(Printed Name of Notary Public)
_____

CARMEN RIGSBY
Notary Public, State of Texas
My Commission Expires 06-17-02

List of Attachments:

Exhibit "A" - Land Description
Exhibit "B" - Permitted Exceptions

10380.169/D08.4

- 30 -



## PROPERTY DESCRIPTION

That particular leasehold estate in and to Tracts I and II, which Tracts are generally located at the Addison Airport, Addison, Texas, more specifically described as:

**TRACT I:**

Leasehold estate created by that certain Ground Lease ("Lease 1") dated March 2, 1981, by and among the Town of Addison, Texas, a municipal corporation (the "City") and Addison Airport of Texas, Inc., a Texas corporation ("AATI") collectively as "Landlord", and Texas Federal Savings & Loan as "Tenant", recorded in Volume 81089, Page 1232, of the Deed Records of Dallas County, Texas, and concerning Landlord's lease to Tenant, upon the terms and conditions set forth in such Lease 1, of that certain 2.3420 acre tract of land situated in the William Lomax Survey, Abstract No. 792, Dallas County, Texas, said tract being part of the Blakely Airport Addition as shown on the plat thereof recorded in Volume 84088, Page 4359, Deed Records of Dallas County, Texas, said tract lying south of the right-of-way line of Westgrove Road; said Lease 1 having been ultimately assigned to Transcontinental Realty Investors, Inc. ("Seller") by means of the following various instruments: (i) Assignment of Lease by and between Tenant as "Assignor" and Blakely Airport Joint Venture as "Assignee", a copy of which is recorded in Volume 97206, Page 05423, of the Deed Records of Dallas County, Texas; (ii) Assignment of Lease, by and between Blakely Airport Joint Venture as "Assignor" and Raleigh Blakely & Associates, Inc. as "Assignee", a copy of which is recorded in Volume 97206, Page 05424 of the Deed Records of Dallas County, Texas; (iii) Assignment of Lease dated May 1, 1985, by and between Raleigh Blakely & Associates, Inc. as "Assignor" and Westgrove Air Plaza Joint Venture as "Assignee", a copy of which is recorded in Volume 97206, Page 05426 of the Deed Records of Dallas County, Texas; (iv) Assignment of Lease dated July 8, 1991, by and between FDIC, as receiver for Vernon Savings & Loan as "Assignor" and ITEX Companies/ITEX Enterprises, Inc. and/or Assignee as "Assignee", a copy of which is recorded in Volume 97206, Page 05428 of the Deed Records of Dallas County, Texas; (v) Assignment of Lease dated August 24, 1994, by and between ITEX Enterprises, Inc. as "Assignor" and Sky/RGS Properties Limited as "Assignee", a copy of which is recorded in Volume 97206, Page 05437 of the Deed Records of Dallas County, Texas; and, (vi) Assignment of Ground Lease dated effective as of October 15, 1997, by and between First National Bank & Trust Co. of McAlester as "Assignor" and Continental Mortgage and Equity Trust as "Assignee", recorded in Volume 97206, Page 05404 of the Deed Records of Dallas County, Texas (the latter party's interest having been subsequently assigned to Seller as successor by merger to Continental Mortgage and Equity Trust); as modified by that certain Non-Disturbance Agreement entered into by and among the City, AATI, Westgrove Air Plaza, Ltd., and Jefferson Heritage Bank, dated the 15th day of December, 2000, and recorded in Volume 2000244, Page 3227, Deed Records of Dallas County, Texas, which Lease I demises and encumbers the following real property:

Description of a 2.3420 acre tract of land situated in the William Lomax Survey, Abstract No. 792, Dallas County, Texas, said tract being a part of the Blakely Airport Addition as shown on the plat recorded in Volume 84088, Page 4359, Deed Records, Dallas County, Texas, said tract lying south of the right-of-way line of Westgrove Road, said 2.3420 acre tract of land being more particularly described as follows:

BEGINNING at a "+" cut in concrete found for corner, said point being South 89° 45' 40" West, a distance of 400.82 feet from a 1/2-inch iron rod found on the west right-of-way line of Addison Road (60 feet wide) at the northeast corner of Texas Federal Subdivision No. Two, an addition to the City of Addison, Texas as recorded in Volume 79147, Page 1915, Deed Records, Dallas County, Texas;

THENCE, South 89° 54' 46" West, a distance of 69.18 feet to a "+" cut in concrete found for corner;

THENCE, South 00° 14' 20" East, a distance of 142.62 feet to a 5/8-inch iron rod with "GSES INC., RPLS 4804" cap found for corner;

THENCE, North 46° 35' 21" West, a distance of 207.20 feet to a "+" cut in concrete found for an angle point;

THENCE, South 89° 54' 46" West, a distance of 89.70 feet to a 1/2-inch iron rod found for corner on the east right-of-way line of Claire Chennault Road (60 feet wide), said point being on a curve to the left, the center of which bears North 68° 52' 44" West, a distance of 130.00 feet from said point;

THENCE, in a northerly direction with said line of Claire Chennault Road and with said curve to the left, through a central angle of 21° 12' 46", an arc distance of 48.13 feet to a "+" cut in concrete found for the end of said curve;

THENCE, North 00° 05' 14" West, with said line of Claire Chennault Road, a distance of 257.01 feet to a 1/2-inch iron rod found for corner on the south right-of-way line of Westgrove Road (60 feet wide);

THENCE, North 89° 56' 40" East, with said line of Westgrove Road, a distance of 300.00 feet to a 1/2-inch iron rod with "Powell & Powell" cap found for corner;

THENCE, South 00° 05' 14" East, a distance of 303.89 feet to the POINT OF BEGINNING;

CONTAINING, 102,018 square feet or 2.3420 acres of land, more or less.

## TRACT II:

Leasehold Estate created by that certain Ground Lease ("Lease 2") dated March 2, 1981, by and among Landlord and Tenant, recorded in Volume 81089, Page 1208, of the Deed Records of Dallas County, Texas, and concerning Landlord's lease to Tenant, upon the terms and conditions set forth in the Lease, of that certain 2.7876 acre tract of land situated in the William Lomax Survey, Abstract No. 792, Dallas County, Texas, said tract being a part of the Blakely Airport Addition as shown on the plat thereof recorded in Volume 84088, Page 4359, Deed Records, Dallas County, Texas, said tract lying between the south right-of-way line of Westgrove Road and the north line of Texas Federal Subdivision No. Two, an Addition to the City of Addison, as recorded in Volume 79147, Page 1915, and Volume 79039, Page 125, of the Deed Records of Dallas County, Texas; said Lease as having been ultimately assigned to Seller by means of the following various instruments: (i) Assignment of Lease by and between Tenant as "Assignor" and Blakely Airport Joint Venture as "Assignee", a copy of which is recorded in Volume 97206, Page 05378 of the Deed Records of Dallas County, Texas; (ii) Assignment of Lease by and between Blakely Airport Joint Venture as "Assignor" and Raleigh Blakely & Associates, Inc. as "Assignee", a copy of which is recorded in Volume 97206, Page 05380 of the Deed Records of Dallas County, Texas; (iii) Assignment of Lease dated May 1, 1985, by and between Raleigh Blakely & Associates, Inc. as "Assignor" and Westgrove Air Plaza Joint Venture as "Assignee", a copy of which is recorded in Volume 97206, Page 05382 of the Deed Records of Dallas County, Texas; (iv) Assignment of Lease dated July 8, 1991, by and between FDIC as receiver for Vernon Savings & Loan as "Assignor" and ITEX Companies/ITEX Enterprises, Inc. and/or Assigns as "Assignee", a copy of which is recorded in Volume 97206, Page 05384 of the Deed Records of Dallas County, Texas; (v) Assignment of Lease dated July 8, 1991 by and between FDIC as receiver for Vernon Savings & Loan as "Assignor" and ITEX Companies as "Assignee", a copy of which is recorded in Volume 97206, Page 05387of the Deed Records of Dallas County, Texas; (vi) Assignment of Lease dated August 24, 1994, between ITEX Enterprises, Inc. as "Assignor" and Sky/RGS Properties Limited as "Assignee", a copy of which is recorded in Volume 97206, Page 05390 of the Deed Records of Dallas County, Texas; and, (vii) Assignment of Ground Lease dated effective as of October 15, 1997, by and between First National Bank & Trust Co. of McAlester as "Assignor" and Seller as "Assignee", recorded in Volume 97206, Page 05336 of the Deed Records of Dallas County, Texas (the latter party's interest having been subsequently assigned to Seller as successor by merger to Continental Mortgage and Equity Trust); as modified by that certain Non-Disturbance Agreement entered into by and among the City, AATI, Westgrove Air Plaza, Ltd., and Jefferson Heritage Bank, dated the 15ᵗʰ day of December, 2000, and recorded in Volume 2000244, Page 3227, Deed Records of Dallas County, Texas, which Lease 2 demises and encumbers the following real property:

Description of a 2.7876 acre tract of land situated in the William Lomax Survey, Abstract No. 792, Dallas County, Texas, said tract being a part of the Blakely Airport Addition as shown on the plat recorded in Volume 84088, Page 4359, Deed Records, Dallas County, Texas, said tract lying between the south right-of-way line of Westgrove Road and the north line of Texas Federal Subdivision No. Two, an addition to the City of Addison as recorded in Volume 79147, page 1915, and Volume 79039, Page 125, Deed Records, Dallas County, Texas, said 2.7876 acre tract of land being more particularly described as follows:

BEGINNING, at a 1/2-inch iron rod found for corner on the west right-of-way line of Addison Road (60 feet wide), said point being the northeast corner of said Texas Federal Subdivision No. 2;

THENCE, South 89° 45' 40" West, with the north line of said subdivision and the extension thereof, at 200.00 feet pass the northwest corner of said subdivision and the northeast corner of a certain 0.3370 acre tract of land, at 275.00 feet passing the northwest corner of said 0.3370 acre tract of land and the northeast corner of a certain 0.2855 acre tract of land, at 350.00 feet passing the northwest corner of said 0.2855 acre tract of land, in all, a distance of 400.82 feet to a "+" cut in concrete found for corner;

THENCE, North 00° 05' 14" West, a distance of 303.89 feet to a 1/2-inch iron rod with "Powell & Powell" cap found for corner on said south right-of-way line of Westgrove Road (60 feet wide);

THENCE, North 89° 56' 40" East, with said line of Westgrove Road, a distance of 400.02 feet to a cut "+" found in concrete for corner of said west right-of-way line of Addison Road;

THENCE, South 00° 14' 20" East, with said line of Addison Road, a distance of 302.61 feet to the POINT OF BEGINNING;

CONTAINING, 121,426 square feet or 2.7876 acres of land, more or less.

EXHIBIT "B"

Permitted Exceptions

1.  Standby fees, taxes and assessments by any taxing authority for the year 2000.

2.  Building setback line twenty-five feet (25') in width along the north property line(s) according to plat recorded in Volume 84088, page 4359, of the Map Records of Dallas County, Texas, and reflected on survey dated November 22, 2000, prepared by Robert W. Schneeberg, R.P.L.S. No. 4804. (Affects both tracts)

3.  Building setback line twenty-five feet (25') in width along the east property line(s) according to plat recorded in Volume 84088, page 4359, of the Map Records of Dallas County, Texas, and reflected on survey dated November 22, 2000, prepared by Robert W. Schneeberg, R.P.L.S. No. 4804. (Affects Tract II)

4.  TP&L easement two feet (2') in width along the east property line(s), according to plat recorded in Volume 84088, page 4359, of the Map Records of Dallas County, Texas, and reflected on survey dated November 22, 2000, prepared by Robert W. Schneeberg, R.P.L.S. No. 4804, additionally defined in instrument recorded in Volume 4434, page 541, Deed Records, Dallas County, Texas. (Affects Tract II)

5.  TP&L easement ten feet (10') in width, protruding south from the north property line(s) according to plat recorded in Volume 84088, page 4359, of the Map Records of Dallas County, Texas, and reflected on survey dated November 22, 2000, prepared by Robert W. Schneeberg, R.P.L.S. No. 4804.

6.  Encroachment of the junction box, traffic box and sidewalk along the northeast property line; the corner clip in the northeast corner; the location of the power poles and power lines, and the traffic signal (Affects Tract II)

7.  Encroachment of the drop inlet in the southwest corner; the location of the grate inlets, water meters, water valve, cleanout and manholes. (Affects Tract I

8.  Terms, conditions and stipulations of Ground Lease Agreement between the City of Addison, Texas, and Addison Airport of Texas, Inc., as Lessor, and Texas Federal Savings & Loan, as Lessee, dated March 2, 1981, filed for record May 6, 1981, recorded in Volume 81089, page 1208, of the Deed Records of Dallas County, Texas. (Affects Tract I)

9.  Said Ground Lease having been assigned to Continental Mortgage and Equity Trust, by instrument dated October 15, 1997, filed for record October 22, 1997, recorded in Volume 97206, page 5356 of the Deed Records of Dallas County, Texas.

10. Terms, conditions and stipulations of Ground Lease Agreement between the City of Addison and Addison Airport of Texas, Inc., as Lessor, and Texas Federal Savings/& Loan, as Lessee, dated March 2, 1981, filed for record May 6, 1981, recorded in Volume 81089, page 1232, of the Deed Records of Dallas County, Texas (Affects Tract II)

11. Said Ground Lease having been assigned to Continental Mortgage and Equity Trust, by instrument dated October 15, 1997, filed for record October 22, 1997, recorded in Volume 97206, page 5404 of the Deed Records of Dallas County, Texas.



249 05708



Any provision herein which restricts the sale, rental, or use of the described real property because of color or race is invalid and unenforceable under federal law.

STATE OF TEXAS
COUNTY OF DALLAS
I hereby certify that this instrument was FILED on the date and time stamped hereon by me and was duly RECORDED in the Official Public Records of Dallas County, Texas as stamped hereon by me.

DEC 27 2000

Earl Bullock
COUNTY CLERK, Dallas County, Texas

AFTER RECORDING, RETURN TO:
JAMES P. LAZAR, P.C.
5949 SHERRY LANE, SUITE 111
DALLAS, TX 75225

UNOFFICIAL

249 05709